Gary R. Long, *pro hac vice*
glong@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Patrick J. Gregory (SBN 206121)
pgregory@shb.com
SHOOK, HARDY & BACON L.L.P.
333 Bush Street, Suite 600
San Francisco, California 94104-2828
Telephone: (415) 544-1900
Facsimile:  (415) 391-0281

Attorneys for Defendant,
PHILIP MORRIS USA INC.
(f/k/a Philip Morris Incorporated)

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Leslie L. Grisham,

      Plaintiff,

    v.

Philip Morris, Incorporated, et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. CV-02-7930 SVW (RCx)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE STATUTE OF LIMITATIONS DEFENSE**

Date:   July 6, 2009
Time:   1:30 p.m.
Judge:  The Honorable Stephen V. Wilson

Filed Concurrently Herewith: Reply
Declaration of Patrick J. Gregory

161696V2

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

REPLY ARGUMENT ...........................................................................................2

I.     Grisham's periodontal injury claim is governed and barred
by the date-of- injury accrual rule. ........................................... 2

     A.    Grisham's contention that she pled tolling makes no sense in
view of her admission that she pled no physical injury
before April 2001. .................................................................2

     B.    Grisham confuses her fraud causes of action with the
fraudulent concealment tolling doctrine,
which she did not plead...........................................................3

     C.    Grisham improperly contends that her UCL tolling
allegations were intended to be physical injury
tolling allegations. ................................................................4

II.    Even if she had invoked a tolling theory, Grisham has failed
to show that she could successfully toll her periodontal
injury claims. .................................................................. 7

     A.    DOJ has no collateral estoppel impact on the statute of
limitations (or any other aspect of this case). ...........................7

     B.    Even if Grisham had pled the discovery rule, her
periodontal injury claims would still be time-barred............. 16

III.   Grisham's alleged second-injury claim must be dismissed. ............. 22

     A.    Grisham's emphysema/COPD story keeps shifting................. 22

     B.    Grisham has not overcome Defendants' grounds for
summary judgment of the second-injury claim. ..................... 23

CONCLUSION ................................................................................................. 25

161696V2

# **TABLE OF AUTHORITIES**

## Cases

*Bobby v. Bies*
    129 S. Ct. 2145 (2009)............................................................................12

*Burger v. Kuimelis*
    325 F.Supp. 2d 1026 (N.D. Cal. 2004)..........................................................3

*Rose v. Fife*
    207 Cal. App. 3d 760, 255 Cal. Rptr. 440 (1989) .........................................20

*Deirmenjian v. Deutsche Bank, A.G.*
    526 F.Supp.2d 1068 (C.D. Cal. 2007) ...........................................................4

*Faigin v. Kelly*
    184 F.3d 67 (1st Cir.1999).........................................................................11

*Glue-Fold, Inc. v. Slautterback Corp.*
    82 Cal. App. 4th 1018, 98 Cal. Rptr. 2d 661 (2000) .....................................18

*Goldrich v. Natural Y Surgical Specialties*
    25 Cal. App. 4th 772, 31 Cal. Rptr. 2d 162 (1994) .......................................17

*Grisham v. Philip Morris U.S.A., Inc.*
    40 Cal. 4th 623, 54 Cal. Rptr. 3d 735 (2007) ..........................................5, 6

*Grubbs v. United Mine Workers of Am.*
    723 F. Supp. 123, (W.D. Ark. 1989) ...........................................................10

*Guerrero v. Gates*
    442 F.3d 697 (9th Cir. 2006) .......................................................................3

*Hardy v. Johns-Manville Sales Corp.*
    681 F.2d 334, n.13 (5th Cir. 1982) ..............................................................12

*Harrison v. Celotex Corp.*
    583 F. Supp. 1497 (D. Tenn. 1984).............................................................13

*Hernandez v. City of Los Angeles*
    624 F.2d 935 (9th Cir. 1990) ........................................................................8

*In re Benedictin Prods. Liab. Litig.*
    749 F.2d 300, n.11 (6th Cir. 1984) ..............................................................12

*In re Microsoft Corp. Antitrust Litig.*
    355 F.3d 322, (4th Cir. 2004) .....................................................................11

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*
    439 F.3d 740, (D.C. Cir. 2006).....................................................................10

*Jack Faucett Assocs. v. AT&T Co.*
    744 F.2d 118 (D.C. Cir. 1984).....................................................................11

*Jean Alexander Cosmetics Inc. v. L'Oreal USA, Inc.*
  458 F.3d 244 (3d Cir. 2006) ............................................................10

*McLaughlin v. Amer. Tobacco Co.*
  522 F.3d 215 (2d Cir. 2008) ............................................................15

*Parklane Hosiery Co. v. Shore*
  439 U.S. 322 (1979).........................................................................12

*Rivas v. Safety-Kleen*
  98 Cal. App. 4th 218, 119 Cal. Rptr. 2d 503 (2002) ......................17

*Sanchez v. South Hoover Hosp.*
  18 Cal. 3d 93 (1976) .......................................................................18

*Schwab v. Philip Morris USA Inc.*
  449 F. Supp. 2d 992, 1079 (E.D.N.Y. 2006) ...................................15

*Sidney-Vinstein v. A.H. Robins Co.*
  697 F.2d 880 (9th Cir. 1983) ...........................................................18

*Sydnes v. C.I.R.*
  647 F.2d 813 (8th Cir. 1981) ...........................................................11

*United States v. Philip Morris USA Inc.*
  449 F. Supp. 2d 1 (D.D.C. 2006)........................................................8

*United States v. Philip Morris, Inc.*
  273 F. Supp. 2d 3, 11 (D.D.C. 2002)..................................................9

*Visa U.S.A. Inc. v. First Data Corp.*
  369 F. Supp. 2d 1121 (N.D. Cal. 2005).............................................11

*Wasco Prods., Inc. v. Southwall Techs., Inc.*
  435 F.3d 989 (9th Cir. 2006) ........................................................2, 8

*Winters v. Diamond Shamrock Chem. Co.*
  149 F.3d 387, n.9 (5th Cir. 1998) ....................................................10

**Other Authorities**

§ 29 cmt. f, at 295..............................................................................13

# **INTRODUCTION**

Notwithstanding Grisham's misplaced and diversionary opposition arguments, Defendants' motion for summary judgment on her claim for periodontal disease is straight-forward and should be granted on two independent grounds.

First, Grisham's complaint does not invoke any ground for tolling the limitations period, and thus her action is barred by over a decade. Indeed, in her Statement of Genuine Issues, Grisham admits that she pled no injury outside the limitations period. Pl's CF 51. Her opposition brief's theory that she had periodontal disease many years earlier and that the statute of limitations was tolled was never pled. To the contrary, she consistently urged to this Court and the appellate courts that no tolling was necessary for her personal injury claims. Accordingly, Grisham's periodontal injury claim is controlled and barred by the date-of-injury accrual rule.

Second, even if she had pled tolling, Grisham cannot meet her burden of proving that, during the entire time from the onset of her periodontal disease in the 1980s to March 15, 2001 (a year before she sued), she could not have suspected that injury and its cause. That Grisham chose the purported collateral estoppel impact of *DOJ* RICO case as her principal basis for tolling her physical injury claims is both desperate and telling, as *DOJ* did not even mention the statute of limitations, let alone adjudicate any timing or tolling issue on any individual's injury claims. Grisham's second tolling argument -- purportedly "refuting" the import of a few of the many pieces of information available to her -- does not fare any better, particularly in view of her failure to explain, among several things, why information specifically connecting smoking with oral health did not put her on at least inquiry notice.

As for Grisham's alleged second injury (emphysema/COPD) claim, a comparison of Grisham's complaints, her 2002 and 2009 depositions, and now her summary judgment opposition illustrates that her claimed onset of COPD is a moving target, and it can readily be discerned that Grisham keeps changing her COPD story in an effort to maintain that claim. Be that as it may, her COPD claim can still be

1

1  dismissed because (1) under oath, she has disavowed the COPD claim that she pled;

2  (2) she has not adequately controverted that she and Dr. Tanouye, outside the

3  limitations period, had a conversation about Grisham having COPD based on

4  information *she* provided; and (3) under the still intact first-injury accrual rule, all her

5  injury claims accrued when she first sustained her periodontal injuries.

## REPLY ARGUMENT

### I.  Grisham's periodontal injury claim is governed and barred by the date-of-injury accrual rule.

9  "[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute

10  of limitations on various grounds must have included the allegation in their pleadings;

11  this rule applies even where the tolling argument is raised in opposition to summary

12  judgment." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir.

13  2006)); *see also*, Defs' Opening Mem. at 15-17 (citing *Wasco* and other cases).

14  Despite the fact that Grisham's complaint on its face clearly contains no

15  allegations on the history and investigation of her periodontal injuries and their cause

16  from the 1980s to 2001, and despite the fact that Grisham has repeatedly represented

17  to both this Court and the appellate courts that the periodontal injury *was not even*

18  *contracted* until after March 15, 2001, see Defs' Opening Mem. at 4-5, Grisham now

19  contends that she pled tolling of the limitations period for her physical injuries. *See*

20  Pl's Opp. at 11-12. For several reasons, that new argument fails.

### A.  Grisham's contention that she pled tolling makes no sense in view of her admission that she pled no physical injury before April 2001.

23  On page 19 of her Statement of Genuine Issues, Grisham states: "The alleged

24  fact that '. . . Grisham's complaint in this matter identifies no periodontal injury

25  before April 2001' is undisputed." Pl's CF 51. It is impossible to reconcile that

26  admission with Grisham's new contention that she pled tolling.

27  Pleading tolling involves recognition that an injury was sustained *outside* the

28  limitations period, but that the action is still timely due to certain specifically pled

2

reasons that caused plaintiff to have delayed discovery of her injury and its cause. But Grisham admits that she has only pled a periodontal injury that occurred no earlier than April 2001, a date *within* the limitations period. There is no reason to ask to toll a claim for an injury that occurred within the limitations period, and indeed, Grisham's complaint contains no recognition of a pre-limitations period injury and no attempt to show delayed discovery of such an injury and its cause.

Precisely because she only pled an April 2001 injury, there is not a single allegation in the complaint describing what Grisham was doing or was told with respect to her periodontal injuries from the 1980s to March 15, 2001. In short, Grisham's admission that she pled only a periodontal injury within the limitations period makes her contention that she pled tolling for that injury a *non sequitur.*

### B. Grisham confuses her fraud causes of action with the fraudulent concealment tolling doctrine, which she did not plead.

Grisham contends that she is relying on the "doctrine of fraudulent concealment" to toll the limitations period for her physical injury claims. *Id.* at 11. That contention is defeated by her admission that she has only pled a periodontal injury within the limitations period.

In addition, Grisham fails to recognize that fraud the cause of action and the fraudulent concealment tolling doctrine are two different things. As support for the contention that she pled such tolling, Grisham cites to her fraud causes of action. *Id.* at 12. But to toll the statute of limitations under the doctrine of fraudulent concealment, Grisham was required to first plead and then prove "active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed,* to prevent the plaintiff from suing in time." *Guerrero v. Gates,* 442 F.3d 697, 706 (9th Cir. 2006) (emphasis added); *see also Burger v. Kuimelis,* 325 F.Supp. 2d 1026, 1047 (N.D. Cal. 2004) (fraudulent concealment doctrine requires showing that defendant "took affirmative actions to disguise the existence of a cause of action").

3

1  Having failed to plead any "above and beyond" fraud, Grisham's claim that she pled
2  the fraudulent concealment tolling doctrine fails.

3  In addition, tolling on the basis of fraudulent concealment fails when plaintiff
4  cannot establish that "he was personally deceived by any defendant's statements or
5  representations." *Deirmenjian v. Deutsche Bank*, A.G., 526 F.Supp.2d 1068, 1091
6  (C.D. Cal. 2007). Here, Grisham has disavowed any reliance during the relevant time
7  period. Grisham declared under oath that she "was not paying close attention to
8  statements made by the tobacco industry in the 1990s," and that she "did not
9  necessarily believe anything she did hear." Gregory Reply Decl., Ex. 2, Grisham
10  Decl. 2/17/2003 at ¶ 28. She testified to similar effect in her deposition, *see* Gregory
11  Reply Decl., Grisham I Depo. at 17:14-25, and she has conceded that she did not
12  "trust" the tobacco companies. *See* Gregory Reply Decl., Ex. 3, Grisham Decl.,
13  2/17/2003, Ex. 2, at ¶23. If Grisham did not pay attention, did not hear, did not
14  necessarily believe any tobacco company statements, and did not trust those
15  companies, then even if she had identified any "above and beyond" fraud, she did not
16  rely upon it in refraining from filing suit. For this additional reason, she cannot
17  invoke the fraudulent concealment tolling doctrine.

18
19  **C.   Grisham improperly contends that her UCL tolling allegations were intended to be physical injury tolling allegations.**

20  Grisham also claims that she pled tolling of her physical injury claims by citing
21  to "Allegations and Facts Re: Delayed Discovery of Addiction-Related Injuries . . .",
22  FAC ¶¶ 169-189 (which is almost 50 pages of delayed discovery allegations, pages,
23  69-115 of the FAC)." Pl's Opp. at 12. In doing so, Grisham here blurs the clear
24  distinction between (1) pleading delayed discovery of *her UCL claims for economic*
25  *injury*, which she attempted (and ultimately failed); and (2) pleading tolling of her
26  physical injury claims, which she has never attempted in this case.

27  Grisham's claim that she has "50 pages of delayed discovery allegations" is
28  misleading when the context in which she asked this Court for leave to plead those

4

1  allegations is considered. Grisham's original complaint did not contain these 50 pages

2  of delayed discovery allegations. *See* Gregory Decl., Ex. 5, Complaint, pp. 1-70.

3  When this case was on appeal, the California Supreme Court examined that complaint,

4  and with regard to the statute of limitations, the court made a sharp distinction

5  between Grisham's UCL economic injury claims and her physical injury claims.

6  As to the UCL economic injury claims, the court concluded "from the face of

7  the complaint that Grisham knew or should have known of her tobacco addiction and

8  the economic injury it was causing her by at least 1993-1994, outside the limitations

9  period." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 639, 54 Cal. Rptr. 3d

10  735 (2007). In contrast, on her periodontal and COPD injury claims, the court stated:

11  "We do not read Grisham's complaint as alleging an appreciable physical harm from

12  addiction prior to 2001." *Id.* at 641. Continuing this distinction, the court concluded

13  its opinion by stating: "Here Grisham has failed to plead specific facts justifying the

14  delay in discovering her smoking addiction. The fact that the unfair competition claim

15  based on her economic injury from addiction may be barred, however, does not mean

16  that Grisham's other claims, based on physical injury, are also barred." *Id.* at 647.

17  When her case returned to this Court, Grisham filed a position paper in which

18  she urged, under an "Economic Injury Claims" heading, that she should be allowed

19  "to amend her complaint to allege delayed discovery of her UBPA [UCL] addiction-

20  based claims." Ct. Dkt. No. 89, Pl's Position Paper, p. 7. In that same paper, Grisham

21  represented to this Court that she "was diagnosed with beginning-stage emphysema on

22  or about March 28, 2001, and with periodontitis and gingivitis leading to both tooth

23  and bone loss in April of 2001." *Id.* at 2. Accordingly, her Position Paper ***did not***

24  request for leave to amend to plead delayed discovery of her physical injury claims.

25  *Id.* at 1-8. Grisham concluded her position paper by continuing that distinction:

26  > *Soliman* no longer bars Grisham's physical injury claims, which should

27  > proceed regardless of the fate of her addiction claims. Grisham should be

28  > allowed to amend her pleadings to allege delayed discovery of her UBPA

5

1  addiction-based injury claims, including unfair competition/unlawful
2  business practices and negligent and/or intentional false and misleading
3  advertising.  Further, her causes of action for physical injury [listing
4  causes of action] should be allowed to proceed.

5  *Id.* at 8.  This Court did grant the requested leave to amend. Ct. Dkt. No. 88.

6  After Grisham was granted leave, she filed her FAC, which contained the "50
7  pages of delayed discovery allegations," all of which attempt to toll Grisham's UCL
8  claims for economic injury from her addiction.   *See* FAC ¶¶ 169-189.   After
9  Defendants moved to dismiss the UCL claims, Grisham in her opposition continued to
10  distinguish her UCL claims from her physical injury claims:

11  First, consistent with the California Supreme Court's opinion, Grisham's
12  FAC was filed for the purpose of alleging delayed discovery of
13  Defendants' wrongdoing *so that her Unfair Competition Law ("UCL")*
14  *and related economic injury claims can survive the statute of*
15  *limitations*.   To that end, her FAC specifically alleges delayed discovery
16  of defendants' business practices in targeting minors through fraudulent
17  marketing and in manipulating nicotine levels in cigarettes, including
18  concealing the addictiveness of nicotine. *See Grisham v. Philip Morris*
19  *USA, Inc.*, (2007) 40 Cal. 4th 623, 639, footnote 10. . . .

20  * * *

21  Second, it is uncontested that Grisham's FAC timely alleges causes of
22  action for smoking-related physical injuries including emphysema and
23  persistent and chronic periodontitis and gingivitis.   And per the
24  California Supreme Court's opinion, Grisham's Original Complaint
25  timely alleged (as reiterated in her FAC) appreciable physical harm from
26  addiction, *running from when she <u>contracted</u> these serious physical*
27  *ailments*.

28  Dkt. No. 104, Opp. to Mtn. to Dismiss at 1:17-22; 2:22-24 (emphasis added).

It is rather remarkable that Grisham – knowing that she had well over a decade's history of periodontal disease – repeatedly insisted to this Court and the appellate courts that she had no periodontal disease until April 2001. It is even more remarkable that Grisham now – having repeatedly told this Court that the tolling allegations added to her FAC *only* pertained to her UCL claims – represents to this Court that those very same allegations were an effort to toll her physical injury claims.

But Grisham actually had one thing right in the above quote: Her periodontal injury claim *did* accrue from the date that she contracted that injury. The reason Grisham had it right is because, until now, she has never stated that she is relying on the discovery rule or the fraudulent concealment doctrine to toll her physical injury claims, and most importantly, she never pled any facts to toll her physical injury claims. Because Grisham did not invoke the discovery rule or any other tolling doctrine, her periodontal injury claims are governed by the date-of-injury accrual rule. *See* Defs' Opening Mem. at 13-17. And because Grisham sustained her periodontal injuries more than a year before she sued, her claims for that harm must be dismissed.

**II.   Even if she had invoked a tolling theory, Grisham has failed to show that she could successfully toll her periodontal injury claims.**

That Grisham did not invoke any exception to the date-of-injury accrual rule is dispositive of Grisham's periodontal injury claims. Nevertheless, even if she had invoked a tolling exception, her action would still be untimely. Indeed, Grisham offers two tolling arguments -- (1) the *DOJ* case, via offensive collateral estoppel, establishes fraudulent concealment tolling, and (2) she had no reason to discover the cause of her injury until May 2001 -- and both lack merit as a matter of law.

**A.   *DOJ* has no collateral estoppel impact on the statute of limitations (or any other aspect of this case).**

Grisham did not plead the fraudulent concealment doctrine. Neither her complaint nor the FAC identifies the alleged fraud, above and beyond her underlying fraud claims, that kept her from suing for her periodontal injuries. Nor did she plead

7

1    any reliance on such fraud, nor could she given her past testimony in this case.

2         Having no answer to these flaws in her request for fraudulent-concealment

3    based tolling, Grisham -- without connecting anything to the facts of her case or this

4    statute of limitations motion -- indiscriminately cites, quotes, and clings to the district

5    court's ruling in *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1 (D.D.C.

6    2006), *aff'd in part, vacated in part*, --- F.3d ---, 2009 WL 1423964 (D.C. Cir. 2009)

7    ("*DOJ*").[1]  Grisham asks this Court to apply collateral estoppel to certain unspecified

8    findings made in that case and contends that those findings, if given preclusive effect,

9    will somehow be sufficient to toll the statute of limitations under the fraudulent

10   concealment tolling doctrine. *See* Pl's. Br. at 11-17.

11        There are three short and dispositive responses to Grisham's reliance on *DOJ*.

12   First, because Grisham has not invoked the fraudulent concealment doctrine, she

13   cannot toll the statute of limitations via *DOJ*/collateral estoppel or any other belatedly

14   urged theory. *See, e.g., Wasco, supra.* Second, Grisham has never pled collateral

15   estoppel as is required for a party seeking to invoke that doctrine. *See, e.g.,*

16   *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1990). Third, the *DOJ*

17

18   _____

19   [1]  Grisham summarily contends that Defendants' statute of limitations motion
     "violates Judge Kessler's permanent injunction." Pl's. Br. at 6. But she does not
20   explain precisely *how* the motion violates the injunction, which is reason enough to
     reject this argument. In any event, the injunction is stayed, *United States v. Philip*
21   *Morris USA Inc.*, No. 06-5267, Order (D.C. Cir. Oct. 31, 2006) (Ex. 4), and thus has
     no legal effect. Even if it were not stayed, the injunction could only be enforced in the
22   court that entered it, *Baker v. General Motors Corp.*, 522 U.S. 222, 236 (1998), and
     could not be enforced by Grisham, who was not a party to *DOJ* and therefore lacks
23   standing. *See, e.g., In re Employment Discrimination Litig. Against the State of*
     *Alabama*, 213 F.R.D. 592, 601 (M.D. Ala. 2003). Moreover, it more than strains
24   credulity that an injunction in the RICO *DOJ* case could give cover to a California
     litigant who, among other things, had an injury for over sixteen years before suing and
25   did not plead tolling as the law requires and repeatedly represented to the courts that
     her injury was sustained many years later. Finally, the injunction does not apply to
26   conduct in litigation for at least three reasons:  (1) on its plain terms, the injunction
     does not state that it applies to statements made in litigation, (2) the injunction is
27   limited to the type of conduct for which the defendants have been found liable and
     defendants were not "found liable" for any statements made in the course of a judicial
28   proceeding -- indeed, litigation conduct cannot form the basis of a RICO violation,
     and (3) to apply the injunction to conduct in litigation would be a prior restraint on
     speech in violation of the First Amendment.

                                            8

1  case did not involve the claims of any individual smoker -- let alone the issue of

2  whether this plaintiff's claim is time-barred -- and thus has no bearing here.

3      For all these reasons, Grisham's reliance on *DOJ* is a red herring. Nevertheless,

4  because Grisham clings so heavily (but vaguely) to the federal RICO *DOJ* case in

5  opposing a state law statute of limitations motion, Defendants provide below for the

6  Court's benefit a brief background on the *DOJ* litigation, and then a further

7  explanation of why the findings in that case could not be given preclusive effect here

8  to toll the limitations period, even had Grisham pled tolling and collateral estoppel.

9          **1. The *DOJ* RICO litigation.**

10     The *DOJ* lawsuit was filed in 1999 by the U.S. government against the major

11  U.S. tobacco companies (including defendants here) and others, alleging a variety of

12  different fraudulent acts. *See* 449 F. Supp. 2d at 31-32. The government was not

13  seeking damages, and was not suing on behalf of any individual smoker. Instead, at

14  trial, the government sought only equitable relief to "prevent and restrain" future

15  violations of RICO. *Id.* at 27. Because the government sought only equitable relief,

16  the court denied defendants' request for a jury trial. *United States v. Philip Morris,*

17  *Inc.*, 273 F. Supp. 2d 3, 11 (D.D.C. 2002).

18     On August 17, 2006, the district court issued its 1,653 page decision. Largely

19  adopting the government's proposed findings of fact verbatim, the court concluded

20  that the government had established that defendants had violated RICO, 449 F. Supp.

21  2d at 27-28, and granted certain equitable relief. *Id.* at 938-45.

22     On May 22, 2009, a panel of the D.C. Circuit "affirm[ed] the district court's

23  judgment of liability" as to all defendants except for two trade organizations. 2009

24  WL 1423964, at *48. In affirming the liability determination, the D.C. Circuit

25  repeatedly cautioned that it could "not set aside the district court's findings of fact

26  unless they are clearly erroneous." *Id.* at *6. Indeed, the court acknowledged that it

27  might have even reached different conclusions from the district court if it were

28  reviewing the evidence independently: "While we may not have reached all the same

1    conclusions as the district court, under the highly deferential clearly erroneous

2    standard the district court's factual findings have sufficient evidentiary support . . . ."

3    *Id.* at \*32; *see also*, *e.g.*, *id.* at \*23 ("even if we 'would have decided the case

4    differently,' as 'where there are two permissible views of the evidence, the

5    factfinders's choice between them cannot be clearly erroneous'").

6         Defendants in *DOJ* intend to move for rehearing or rehearing *en banc*, which is

7    due on July 6, 2009. If necessary, defendants intend to seek *certiorari* review in the

8    U.S. Supreme Court.

9              **2. The timeliness of Grisham's claims was not litigated in *DOJ*.**

10        As the party seeking to invoke collateral estoppel, plaintiff bears the burden of

11   establishing all of its elements. *See*, *e.g.*, *In re Subpoena Duces Tecum Issued to*

12   *Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006).[2]   In

13   addition, any possible exercise of collateral estoppel here would be "non-mutual

14   offensive collateral estoppel," because Grisham was not a party to *DOJ* and its effect

15   would be to prevent defendants from litigating certain issues. Courts have recognized

16   that this extreme form of collateral estoppel "presents a unique potential for

17   unfairness," *Jean Alexander Cosmetics Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248

18   (3d Cir. 2006), and thus "the restrictions on the use of the doctrine are more

19   stringent." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395 n.9 (5th Cir.

20   1998); *see also*, *e.g.*, *Grubbs v. United Mine Workers of Am.*, 723 F. Supp. 123, 126-

21   27 (W.D. Ark. 1989) ("the doctrine of non-mutual offensive collateral estoppel should

22   be cautiously invoked").

23        Grisham acknowledges that, among other things, she must demonstrate that the

24   issue for which she seeks preclusion is (1) "***identical***" to an issue that was (2)

25   "***actually . . . litigated*** in the prior action" and (3) "***necessary*** to the resolution of the

---

26   [2]   Grisham suggests at one point in her brief that California law governs the
     preclusive effect of the *DOJ* judgment. Pl's. Br. at 17. To the contrary, the preclusive
27   effect of a federal judgment based on federal law (such as *DOJ*) is governed by
     federal law. *See*, *e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 488 n.9 (1994); *Nutter v.*
28   *Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir. 1993).

1   prior action." Pl's. Opp. at 15 (emphases added) (citations omitted); *see also*, *e.g.*,
2   *Jack Faucett Assocs. v. AT&T Co.*, 744 F.2d 118, 125 (D.C. Cir. 1984) (stating the
3   elements of collateral estoppel); *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322,
4   326 (4th Cir. 2004) (same).   In particular, to make this showing, Grisham must
5   establish that the issue is "identical *in all respects* to the issue decided in the first
6   proceeding." *Sydnes v. C.I.R.*, 647 F.2d 813, 814-15 (8th Cir. 1981) (emphasis
7   added); *see also*, *e.g.*, *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir.1999) (same).  "It is
8   not sufficient that an issue is 'factually similar' to the one in an earlier case . . . the
9   issues must be *identical* and involve the same facts and surrounding context." *Visa*
10  *U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121, 1123 (N.D. Cal. 2005)
11  (emphasis in original) (citation omitted).

12         Grisham cannot make this heavy showing.    The fundamental flaw in her
13  argument is that the government in *DOJ* was litigating a federal RICO claim to obtain
14  equitable relief, and was not litigating on behalf of any individual smoker. As a result,
15  the issue of whether any individual smoker's state-law claim is time-barred -- or
16  whether any state-law tolling doctrine might apply -- was not at issue in that case and
17  was not decided by that court. Indeed, the words "statute of limitations" do not appear
18  anywhere in the court's 1,653 page opinion.

19         At most, Grisham can point only to findings by the *DOJ* court that the
20  defendants engaged in certain fraudulent acts. But that is not identical to the standard
21  at issue here. As explained above, to invoke fraudulent concealment-based tolling, it
22  is not sufficient to show that some fraudulent conduct took place. Instead, the plaintiff
23  must prove "active conduct by a defendant, above and beyond the wrongdoing upon
24  which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."
25  *Guerrero*, 442 F.3d at 706.  Grisham cannot identify any finding by the *DOJ* court
26  that the defendants engaged in such specific conduct, and thus cannot demonstrate that
27  the identical issue was actually decided in *DOJ*. And even if the court had somehow
28  decided that issue, it would not have been necessary to the judgment, because the

1   "final outcome" of the *DOJ* lawsuit did not depend on the validity of any individual

2   smoker's claim. *Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009) ("[a] determination

3   ranks as necessary or essential only when the final outcome hinges on it").

4       This alone is further reason to reject Grisham's invocation of collateral estoppel

### 3. The numerous verdicts in favor of Defendants provide an independent reason why there can be no collateral estoppel.

7       Even if Grisham could somehow establish that the identical statute of

8   limitations tolling issue for which she seeks preclusion was actually and necessarily

9   litigated in *DOJ*, her request for collateral estoppel would fail for an independent

10  reason: Defendants have won so many judgments in cases raising the same

11  allegations presented in *DOJ* that it would be unlawful and unconstitutional to apply

12  preclusion based on the findings in that case.

13      The U.S. Supreme Court has directed that collateral estoppel should not be

14  invoked where "the judgment relied upon as a basis for the estoppel is itself

15  inconsistent with one or more previous judgments in favor of the defendant."

16  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979); *see also*, *e.g.*, *Jack*

17  *Faucett*, 744 F.2d at 125-26 ( "[o]ffensive estoppel should not be applied" where "the

18  judgment relied on is inconsistent with other decisions"). Consistent with that

19  directive, courts have expressed particular reluctance to apply preclusion offensively

20  in the mass tort context, where defendants often face numerous lawsuits with

21  inconsistent results. *See*, *e.g.*, *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334,

22  345-46 n.13 (5th Cir. 1982) ("The injustice of applying collateral estoppel in cases

23  involving mass torts is especially obvious."); *In re Benedictin Prods. Liab. Litig.*, 749

24  F.2d 300, 305 n.11 (6th Cir. 1984) (interpreting *Parklane Hosiery* as holding "that

25  offensive collateral estoppel could not be used in mass tort litigation"). As these

26  courts have explained, "[n]ot only does issue preclusion in such cases appear arbitrary

27  to a defendant who has had favorable judgments on the same issue, it also undermines

28  the premise that different juries reach equally valid verdicts." *Hardy*, 681 F.2d at 346;

12

1   *see also, e.g., Jack Faucett*, 744 F.2d at 129 (inconsistent verdicts "may have been

2   based on equally reasonable resolutions of doubt as to the probative strength of the

3   evidence or the appropriate application of a legal rule to the evidence") (quoting

4   Restatement (Second) of Judgments § 29 cmt. f, at 295). "It seems most inappropriate

5   for this Court to pick out one case upon which the jury reached a verdict for the

6   plaintiff, accord it preclusive effect, and at the same time to ignore all the others in

7   which equally competent juries have reached the opposite conclusion." *Harrison v.*

8   *Celotex Corp.*, 583 F. Supp. 1497, 1503 (D. Tenn. 1984).

9       Grisham ignores this threshold requirement for collateral estoppel. But it is yet

10  another reason why she cannot satisfy her burden in seeking preclusion. Although

11  Grisham does not identify precisely which of the thousands of findings made by the

12  *DOJ* court she seeks to give preclusive effect -- which itself is a reason to deny her

13  request[3] -- she seems to be focusing generally on the court's findings that the

14  defendants fraudulently denied the health effects and addictive nature of smoking.

15  *See* Pl's. Br. at 12-14. Defendants, however, have repeatedly won verdicts in cases

16  involving these same allegations. This is demonstrated by Appendix A, which

17  identifies the verdicts in favor of defendants and the allegations in those cases (as

18  reflected in the complaints and the opening and closing statements).

19      Most notably, two of these defense verdicts involved RICO claims very similar

20  to the RICO claims presented in *DOJ*. In *Blue Shield of N.J. Inc. v. Philip Morris,*

21  *Inc.*, No. 98 CV 3287 (E.D.N.Y), a health insurance company seeking to recoup

22  smoking-related medical expenditures brought federal RICO claims alleging

23  essentially the same schemes to defraud as in *DOJ*. *See* App. A at Gregory Reply

24  Decl., Ex. 1. In contrast to the *DOJ* court's findings, however, the *Blue Cross* jury

---

27  [3]    *See, e.g., Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001)

28  (refusing to "engage in a 'hunt and peck' exercise" where plaintiff had not identified
    which of approximately 900 findings could be given preclusive effect).

1  returned a *defense* verdict on the RICO claim.  *See Blue Cross* Verdict Form at IV, V

2  (Ex. 5).[4]

3      Similarly, in *Iron Workers Local Union v. Philip Morris, Inc.*, No. 1:97 CV

4  1422 (N.D. Ohio), labor union trust funds seeking to recoup smoking-related health

5  care expenditures brought state-law RICO claims based on these same allegations.

6  *See* App. A at Ex. 1.  As in *Blue Cross*, the *Iron Workers* jury returned a defense

7  verdict. Verdict Form, *Iron Workers*, Part V, Question 2; (Mar. 18, 1999) (Ex. 6).[5]

8      In addition, Defendants have won numerous defense verdicts in personal injury

9  lawsuits filed by individual smokers or their representatives that, although not

10  involving RICO, involved similar allegations of misconduct as in *DOJ*.  In particular,

11  as Appendix A demonstrates, Defendants have won several verdicts in cases alleging

12  that defendants misrepresented the health consequences of smoking, as well as in

13  cases in cases alleging that defendants misrepresented the addictive nature of smoking

14  and/or manipulated nicotine to make cigarettes more addictive.

15      To discard these numerous defense jury verdicts in favor of the determinations

16  of a *single judge* would expand nonmutual offensive collateral estoppel far beyond its

17  narrow procedural and constitutional limitations.    And it would be particularly

18  inappropriate to do so where even the court of appeals in *DOJ* recognized that

19  different fact finders could reach different conclusions about the evidence, expressly

20

21

22

---

23  [4]    The jury returned a plaintiff's verdict for plaintiffs' claims under N.Y. Gen. Bus. Law § 349, although at a fraction of the damages sought by plaintiffs. *See Blue*

24  *Cross* Verdict Form at 2.  That verdict, however, was subsequently overturned on appeal, *Empire Healthchoice, Inc. v. Philip Morris USA Inc.*, 393 F.3d 312 (2d Cir.

25  2004), and thus is a nullity for purposes of analyzing collateral estoppel. *See, e.g., Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989).

26  [5]    In addition, in *Falise v. American Tobacco Co.*, plaintiffs made similar RICO allegations. *See* App. A at Gregory Reply Decl., Ex. 1.  The *Falise* jury split and did

27  not reach a verdict on plaintiffs' claims.  Plaintiffs did not pursue these claims further. Courts have relied on hung juries as inconsistent verdicts. *See Setter v. A.H. Robins*

28  *Co., Inc.*, 748 F.2d 1328, 1330 (8th Cir. 1984).

14

acknowledging that "*we may not have reached the same conclusions as the district court.*" 2009 WL 1423964, at *32 (emphasis added).[6]

Recognizing the numerous defense verdicts in smoking and health cases, the only court to address the preclusive effect of the *DOJ* findings -- Judge Weinstein -- refused to apply collateral estoppel because (among other reasons) "defendants have won so many of the tobacco cases" that "according conclusive effect to the last of the series of litigations is inappropriate." *Schwab v. Philip Morris USA Inc.*, 449 F. Supp. 2d 992, 1079 (E.D.N.Y. 2006), *rev'd on other grounds*, *McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008). The same reasoning applies here. Indeed, Judge Weinstein's ruling is particularly significant because he was the trial judge in *Blue Cross* (as well as in *Falise*, which resulted in a hung jury, *see supra* at n. 5), and thus is uniquely situated to determine whether the judgments are inconsistent.

In short, Grisham's broad attempt to invoke *DOJ* to toll the statute of limitations fails on many levels: (1) she never pled the fraudulent concealment tolling doctrine; (2) she has never pled or identified what is the "above and beyond" fraud that she relies upon for tolling; (3) she disavowed any reliance on tobacco company statements during the very period in which she now wants to toll; (4) she never pled collateral estoppel; (5) *DOJ* did not decide any individual's statute of limitations

---

[6]     To be sure, many of these defense verdicts are general jury verdicts without the same level of specificity found in the *DOJ* opinion. But as the D.C. Circuit has explained with respect to inconsistent prior decisions, "[i]t is enough if that inconsistent determination undermines the court's confidence in the earlier decision." *Jack Faucett*, 744 F.2d at 130. Indeed, as noted above, fundamental fairness mandates that courts err on the side of rejecting offensive collateral estoppel if there is any doubt as to whether a prior judgment might be inconsistent. *See supra* at 10-11. Moreover, because the burden of proof on collateral estoppel rests with the party seeking estoppel, plaintiffs affirmatively must prove that the prior verdicts are *not* inconsistent. Here, Grisham cannot establish this. *See, e.g., Hardy*, 681 F.2d at 348 (relying on general jury verdicts as inconsistent in declining to apply collateral estoppel, notwithstanding the fact that "it is usually not possible to say with certainty what these juries based their verdicts on"); *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 550 P.2d 1185 (Or. 1976) ("holding that a judge's finding could not be given preclusive effect in light of an inconsistent jury verdict notwithstanding the "general" nature of the jury's verdict.") (cited in the Reporter's Note to the Restatement (Second) of Judgments § 29, cmt. f as an example of the prohibition against inconsistent verdicts).

issues; (6) the D.C. Circuit opined that it may have decided the *DOJ* issues differently, but upheld the trial court's findings on the highly deferential "clearly erroneous" standard; and (7) *DOJ* is inconsistent with numerous judgments in Defendants' favor.

## B. Even if Grisham had pled the discovery rule, her periodontal injury claims would still be time-barred.

After her flawed *DOJ* argument, Grisham's second newly-claimed (and likewise flawed) ground for tolling the statute of limitations is the discovery rule. *See* Pl's Opp. at 17-24. In that argument, Grisham again represents to the Court that she invoked "delayed discovery extensively throughout the FAC . . . ." *Id.* at 18. What Grisham fails to tell the Court is that the delayed-discovery allegations added to the FAC *only* pertained to her UCL economic injury claims, and Grisham fails to remind the Court that she has repeatedly pled and taken the position that she had no physical injury until just within the one-year limitations period. Indeed, Grisham fails to put her brief what she admitted in her Statement of Genuine Issues, i.e., that her complaint identifies no periodontal injury before April 2001. Pl's CF 51. Again, that Grisham never pled the discovery rule fully disposes of her new argument.

But, as further demonstrated below, even if Grisham had pled the discovery rule exception, she could not meet her burden to prove the statute of limitations was tolled from the time she was injured to a date within the limitations period.

### 1. Grisham's "April 2001" accrual argument is flawed both factually and legally.

Grisham repeatedly contends that she "first *learned* in April 2001 from her periodontist that periodontal disease was smoking-induced, after which she timely filed suit on March 15, 2002." Pl's Opp. at 19 (emphasis added); *see also id.* at 6; *id.* at 8 (stating in heading that "Grisham first learned in approximately April 2001 from periodontist Sam Gilani that she suffered smoking-induced periodontal disease").

Grisham's contention misstates the record in a telling and illustrative respect. Contrary to Grisham's contention, Dr. Gilani (her periodontist) testified that he did

16

not tell Grisham that her periodontal injury was smoking related. Gregory Decl., Ex. 1, Gilani Depo. at 14:22-15:3. When asked if Dr. Gilani actually told her that her periodontal problems were caused by smoking, Grisham likewise answered under oath, "No." Gregory Decl., Ex. 23, Grisham I Depo. at 194:16-20.

In fact, what Dr. Gilani told Grisham was that he could not surgically place dental implants in her unless she quit smoking. *Id.* at 190:15-195:3; *see also* Pl's CF 103 (admitting Defs' UF 103). In response to that information, Grisham testified that, in May 2001, she did a search of "periodontal disease and smoking" on the internet, and that she learned that smoking led to periodontal disease. *Id.* at 195:8-196:9.

Grisham's statements that she "first learned" from Dr. Gilani that her periodontal disease was caused by smoking are misleading in at least five key respects. First, Dr. Gilani never told Grisham, as she represents, that the disease was "smoking-induced." Thus, Grisham's oft-repeated claim that "she was diagnosed with smoking-induced periodontal injury in April 2001" (*see, e.g.*, Pl's CF 40) is false.

Second, Grisham improperly suggests that a doctor had to inform her that smoking had to harm her in order for her claim to accrue. *See, e.g., Rivas v. Safety-Kleen*, 98 Cal. App. 4th 218, 228, 119 Cal. Rptr. 2d 503 (2002) (rejecting argument that "accrual of the statute of limitations [is precluded] until the injured party has been explicitly informed that a certain substance or product caused the medical disorder").

Third, by repeatedly using the phrase "first learned," Grisham suggests that she had to ***know*** that her smoking caused her periodontal injury. But the discovery rule is a "suspect or should have suspected" standard. *See, e.g., Goldrich v. Natural Y Surgical Specialties*, 25 Cal. App. 4th 772, 780, 31 Cal. Rptr. 2d 162 (1994) ("Viewed from the perspective of a reasonable person, Mrs. Goldrich must have suspected or should have suspected that she had been harmed, and she must have suspected or certainly should have suspected that her harm was caused by the implants.").

Fourth, by hiding that it was a simple internet search (rather than a periodontist) that told her that smoking can cause periodontal disease, Grisham obscures the fact

17

1  that the same information was just as easily obtainable earlier. *Cf. Glue-Fold, Inc. v.*
2  *Slautterback Corp.*, 82 Cal. App. 4th 1018, 1030-31, 98 Cal. Rptr. 2d 661 (2000)
3  ("Glue Fold's showing in opposition to the summary judgment motion was inadequate
4  to carry [its] burden" because it "did not show that it exercised reasonable diligence in
5  investigating or that earlier efforts would have been fruitless.").

6      Fifth, by hiding the fact that it was a different piece of information (Gilani will
7  not surgically place dental implants in me unless I quit smoking) that led her to
8  discover a connection between smoking and periodontal disease, Grisham hides the
9  point that it is ***only inquiry notice*** that is needed to trigger the statute of limitations:

10      "[P]resumptive" as well as "actual" knowledge will commence the
11      running of the statute. The applicable principle has been expressed as
12      follows: "When the plaintiff has notice of information or circumstances
13      to put a person on *inquiry* or *has the opportunity to obtain knowledge*
14      from sources open to his investigation . . . the statute begins to run."

15  *Sanchez v. South Hoover Hosp.*, 18 Cal. 3d 93, 101 (1976) (emphasis in original); *see*
16  *also Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 882-83 (9th Cir. 1983)
17  (holding that statute begins to run once a "plaintiff has obtained sufficient information
18  to put a reasonable person on notice of the possible origin of the alleged injury.").

19      Dr. Gilani's admonition, within the limitations period, that he would not
20  perform dental surgery on Grisham unless she quit smoking is precisely the kind of
21  information that would make a reasonable person suspicious of smoking and
22  periodontal disease.   That information properly led Grisham to inquire.   But
23  Grisham's problem, as discussed below, is that she was given several other pieces of
24  information outside the limitations period that had already put her on inquiry notice.

25          **2. Numerous uncontroverted facts establish inquiry notice**.

26      Grisham has admitted several facts that establish that she was put on inquiry
27  notice outside of the limitations period, including the following:

28

18

1     •     When Grisham first visited Dr. Gordon in February 1993, she was given
2   a questionnaire that stated:  "These questions *are for your benefit* and assure that
3   treatment will take into consideration your past and present health status.  Some
4   questions may seem unrelated to your dental condition, *but they are all associated*
5   *with proper dental care*."  Pl's CF 52 (emphasis added).  Question No. 12 of the
6   questionnaire Grisham was provided by Dr. Gordon's office asked, "Do you smoke?
7   If yes, how much?"  Pl's CF 53.  In that same questionnaire, Grisham admitted that
8   she had "bad teeth."  Pl's CF 14.  Grisham also admits that she knew by that point that
9   she had lost teeth.  Pl's CF 27-28, 29.  If it is reasonable that Dr. Gilani's refusal to
10  put implants in Grisham because of her smoking put her on notice to investigate, then
11  it would have been just as reasonable, if not more so, for Grisham to investigate
12  whether smoking was causing her to have bad teeth and lost teeth, particularly after
13  being specifically advised that not smoking is associated with proper dental care.

14    •     In that same February 1993 questionnaire, Grisham volunteered that she
15  was quitting smoking. Pl's CF 53.

16    •     When Grisham first visited Dr. Hoefke on April 2, 1996, Grisham was
17  asked to complete another patient questionnaire so that she would be provided "the
18  best possible care."  Pl's CF 54.  Grisham again was asked in a dental questionnaire
19  whether she smoked.  *Id.*  In that same questionnaire, Grisham acknowledged that she
20  had "major dental problems."  Pl's CF 17.

21    •     On February 20, 1997, Dr. Hoefke communicated his periodontitis
22  diagnosis to Grisham.  Pl's CF 18.  During that same visit, Dr. Hoefke talked with
23  Grisham about her smoking habits, and Grisham reported that she smokes one pack of
24  cigarettes per day, and that she was using Nicorette gum.  Pl's CF 55.  On that same
25  visit, Grisham's gums bled upon probing, she was advised that she had bone loss
26  around all her teeth, and she was advised that extraction was likely on several of her
27  remaining teeth.  Pl's CF 32, 34, 35.  Dr. Hoefke recorded in his office notes for that
28  visit that Grisham "was aware of poor dental condition of mouth."  Pl's CF 19.

19

1   •   On February 27, 2001, Dr. Tanouye, a medical doctor, told Grisham that
2   she had gingivitis. Pl's CF 57. During that same visit, Dr. Tanouye told Grisham that
3   there were significant health risks associated with smoking. Pl's CF 70. Also during
4   that visit, Dr. Tanouye prescribed Wellbutrin for Grisham to help her quit smoking.
5   Pl's 141. Although Dr. Tanouye did not advise Grisham to quit smoking specifically
6   because she had gingivitis, he did, per his general practice advise Grisham on that visit
7   that stopping smoking would be better for her oral health. Pl's CF 58.    This fact
8   alone was sufficient to raise the necessary suspicion. *Cf. Rivas*, 98 Cal. App. 4th at
9   228 ("[Plaintiff] was asked to provide a list of all the chemicals her came in contact
10  with and told in no uncertain terms to keep away from the solvent he was using at
11  work. This alone should have been sufficient to rouse a reasonable person's suspicion
12  and lead to further investigation.").

13  •   On March 8, 2001, Grisham completed another patient questionnaire
14  (this time for Dr. Oswell and Dr. Cruz), that again asked her whether she smoked.
15  Pl's CF 56. Grisham responded, "Yes, but quitting." *Id.* Just nine days after Dr.
16  Tanouye told Grisham that stopping smoking would be better for her oral health and
17  on the same day that yet another dental office's questionnaire asked her if she smoked,
18  Grisham was told that she had severe periodontal problems. Pl's CF 22.

19  •   From January 1, 1966 until March 15, 2001 (one year before she sued),
20  Grisham received warnings on every cigarette package that she purchased.  Pl's CF
21  59-62. Those warnings told her that smoking "may be hazardous;" "is dangerous;"
22  entails "serious risks;" can cause lung cancer, heart disease, and emphysema; contains
23  carbon monoxide; may complicate pregnancy; and can cause fetal injury, premature
24  birth rate, and low birth rate. *Id.* This information contributed to Grisham's inquiry
25  notice. *Cf. Rose v. Fife*, 207 Cal. App. 3d 760, 769-770, 255 Cal. Rptr. 440 (1989)
26  (noting that "general mistrust and suspicion about IUDs per se" put the plaintiff on
27  inquiry notice concerning specific injury allegedly caused by IUD).

28

1    In short, outside the limitations period, there was more than sufficient

2    information provided to Grisham to put her on notice to investigate smoking as a

3    potential cause of her periodontal injuries. Indeed, this collective information weighs

4    far more heavily in favor of an investigation than the sole fact that Dr. Gillani would

5    not perform dental implant surgery unless Grisham stopped smoking. Accordingly,

6    even if Grisham had pled the discovery rule, her action would be barred.[7]

7            **3. Grisham did not act diligently**.

8    Although the above facts establish that Grisham's periodontal injury claims are

9    untimely under the unpled discovery rule, dismissal of those claims is further

10   supported by Grisham's neglect in investigating and seeking treatment for her injuries.

11   *See* Defs' Opening Mem. at 20-22. Grisham does not dispute that she did not obtain

12   all recommended treatment and often delayed seeking treatment and advice

13   concerning her injuries. Pl's CF 75, 76, 79-80, 81, 82, 84, 86-89, 91, 92, 94. She

14   admits that she never investigated smoking as a cause of her periodontal injuries until

15   May 2001. Pl's CF 101.

16   The discovery rule requires plaintiffs to investigate their injuries and delays in

17   seeking treatment do not toll the limitations period. See Defs' Opening Mem. at 21.

18   If the law were otherwise, then a person who ignored an injury and never sought

19   treatment could be placed in a better limitations position than a person who more

20   quickly sought treatment and reasonably investigated and mitigated her injuries. In

21   short, Grisham's lack of diligence provides further grounds for finding Grisham's

22   periodontal claims untimely under the discovery rule. The overriding point, however,

23   [7]   Grisham summarily intimates that, under the discovery rule, she had to
24   suspect Defendants' specific wrongdoing in order for the action to accrue. Pl's Opp.
     at 18. But wrongdoing need only be suspected in the lay sense, i.e., that "someone has
25   done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110, 245
     Cal. Rptr. 658 (1988). *See id.* at 1110-11 (rejecting rule that plaintiff has to know or
26   should have known of the facts constituting the wrongful conduct); *id.* at 1111
     (approving rule from prior case that plaintiff does not have to know why drug is
27   defective in order for the statute of limitations to accrue under the discovery rule).
     Here, Grisham believed that she was wronged once she believed that smoking caused
28   her periodontal disease. The problem with her unpled discovery rule theory is that she
     was on inquiry notice of that same alleged wrong many years before she ever sued.

1 is that Grisham never pled that rule as to those claims and in fact repeatedly told the
2 court that her efforts to toll only pertained to her UCL claims.

3 **III.    Grisham's alleged second-injury claim must be dismissed.**

4     **A.    Grisham's emphysema/COPD story keeps shifting.**

5     In Grisham's original complaint, she pled that she "was diagnosed with the
6 beginning stages of emphysema on or about March 28, 2001." Gregory Decl., Ex. 5,
7 Complaint, ¶ 31. In her December 2002 deposition, Grisham testified that "*I don't*
8 *think I was actually diagnosed in March*, but I had a physical in March. And the
9 physical said that *the lungs were clear* . . . ." Gregory Decl., Ex. 23, Grisham I Depo.
10 at 165:9-19 (emphasis added). Grisham further testified that Dr. Tanouye called her
11 after the March 28, 2001 physical to tell her that the lung x-ray was clear. *Id.* at
12 165:14-167:25. Grisham also testified that, due to shortness of breath, she saw Dr.
13 Tanouye again in July 2001, and Dr. Tanouye told her that she had either asthma or
14 COPD. *Id.* Grisham stated she had experienced no symptoms of COPD before July
15 2001, and was not even sure that she had a real COPD diagnosis in July, and that she
16 had pled "COPD" to "cover the bases." *Id.* at 197:8-199:8.

17     Notwithstanding her testimony that she was not diagnosed with COPD on
18 March 28, 2001 and that she was told her lungs were clear on that date, Grisham filed
19 her FAC in July 2007, again alleging that she "was diagnosed with the beginning
20 stages of emphysema on or about March 28, 2001." FAC. ¶ 31.

21     When Grisham was deposed again in February 2009, she indicated that she was
22 unsure as of 2008 that she had COPD and that her claimed damages for COPD all
23 relate to *future* treatment. *See* Defs' UF 136, Grisham II Depo. at 40:2-7; 196:22-25.
24 By claiming only future damages in February 2009, Grisham was necessarily
25 disclaiming any COPD/emphysema claim and damage from March or July 2001.

26     Faced with proof that there never was a diagnosis of "the beginning stages of
27 emphysema on or about March 28, 2001," Grisham now says that "dating back to
28 March 28, 2001, Dr. Tanouye had diagnosed her with asthma or COPD." Pl's Opp. at

23:11-14.   But this new claim contradicts her sworn testimony that there was no March 2001 diagnosis and that she was told after her March physical that her lungs were clear.   This new claim also contradicts the fact that Dr. Tanouye's records from March 28, 2001 fail to reflect any COPD or emphysema diagnosis. Defs' UF 145.

**B.   Grisham has not overcome Defendants' grounds for summary judgment of the second-injury claim.**

In their opening brief, Defendants stated three grounds for dismissal of the COPD claim, all of which remain intact despite Grisham's changing COPD story.

First, Grisham has disclaimed her sole second-injury theory that she was diagnosed with an appreciable injury on March 28, 2001.   In December 2002, Grisham testified under oath that there was no such diagnosis and that her lungs were clear in March 2001.   Moreover, Grisham testified in February 2009 that she only claims future damages for COPD.   Thus, not only has Grisham admitted that there was no diagnosis in March 2001, but she has admitted under oath that she has no COPD/emphysema damage as of February 2009.   Because the COPD theory pled in her complaints has been disclaimed by Grisham, it should be dismissed.[8]

Second, even if Grisham actually had COPD or emphysema in 2001, her COPD claim should still be dismissed because she told Dr. Tanouye that she had COPD in February 2001.   Grisham claims that Defendants have contradicted themselves by claiming that "Grisham has been diagnosed with COPD." Pl's Opp. at 23.   Once again, Grisham is misstating the record, as Defendants never claimed that Dr. Tanouye *diagnosed* Grisham in February 2001.   To the contrary, Defendants stated that there was no diagnosis and that the COPD information came from Grisham:

---

[8]   Grisham claims that she has been "formally diagnosed with mild COPD, by a lung function test, administered in the Spring of this year." Pl's Opp. at 23.   But this 2009 COPD claim has never been pled and should be disregarded.   *See, e.g., Sovereign Gen. Ins. Servs., Inc. v. National Cas. Co.*, 2008 WL 448041, *7 (E.D. Cal. 2008) (holding that plaintiff "cannot rely on unpled claims in order to defeat a motion for summary judgment").

23

Notwithstanding the above, Grisham told Dr. Tanouye on February 27, 2001 – more than a year before she filed suit – that she had COPD. UF 139. Grisham and Dr. Tanouye discussed (a) Grisham's visible gingivitis and abscess; (b) her COPD, and (c) her need to quit smoking because COPD was related to her smoking. UF 140, Tanouye Depo. at 19:12-16; 24:17-27:6; 69:5-12; 73:23-74:23. Also on February 27, 2001, Dr. Tanouye prescribed Wellbutrin to help Grisham quit smoking. UF 141, *id.* The patient chart completed by Dr. Tanouye for that visit reflects an "impression:" "COPD – quit smoking," as well as his Wellbutrin prescription. UF 142.

Dr. Tanouye *testified that he did not actually diagnose Grisham* with COPD on that date, but instead received the COPD information from Grisham. UF 143; Tanouye Depo. at 30:14-19. Grisham admits that Dr. Tanouye's information about Grisham's health on February 27, 2001 came from Grisham. UF 144. Grisham Depo. II at 204:1-206:25.

Defs' Opening Mem. at 13 (emphasis added). In her opposition papers, Grisham only chose to contest that: (1) Dr. Tanouye *diagnosed* Grisham with COPD; and (2) Grisham told Dr. Tanouye that she had been *diagnosed* with COPD. Pl's CF 139. But these were points that Defendants did not assert. Grisham avoided addressing and did not dispute that she *told* Dr. Tanouye that she had COPD, and that Dr. Tanouye's information about Grisham's health on February 27, 2001 came from Grisham. Plt's CF 139, 144. Although the dispositive point is that Grisham disclaimed the "beginning states of emphysema" theory pled her complaint, her alleged second-injury claim can still be dismissed on this additional ground.

Third, to the extent Grisham ever has had COPD, it is barred by the first-injury accrual rule. See Defs' Opening Mem. at 22. Under that rule, Grisham's personal injury action for all her injuries accrued upon her first injury, i.e., her periodontal harm. As Defendants informed the Court in their opening brief, the question of

24

whether the first injury rule applies in tobacco cases involving multiple injuries has been certified by the California Supreme Court in the *Pooshs* case. *Id.* at 22 n. 9. But the Court if it so chooses need not even reach this third ground because the other two grounds independently dispose of Grisham's COPD/emphysema claim.

## CONCLUSION

For all the above reasons, and all the reasons stated in their opening brief, Defendants are entitled to summary judgment on Grisham's claim for her periodontal injuries and on her COPD/emphysema claim.


Dated:  June 29, 2009

Gary R. Long, *pro hac vice*
Tammy B. Webb
Patrick J. Gregory
SHOOK, HARDY & BACON L.L.P.


Attorneys for Defendant
PHILIP MORRIS USA INC.


and


Elizabeth P. Kessler, *pro hac vice*
JONES DAY
325 John H. McConnell Boulevard
Columbus, OH  43125


Peter N. Larson
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104


Attorneys for Defendant BROWN &
WILLIAMSON HOLDINGS, INC. (f/k/a
Brown & Williamson Tobacco
Corporation)

25