1   Gary R. Long, *pro hac vice*
     glong@shb.com
2   SHOOK, HARDY & BACON L.L.P.
     2555 Grand Blvd.
3   Kansas City, MO 64108
     Telephone: (816) 474-6550
4   Facsimile: (816) 421-5547

5

6   Tammy B. Webb (SBN 227593)
     tbwebb@shb.com
7   Patrick J. Gregory (SBN 206121)
     pgregory@shb.com
8   SHOOK, HARDY & BACON L.L.P.
     333 Bush Street, Suite 600
9   San Francisco, California 94104-2828
     Telephone: (415) 544-1900
10  Facsimile:  (415) 391-0281

11

    Attorneys for Defendant,
12  PHILIP MORRIS USA INC.
    (f/k/a Philip Morris Incorporated)
13

14  [Additional counsel listed on signature page]

15              **UNITED STATES DISTRICT COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17  Leslie L. Grisham,                          )   Civil Action No. CV-02-7930 SVW (RCx)
                                                 )
18          Plaintiff,                           )   **DEFENDANTS' MEMORANDUM IN**
                                                 )   **RESPONSE TO PLAINTIFF'S**
19      v.                                       )   **SUPPLEMENTAL BRIEF ON**
                                                 )   **COLLATERAL ESTOPPEL/ISSUE**
20  Philip Morris, Incorporated, et al.,         )   **PRECLUSION IN RELATION TO**
                                                 )   **MOTION TO STAY**
21          Defendants.                          )
                                                 )   Date:      September 14, 2009
22                                               )   Time:      1:30 p.m.
                                                 )   Location:   Courtroom 6
23                                               )   Judge:   The Honorable Stephen V. Wilson
                                                 )
24                                               )
                                                 )   Filed Concurrently Herewith: Declaration
25                                               )   of Patrick J. Gregory, Appendix A, Notice
                                                 )   of Manual Filing
26                                               )

27

28

164581V1

# **TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

BACKGROUND...................................................................................................4

ARGUMENT .......................................................................................................5

I.     Plaintiff bears a heavy burden in seeking to invoke
       collateral estoppel. ...................................................................................5

II.    Issue preclusion is inappropriate in light of past verdicts and decisions in
       similar cases in favor of defendants..........................................................7

III.   Plaintiff cannot establish that the *DOJ* findings were necessary to the
       judgment. ............................................................................................. 14

IV.    Applying collateral estoppel would cause severe prejudice and would not
       conserve judicial resources. ................................................................. 16

V.     Plaintiff's request for issue preclusion cannot justify denying defendants'
       pending summary judgment motions. ....................................................... 20

CONCLUSION ............................................................................................... 24

164581V1

# **TABLE OF AUTHORITIES**

## Cases

*Acevedo-Garcia v. Monroig*
  351 F.3d 547 (1st Cir. 2003)......................................................................18

*Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*
  968 F.2d 707 (8th Cir. 1992)...................................................................5, 8

*Appling v. State Farm Mut. Auto. Ins. Co.*
  340 F.3d 769 (9th Cir. 2003)...................................................................5, 8

*Badon v. Transworld Sys., Inc.*
  1997 WL 149986, at *5 (E.D. La. 1997)...................................................8

*Bates v. Union Oil Co. of Cal.*
  944 F.2d 647 (9th Cir. 1991).....................................................................17

*Beechwood Restorative Care Ctr. v. Leeds*
  436 F.3d 147 (2d Cir. 2006)......................................................................15

*BMW of N. Am., Inc. v. Gore*
  517 U.S. 559 (1996)...................................................................................17

*Bobby v. Bies*
  129 S. Ct. 2145 (2009)......................................................................2, 14, 15

*Brown v. Ransweiler*
  171 Cal. App. 4th 516, 89 Cal. Rptr. 801 (Ct. App. 2009)......................16

*Buckland v. Threshold Enterprs., Ltd.*
  155 Cal. App. 4th 798, 66 Cal. Rptr. 543, 549 (Ct. App. 2007) ..............16

*Burrell v. Armijo*
  456 F.3d 1159 (10th Cir. 2006) ...................................................................6

*Chavez v. Kent*
  34 Cal. App. 4th 1406, 41 Cal. Rptr. 72 (Ct. App. 1995)........................17

*Coburn v. Smithkline Beecham Corp.*
  174 F. Supp. 2d 1235 (D. Utah 2001) ..................................................18, 20

*Conley v. R.J. Reynolds Tobacco Co.*
  No. C 00-1740, slip op. at 12 (N.D. Cal. Dec. 2, 2002 .............................10

*Conte v. Justice*
  996 F.2d 1398 (2d Cir. 1993) .......................................................................6

*County of Santa Clara v. Atl.Richfield Co.*
  137 Cal. App. 4th 292, 40 Cal. Rptr. 313(Ct. App. 2006)........................16

*Empire Healthchoice, Inc. v. Philip Morris USA Inc.*
  393 F.3d 312 (2d Cir. 2004) .........................................................................9

164581v1

*Engle v. Liggett Group, Inc.*
   945 So. 2d 1246 (Fla. 2006) ................................................................14

*Erebia v. Chrysler Plastic Prods. Corp.*
   891 F.2d 1212 (6th Cir. 1989) ...............................................................9

*Estate of Portnoy v. Cessna Aircraft Co.*
   612 F. Supp. 1147 (S.D. Miss. 1985) ...................................................7

*Ezagui v. Dow Chem. Corp.*
   598 F.2d 727 (2d Cir. 1979) ................................................................15

*Gasoline Prods. Co. v. Champlin Ref. Co.*
   283 U.S. 494 (1931)..............................................................................20

*Gordon v. Microsoft Corp.*
   2003 WL 22281574, at *7 (Minn. Dist. Ct. 2003) ..............................15

*Grubbs v. United Mine Workers of Am.*
   723 F. Supp. 123 (W.D. Ark. 1989) .....................................................7

*Hardy v. Johns-Manville Sales Corp.*
   681 F.2d 334, 345-46 n.13 (5th Cir. 1982) .....................................8, 13

*Harrison v. Celotex Corp.*
   583 F. Supp. 1497 (E.D. Tenn. 1984) ..................................................8

*Heck v. Humphrey*
   512 U.S. 477, 488 n.9 (1994)................................................................6

*Held v. Mitsubishi Aircraft Int'l, Inc.*
   672 F. Supp. 369 (D. Minn. 1987).......................................................18

*In re Bendectin Prods. Liab. Litig.*
   749 F.2d 300, 305 n.11 (6th Cir. 1984) ................................................8

*In re Microsoft Corp. Antitrust Litig.*
   355 F.3d 322 (4th Cir. 2004) ................................................................6

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*
   439 F.3d 740 (D.C. Cir. 2006)...............................................................5

*In re Tobacco Cases II*
   2004 WL 2445337, at *7-8 (Cal. Super. Ct. 2004) .............................10

*Jack Faucett Assocs. v. AT&T Co.*
   744 F.2d 118, 124-25 (D.C. Cir. 1984) ...........................1, 6, 7, 8, 12

*Jaffree v. Wallace*
   837 F.2d 1461(11th Cir. 1988) .............................................................3

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*
   458 F.3d 244 (3d Cir. 2006) .................................................................7

iii

*Keith v. Buchanan*
   173 Cal. App. 3d 13, 220 Cal. Rptr. 392 (Ct. App. 1985)..................................16

*Labelle v. Philip Morris, Inc.*
   243 F. Supp. 2d 508 (D.S.C. 2001) ......................................................10

*McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ..................................2

*Miller v. Johns-Manville Sales Corp.*
   538 F. Supp. 631, 634 (D. Kan. 1982)..................................................18

*Montana v. United States*
   440 U.S. 147 (1979).........................................................................15

*Naegele v. R.J. Reynolds Tobacco Co.*
   28 Cal. 4th 856, 123 Cal. Rptr. 2d 61 (2002) ......................................22

*Neri v. R.J. Reynolds Tobacco Co.*
   2000 WL 33911224, at *14 (N.D.N.Y. 2000) .....................................10

*Nutter v. Monongahela Power Co.*
   4 F.3d 319 (4th Cir. 1993) ................................................................6

*Parklane Hosiery Co. v. Shore*
   439 U.S. 322 (1979)...............................................................1, 7, 14

*Philip Morris USA v. Williams*
   549 U.S. 346 (2007).........................................................................17

*Phonetele, Inc. v. AT&T*
   1984 WL 2943, at *2, *5 (C.D. Cal. 1984) .........................................20

*Pool Water Prods. v. Olin Corp.*
   258 F.3d 1024 (9th Cir. 2001) ...................................................3, 15, 22

*Pryer v. C.O. 3 Slavic*
   251 F.3d 448, 455 (3d Cir. 2001) .....................................................20

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*
   68 F.3d 1478 (2d Cir. 1995); ..............................................................5

*Robertson v. Yamaha Motor Corp.*
   143 F.R.D. 194 (S.D. Ill. 1992) ...........................................................8

*Schneider v. Lockheed Aircraft Corp.*
   658 F.2d 835 (D.C. Cir. 1981)..........................................................18

*Schwab v. Philip Morris USA Inc.*
   449 F. Supp. 2d 992 (E.D.N.Y. 2006) ....................................2, 3, 13, 18

*Setter v. A.H. Robins Co., Inc.*
   748 F.2d 1328 (8th Cir. 1984) .............................................................8

*State Farm Fire & Cas. Co. v. Century Home Components, Inc.*
   550 P.2d 1185 (Or. 1976) ................................................................13

iv

*Stichting v. Schreiber*
327 F.3d 173 (2d Cir. 2003) ....................6

*Sydnes v. C.I.R.*
647 F.2d 813 (8th Cir. 1981) ....................21

*Syverson v. IBM*
472 F.3d 1072 (9th Cir. 2007) ....................6

*Thrifty-Tel, Inc. v. Bezenek*
46 Cal. App. 4th 1559, 54 Cal. Rptr. 468 (Ct. App. 1996)....................16

*Trimble v. Westinghouse Elec. Corp.*
1999 WL 768307, at *5 (E.D. Pa. 1999) (same) ....................8

*United States v. Alaska*
521 U.S. 1 (1997)....................14

*United States v. Philip Morris Inc.*
156 F. Supp. 2d 1 (D.D.C. 2001)....................4

*United States v. Philip Morris USA Inc.*
449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009) ("*DOJ*"). ....................1

*United States v. Philip Morris, Inc.*
273 F. Supp. 2d 3 (D.D.C. 2002)....................4

*United States v. Smith-Baltiher*
424 F.3d 913 (9th Cir. 2005) ....................17

*Whelan v. Abell*
953 F.2d 663 (D.C. Cir. 1992)....................20

*White v. Ford Motor Co.*
500 F.3d 963 (9th Cir. 2007) ....................17

*Williams Enterprises, Inc. v. Sherman R. Smoot Co.*
938 F.2d 230 (D.C. Cir. 1991)....................18

*Winters v. Diamond Shamrock Chem. Co.*
149 F.3d 387, 395 n.9 (5th Cir. 1998) ....................7

**Statutes**

*Federal Practice & Procedure* § 4465 ....................20

N.Y. Gen. Bus. Law § 349....................9

RICO. 449 F. Supp. 2d at 27....................4, 21

**Other Authorities**

Restatement (Second) of Judgments § 29(4) & cmt. f (1982) .................... 8, 13

# INTRODUCTION

Plaintiff asks this Court to deny defendants their day in Court by applying issue preclusion[1] to all of the over 4,000 findings of a single judge in *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009) ("*DOJ*"). In plaintiff's view, the findings of this single judge in a different case, *brought* by different plaintiffs, under a different legal theory, are sufficient to "establish[] Grisham's fraud claims," Pl.'s Br. at 20, and to foreclose defendants forevermore from defending against plaintiff's allegations in this case. Plaintiff seeks this extreme remedy even though:

- Faced with the same allegations of misconduct as presented in *DOJ*, ***dozens of juries in other cases have returned verdicts in favor of defendants***.

- Even the three appellate judges who reviewed the judgment in *DOJ* acknowledged that -- although they had to uphold the findings under the "highly deferential clearly erroneous standard" -- they "***may not have reached all the same conclusions as the district court***." 566 F.3d at 1134 (emphasis added).

- Courts have repeatedly recognized that this type of preclusion -- non-mutual offensive preclusion -- should be invoked cautiously because of its potential for unfairness. *See, e.g., Jack Faucett Assocs. v. AT&T Co.*, 744 F.2d 118, 124-25 (D.C. Cir. 1984).

Plaintiff's proposed use of issue preclusion is unlawful, unfair, and unconstitutional. It is a bedrock principle that issue preclusion may not be applied where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979). That is the case here. Two juries have returned

---

[1] As plaintiff notes, the terms "issue preclusion" and "collateral estoppel" are used interchangeably and the "more preferred term" today is "issue preclusion." *See* Plaintiff's Supplemental Brief On Collateral Estoppel/Issue Preclusion In Relation To Motion To Stay ("Pl.'s Br.") at 5 & n.6.

164581V1

1 defense verdicts in favor of the defendants in lawsuits involving the same RICO

2 statute that was at issue in *DOJ* or a similar state counterpart. *See Blue Cross & Blue*

3 *Shield of N.J. Inc. v. Philip Morris, Inc.*, No. 98 CV 3287 (E.D.N.Y.) and *Iron*

4 *Workers Local Union v. Philip Morris, Inc.*, No. 1:97 CV 1422 (N.D. Ohio).

5 Numerous other juries have returned defense verdicts in personal injury cases brought

6 by individual smokers raising essentially the same allegations as those at issue in

7 *DOJ*. And the D.C. Circuit's acknowledgement that it might have reached different

8 conclusions than the district court only confirms further that different fact finders can

9 reach different conclusions based on the same or similar evidence as was presented in

10 *DOJ*.

11        For these and other reasons, in the only case to address whether *DOJ* should be

12 given preclusive effect, the same judge (Judge Weinstein) who tried the *Blue Cross*

13 RICO case resulting in a defense verdict squarely ruled that it should not. As Judge

14 Weinstein there ruled, "defendants have won so many of the tobacco cases" that

15 "according conclusive effect to the last of the series of litigations is inappropriate."

16 *Schwab v. Philip Morris USA Inc.*, 449 F. Supp. 2d 992, 1079 (E.D.N.Y. 2006), *rev'd*

17 *on other grounds*, *McLaughlin v. Amer. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).

18 The same reasoning applies here.

19        Moreover, plaintiff's attempt to invoke issue preclusion fails for three

20 additional and independent reasons. *First*, plaintiff bears the burden of establishing

21 which of the *DOJ* findings were "necessary to the bottom-line judgment" as opposed

22 to being merely "subsidiary finding[s] that, standing alone, [were] not outcome

23 determinative." *Bobby v. Bies*, 129 S. Ct. 2145, 2153 (2009). Plaintiff does not even

24 attempt to satisfy this standard, instead asking this Court simply to assume that *every*

25 finding made by the *DOJ* court that relates to plaintiff's claims was outcome

26 determinative. But as the Ninth Circuit has held, "[n]either the district court nor the

27 defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially

28

1    relevant and necessary findings," and thus where the plaintiff has not made this

2    finding-by-finding showing, issue preclusion should be denied. *Pool Water Prods. v.*

3    *Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001).

4         *Second*, applying preclusion would be highly prejudicial, yet provide only

5    minimal (at best) judicial efficiencies. Even if preclusion were applied, most of the

6    same evidence that would have been introduced without preclusion would still need to

7    be considered for purposes of the remaining issues in this case such as causation,

8    reliance, and punitive damages. This would defeat any efficiency gains while creating

9    the risk that the application of preclusion would taint the jury's consideration of these

10   remaining issues. In circumstances such as these, courts -- including Judge Weinstein

11   in *Schwab* -- routinely decline to apply collateral estoppel. *See*, *e.g.*, *Schwab*, 449 F.

12   Supp. 2d at 1079.

13        *Finally*, plaintiff's request for issue preclusion cannot defeat defendants'

14   pending summary judgment motions on statute of limitations or other grounds. No

15   individual smoker's claim was at issue in *DOJ* and none of the *DOJ* findings address

16   the issues presented by these summary judgment motions, which focus on plaintiff-

17   specific issues or issues of law. As a result, even if the findings were given preclusive

18   effect, they would have no bearing on these motions by resuscitating plaintiff's time-

19   barred claims or allowing plaintiff to circumvent her other failures in proof.

20        For all of these reasons, defendants respectfully request that this Court decline

21   to apply issue preclusion based on *DOJ*.[2]

22

23   [2]    Acknowledging that review in *DOJ* is still pending, plaintiff alternatively asks
24   this Court to stay this case until after the completion of review there. *See* Pl.'s Br. at
     4. Defendants respectfully submit that there is no need for a stay. As set forth in
25   defendants' pending summary judgment motions, plaintiff's claims are barred by the
     statute of limitations and fail as a matter of law for numerous other reasons.
26   Moreover, as explained below, plaintiff's request for issue preclusion is meritless
     regardless of the outcome of the *DOJ* appeal. But because a judgment that has been
27   reversed on appeal loses any preclusive effect, *Jaffree v. Wallace*, 837 F.2d 1461,
     1466 (11th Cir. 1988), defendants agree that it would make no sense to apply any
28   issue preclusion based on *DOJ* while the appeal is still pending in that case.

3

164581v1

## BACKGROUND

The *DOJ* lawsuit was filed in 1999 by the U.S. government against the major U.S. tobacco companies (including the defendants here, Philip Morris USA Inc. ("PM USA") and Brown & Williamson Holdings, Inc. ("Brown & Williamson"), certain parent companies, and two tobacco-related trade organizations. *See* 449 F. Supp. 2d at 31-32. After certain claims seeking damages were dismissed,[3] the government ultimately sought at trial only equitable relief to "prevent and restrain" future violations of RICO. 449 F. Supp. 2d at 27. The government was not litigating the claims of any smoker. And because the government sought only equitable relief, the court denied defendants' request for a jury trial. *United States v. Philip Morris, Inc.*, 273 F. Supp. 2d 3, 11 (D.D.C. 2002).

On August 17, 2006, the district court issued its 1,653 page decision. Largely adopting the government's proposed findings of fact verbatim, the court concluded that the government had established that defendants had violated RICO. 449 F. Supp. 2d at 27-28. The court granted wide-ranging equitable relief, from imposing restrictions on defendants' marketing to ordering corrective communications. *Id.* at 938-45.

Defendants appealed. On May 22, 2009, a panel of the D.C. Circuit "affirm[ed] the district court's judgment of liability" as to all defendants except for the two trade organizations. 566 F.3d at 1150. The court of appeals also "largely affirm[ed] the remedial order," although it vacated certain aspects of that order and remanded to the district court for further proceedings on those issues. *Id.*

In evaluating the district court's liability determination, the D.C. Circuit repeatedly cautioned that it could "not set aside the district court's findings of fact unless they are clearly erroneous, giving due regard to the court's opportunity to judge the witnesses' credibility." *Id.* at 1110; *see also*, *e.g.*, *id.* at 1126 (the court is

---

[3] *See United States v. Philip Morris Inc.*, 156 F. Supp. 2d 1, 7-8 (D.D.C. 2001); *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 144-46 (D.D.C. 2000).

4

1   "oblige[d] to uphold the district court's findings of fact unless they are 'clearly

2   erroneous'"); *id.* at 1126 ("Under this highly deferential standard, we may disturb the

3   district court's findings only if we are left with the definite and firm conviction that a

4   mistake has been committed.") (citations and internal quotations omitted).  The court

5   noted that it might have even reached different conclusions from the district court if it

6   were reviewing the evidence independently:

7   　　　　　While we may not have reached all the same conclusions as

8   　　　　　the district court, under the highly deferential clearly

9   　　　　　erroneous standard the district court's factual findings have

10   　　　　　sufficient evidentiary support . . .

11   *Id.* at 1134.

12   　　　All defendants (including PM USA and Brown & Williamson) moved for

13   rehearing or rehearing *en banc* on July 31, 2009.  The D.C. Circuit has not yet issued

14   its mandate.  If necessary, defendants intend to seek *certiorari* review in the U.S.

15   Supreme Court.

16   　　　　　　　　　　　　　　**ARGUMENT**

17   **I.**　**Plaintiff bears a heavy burden in seeking to invoke collateral estoppel.**

18   　　　As the party seeking to invoke preclusion, plaintiff bears the burden of

19   establishing that all of the elements of the doctrine are satisfied.  *See, e.g., In re*

20   *Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d

21   740, 743 (D.C. Cir. 2006).  And regardless of whether the prerequisites are technically

22   satisfied, it is within the trial court's discretion not to apply collateral estoppel.  *See,*

23   *e.g., Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003);

24   *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d

25   Cir. 1995); *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th

26   Cir. 1992).

27

28

164581v1

1    As plaintiff implicitly acknowledges, *see* Pl.'s Br. at 5-7, the preclusive effect

2  of *DOJ* is governed by federal law because *DOJ* was decided by a federal court under

3  the federal RICO statute. *See also*, *e.g.*, *Heck v. Humphrey*, 512 U.S. 477, 488 n.9

4  (1994); *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir. 1993).  As the

5  Ninth Circuit has explained, a party seeking to invoke issue preclusion under federal

6  law must establish that:

7            (1) there was a full and fair opportunity to litigate the

8            identical issue in the prior action,

9            (2) the issue was actually litigated in the prior action,

10            (3) the issue was decided in a final judgment, and

11            (4) the party against whom issue preclusion is asserted was a

12            party or in privity with a party to the prior action.

13  *Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007); *see also*, *e.g.*, *In re Microsoft*

14  *Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004); *Jack Faucett*, 744 F.2d at

15  125.

16    In addition, courts may not apply issue preclusion where it would be "unfair[]."

17  *Syverson*, 472 F.3d at 1078; *see also*, *e.g.*, *Jack Faucett*, 744 F.2d at 125 (issue

18  preclusion "must not work an unfairness").  This fairness prong stems from the fact

19  that the doctrine of issue preclusion is "shaped by fundamental notions of due

20  process." *Stichting v. Schreiber*, 327 F.3d 173, 184 (2d Cir. 2003); *see also*, *e.g.*,

21  *Burrell v. Armijo*, 456 F.3d 1159, 1170-73 (10th Cir. 2006) (recognizing that the

22  application of issue preclusion must be consistent with due process); *Conte v. Justice*,

23  996 F.2d 1398, 1400 (2d Cir. 1993) (issue preclusion is "premised on notions of due

24  process and fairness").  In particular, as explained in greater detail below, the U.S.

25  Supreme Court has directed that it would be unfair to apply issue preclusion where

26  "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or

27

28

164581v1

1    more previous judgments in favor of the defendant." *Parklane Hosiery*, 439 U.S. at

2    330.

3        Notably, as plaintiff acknowledges, Pl.'s Br. at 6 & n.10, any possible exercise

4    of preclusion based upon *DOJ* here would be "non-mutual offensive issue preclusion,"

5    because plaintiffs were not a party to *DOJ* and its effect would be to prevent

6    defendants from litigating certain issues.  Courts have recognized that this form of

7    preclusion "presents a unique potential for unfairness."  *Jean Alexander Cosmetics,*

8    *Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006).  As a result, the doctrine

9    is "viewed with stricter scrutiny," *Estate of Portnoy v. Cessna Aircraft Co.*, 612 F.

10    Supp. 1147, 1150 (S.D. Miss. 1985), and "the restrictions on the use of the doctrine

11    are more stringent." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395 n.9

12    (5th Cir. 1998); *see also, e.g., Jack Faucett*, 744 F.2d at 124-25 (non-mutual offensive

13    collateral estoppel is "potentially dangerous" and thus, "[w]here offensive estoppel is

14    involved, the element of 'fairness' gains special importance"); *Grubbs v. United Mine*

15    *Workers of Am.*, 723 F. Supp. 123, 126-27 (W.D. Ark. 1989) ("the doctrine of non-

16    mutual offensive collateral estoppel should be cautiously invoked").

17        For the reasons set forth below, plaintiff cannot bear her heavy burden of

18    establishing the conditions necessary for issue preclusion.

19    **II.**    **Issue preclusion is inappropriate in light of past verdicts and decisions in**
20        **similar cases in favor of defendants.**

21        As noted above, the U.S. Supreme Court has directed that issue preclusion

22    should not be invoked where "the judgment relied upon as a basis for the estoppel is

23    itself inconsistent with one or more previous judgments in favor of the defendant."

24    *Parklane Hosiery*, 439 U.S. at 330-31 & n.14; *see also* Pl.'s Br. at 22 (acknowledging

25    this limitation on issue preclusion).  Consistent with *Parklane Hosiery*, courts across

26    the country have declined to apply preclusion where "the judgment relied on is

27    inconsistent with other decisions." *Jack Faucett*, 744 F.2d at 125-26, 129-30; *see*

28

164581v1

1   *also*, *e.g.*, *Appling*, 340 F.3d at 777 (refusing to apply issue preclusion "[b]ecause of
2   the inconsistent judgments and therefore potential unfairness"); *Aetna*, 968 F.2d at
3   711-12 (same); *Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1330-31 (8th Cir.
4   1984) (same); *Trimble v. Westinghouse Elec. Corp.*, 1999 WL 768307, at *5 (E.D. Pa.
5   1999) (same); *Badon v. Transworld Sys., Inc.*, 1997 WL 149986, at *5 (E.D. La.
6   1997) (same); *Robertson v. Yamaha Motor Corp.*, 143 F.R.D. 194, 199 (S.D. Ill.
7   1992) ("With inconsistent judicial rulings, the doctrine of collateral estoppel does not
8   apply."); Restatement (Second) of Judgments § 29(4) & cmt. f (1982).  In particular,
9   courts have expressed particular reluctance to apply preclusion offensively in the mass
10  tort context, where defendants often face numerous lawsuits with inconsistent results.
11  *See*, *e.g.*, *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 345-46 n.13 (5th Cir.
12  1982) ("The injustice of applying collateral estoppel in cases involving mass torts is
13  especially obvious."); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 n.11 (6th
14  Cir. 1984) (interpreting *Parklane Hosiery* as holding "that offensive collateral
15  estoppel could not be used in mass tort litigation").

16       As these courts have explained, "[n]ot only does issue preclusion in such cases
17  appear arbitrary to a defendant who has had favorable judgments on the same issue, it
18  also undermines the premise that different juries reach equally valid verdicts." *Hardy*,
19  681 F.2d at 346; *see also*, *e.g.*, *Jack Faucett*, 744 F.2d at 129 (inconsistent verdicts
20  "may have been based on equally reasonable resolutions of doubt as to the probative
21  strength of the evidence or the appropriate application of a legal rule to the evidence")
22  (quoting Restatement (Second) of Judgments § 29 cmt. f, at 295).  "It seems most
23  inappropriate for this Court to pick out one case upon which the jury reached a verdict
24  for the plaintiff, and accord it preclusive effect, and at the same time to ignore all the
25  others in which equally competent juries have reached the opposite conclusion."
26  *Harrison v. Celotex Corp.*, 583 F. Supp. 1497, 1503 (E.D. Tenn. 1984).
27
28
164581v1

1   This principle forecloses the use of issue preclusion here, given that the district

2   court's liability finding in *DOJ* is inconsistent with the results in numerous other

3   lawsuits in which defendants have won defense verdicts.  Defendants attach a chart as

4   Appendix A that identifies the verdicts in favor of defendants and the allegations in

5   those cases (as reflected in the complaints and the opening and closing statements).

6   As this appendix demonstrates, PM USA and Brown & Williamson have repeatedly

7   won verdicts in cases involving the same allegations of misconduct as accepted by the

8   district court in *DOJ*.

9   Most notably, two of these defense verdicts involved RICO claims very similar

10   to the RICO claims presented in *DOJ*.  In *Blue Cross*, a health insurance company

11   seeking to recoup smoking-related medical expenditures brought federal RICO claims

12   alleging all of the same schemes to defraud as in *DOJ*, except for environmental

13   tobacco smoke.  *See* App. A at 1-3 & App. A Ex. 1.[4]  The expert witnesses that

14   plaintiff here points to as testifying on behalf of the government in *DOJ* -- Drs.

15   Farone, Benowitz, and Burns, *see* Pl.'s Br. at 14 -- all testified on behalf of plaintiff in

16   *Blue Cross*.  *See* Ex. 1 (collecting excerpts of their testimony).  Yet in contrast to the

17   *DOJ* court's findings, the *Blue Cross* jury returned a *defense* verdict on the RICO

18   claim.  *See Blue Cross* Verdict Form at IV, V (June 4, 2001) (Ex. 2).[5]  Similarly, in

19   *Iron Workers*, labor union trust funds seeking to recoup smoking-related health care

20   expenditures brought state-law RICO claims based on the same allegations as in *DOJ*,

21   except for environmental tobacco smoke.  *See* App. A at 3-8 & App. A Ex. 2.  Both

22   Drs. Farone and Benowitz testified for plaintiffs.  *See* Ex. 3 (collecting excerpts of

---

23
24   [4]   Citations to "Ex. __" are citations to the affidavit of Patrick J. Gregory, filed herewith.  Citations to "App. Ex. __" are citations to Appendix A, submitted to the Court in electronic form.

25   [5]   The jury returned a plaintiff's verdict for plaintiffs' claims under N.Y. Gen.
26   Bus. Law § 349, although at a fraction of the damages sought by plaintiffs. *See Blue Cross* Verdict Form at 2.  That verdict, however, was subsequently overturned on
27   appeal, *Empire Healthchoice, Inc. v. Philip Morris USA Inc.*, 393 F.3d 312 (2d Cir. 2004), and thus is a nullity for purposes of analyzing issue preclusion. *See, e.g.*,
28   *Erebia v. Chrysler Plastic Prods. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989).

DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RELATION TO MOTION TO STAY

164581v1

1  their testimony).  Yet as in *Blue Cross*, the *Iron Workers* jury returned a defense

2  verdict.  *Iron Workers* Verdict Form at Part V, Question 2 (Mar. 18, 1999) (Ex. 4).[6]

3       These cases thus demonstrate that different fact finders may reach different

4  conclusions about the same allegations and even the same witnesses in smoking and

5  health cases.  Indeed, notwithstanding plaintiff's emphasis on the fact that the *DOJ*

6  court found Dr. Farone's testimony to be "impressive and reliable," *see* Pl.'s Br. at 9-

7  10, several other courts -- including courts in California -- have specifically *rejected*

8  Dr. Farone's testimony and found him unqualified or incredible.  *See, e.g.*, Order

9  Adjudicating Mot. In Limine and Addressing Other Pretrial Matters, *Conley v. R.J.*

10  *Reynolds Tobacco Co.*, No. C 00-1740, slip op. at 12 (N.D. Cal. Dec. 2, 2002) (Ex. 5)

11  ("*Conley* Order") (limiting Dr. Farone's testimony because "Dr. Farone is

12  insufficiently qualified to offer expert opinions on addiction and pathology and . . . the

13  science he apparently employs is insufficiently reliable"); *Little v. Brown &*

14  *Williamson Tobacco Corp.*, Case No. 2:98-1879-23, Trial Tr. at 759 (D.S.C. Jan. 22,

15  2001) (Ex. 6) (limiting Dr. Farone's testimony in part because his testimony "was too

16  speculative"); *Labelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 519 (D.S.C. 2001)

17  (same); *Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224, at *14 (N.D.N.Y.

18  2000) (same); *In re Tobacco Cases II*, 2004 WL 2445337, at *7-8 (Cal. Super. Ct.

19  2004) (finding Dr. Farone to be "not qualified to offer testimony" in certain areas and

20  criticizing his opinions as "lack[ing] foundation" and "unacceptably vague"), *rev'd on*

21  *other grounds*, 46 Cal. 4th 298, 207 P.3d 20 (2009).

22       In addition, defendants have won numerous defense verdicts in personal injury

23  lawsuits filed by individual smokers or their representatives that, although not

24

25

_____

26  [6]     In addition, in *Falise v. American Tobacco Co.*, plaintiffs made similar RICO
allegations.  *See* App. A at 8-11 & App. A Ex. 3.  The *Falise* jury split and did not
27  reach a verdict on plaintiffs' claims.  Plaintiffs did not pursue these claims further.
Courts have relied on hung juries as inconsistent verdicts.  *See, e.g.*, *Setter*, 748 F. 2d
28  at 1330.

involving RICO, involved similar allegations of misconduct as in *DOJ*. For example, as Appendix A demonstrates, PM USA alone has won:

- twenty-one verdicts in cases, including three personal injury defense verdicts in California, alleging that defendants misrepresented the health consequences of smoking;[7]

- nineteen verdicts in cases alleging that defendants misrepresented the addictive nature of smoking and/or manipulated nicotine to make cigarettes more addictive;[8]

- seven verdicts in cases alleging that low tar cigarettes are deceptive;[9] and

---

[7]    To be conservative, defendants are counting a case as inconsistent only when the allegation is made in either opening or closing statements. These cases are: *Longden v. Philip Morris USA Inc.*, No. 00-C-442 (N.H. Super. Ct.) (*"Longden"*); *Reller v. Philip Morris USA, Inc.*, No. BC 261796 (Cal. Super. Ct.) (*"Reller"*); *Coolidge v. Philip Morris Inc.*, No. RIC-361063 (Cal. Super. Ct.) (*"Coolidge"*); *Allen v. R.J. Reynolds Tobacco Co.*, No. 01-4319 (S.D. Fla.) (*"Allen"*); *Welch v. Brown & Williamson Tobacco Corp.*, No. 00-CV209292 (Mo. Cir. Ct.) (*"Welch"*); *Lucier v. Philip Morris Inc.*, No. 02AS01909 (Cal. Super. Ct.) (*"Lucier"*); *Apostolou v. Am. Tobacco Co.*, No. 02-01836 (Fla. Cir. Ct.) (*"Apostolou"*); *Mehlman v. Philip Morris Inc.*, No. L-1141-99 (N.J. Super. Ct.) (*"Mehlman"*); *Beckum v. Philip Morris USA Inc.*, No. 02-01836 (Fla. Cir. Ct.) (*"Beckum"*); *Carter v. Philip Morris Inc.*, No. 4567 (Pa. Ct. Comm. Pl.) (*"Carter"*); *Hall v. R.J. Reynolds Tobacco Co.*, No. 00-1061 (Fla. Cir. Ct.) (*"Hall"*); *Butler v. Philip Morris, Inc.*, No. 94-5-53 (Miss. Cir. Ct.) (*"Butler"*); *Hyde v. Philip Morris Inc.*, No. 97-359ML (D.R.I.) (*"Hyde"*); *Tune v. Philip Morris Inc.*, No. 97-4678 (Fla. Cir. Ct.) (*"Tune"*); *Rogers v. R.J. Reynolds Tobacco Co.*, No. 87-2106 (Ind. Cir. Co.) (*"Rogers"*); *Cipollone v. Liggett Group Inc.*, No. 83-2864 (D.N.J.) (*"Cipollone"*); *Inzerilla v. Am. Tobacco Co.*, No. 011754/96 (N.Y. Sup. Ct.) (*"Inzerilla"*); *Tompkin v. Am. Brands, Inc.*, No. 5:94CV1302 (N.D. Ohio) (*"Tompkin"*); *In Re Tobacco Litig.: C. Blankenship/J. McCune*, No. 2:97-0204 (S.D. W. Va.) (*"Blankenship"*); *Dunn v. RJR Nabisco Holdings Corp.*, No. 18D01-9305-CT-06 (Del. County Sup. Ct.) (*"Dunn"*); *VanDenburg v. Brown & Williamson Tobacco Corp.*, No. 03-CV202909 (Mo. Cir. Ct.) (*"VanDenburg"*). See App. A.

Notably, these are all cases in which PM USA was a defendant (many of which included Brown & Williamson as well, as noted in Appendix A), and does not include those cases in which Brown & Williamson was a defendant and PM USA was not.

[8]    These cases are: *Longden*; *Reller*; *Coolidge*; *Allen*; *Welch*; *Lucier*; *Apostolou*; *Beckum*; *Carter*; *Hall*; *Conley v. R.J. Reynolds Tobacco Co.*, No. C 00-1740 (N.D. Cal.) (*"Conley"*); *Hyde*; *Tune*; *Rogers*; *Cipollone*; *Inzerilla*; *Blankenship*; *Dunn*; *VanDenburg*. See App. A.

[9]    These cases are: *Welch*; *Lucier*; *Apostolou*; *Beckum*; *Tune*; *Inzerilla*; *Blankenship*. See App. A.

11

1    • thirteen verdicts alleging that defendants suppressed and concealed

2    research and documents.[10]

3    To discard these numerous defense jury verdicts in favor of the determinations

4    of a *single judge* in a *single case* would expand non-mutual offensive preclusion far

5    beyond its narrow procedural and constitutional limitations.  And it would be

6    particularly inappropriate to do so where even the court of appeals in *DOJ* recognized

7    that different fact finders could reach different conclusions about the evidence,

8    expressly acknowledging that *"we may not have reached the same conclusions as the*

9    *district court."*  566 F.3d at 1134 (emphasis added).[11]

10   Plaintiff all but ignores this restriction on the application of issue preclusion.

11   She does not dispute that defendants have won repeated verdicts based on the same

12   allegations as presented in *DOJ*.  Instead, she states merely that "the detail and

13   specificity of the *DOJ* opinion is unmatched and *not* inconsistent with any previous

14   government-initiated injunctive action against the defendants."  Pl.'s Br. at 23

15   (emphasis in original).

16   Neither of plaintiff's purported distinctions has any legal significance.  Plaintiff

17   does not -- and cannot -- cite any case holding that the inconsistent verdict must

18   involve the precise same type of plaintiff.  To the contrary, in *Jack Faucett*, the D.C.

19   Circuit found two inconsistent verdicts to be sufficient to defeat issue preclusion even

20   though they involved different types of plaintiffs -- one was a private action and one

21   was a suit brought by the government.  744 F.2d at 131-32.  As the court explained,

22   "[i]t is enough if that inconsistent determination undermines the court's confidence in

23   the earlier decision."  *Id.* at 130.  Accordingly, the critical issue is whether the same

---

[10]   These cases are:  *Longden*; *Reller*; *Coolidge*; *Allen*; *Welch*; *Lucier*; *Carter*; *Hyde*; *Cipollone*; *Inzerilla*; *Blankenship*; *Dunn*; *VanDenburg.  See* App. A.

[11]   Notably, in seeking rehearing, PM USA has challenged the standard of review applied by the D.C. Circuit as too deferential.  *See* Petition for Rehr'g or Rehr'g En Banc of Defendant-Appellant Philip Morris USA Inc. at 8-14, *DOJ*, No. 06-5267 (D.C. Cir. July 31, 2009) (Ex. 7).

DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RELATION TO MOTION TO STAY

164581v1

allegations of misconduct that were presented in *DOJ* were presented in the cases involving defense verdicts. As reflected by Appendix A, it is undeniable that these cases make the same allegations.[12]

Nor can the specificity in the *DOJ* findings justify ignoring the numerous verdicts in favor of defendants. Because the burden of proof rests with the party seeking preclusion, *see supra* at 5-6, plaintiff affirmatively must establish that the prior RICO judgments are *not* inconsistent with these other verdicts. With this burden in mind, courts find even prior inconsistent *general* verdicts to be grounds to refuse to apply issue preclusion, notwithstanding the fact that "it is usually not possible to say with certainty what these juries based their verdicts on." *Hardy*, 681 F.2d at 346; *see also*, *e.g.*, *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 550 P.2d 1185, 1192-94 (Or. 1976) (holding that a judge's finding could not be given preclusive effect in light of an inconsistent jury verdict notwithstanding the "general" nature of the jury's verdict) (cited in the Reporter's Note to the Rest. (Second) of Judgments § 29, cmt. f as an example of the prohibition against inconsistent verdicts).

Indeed, recognizing the numerous defense verdicts in smoking and health cases, the only court to address the preclusive effect of the *DOJ* findings (Judge Weinstein) refused to apply collateral estoppel because (among other reasons) "defendants have won so many of the tobacco cases" that "according conclusive effect to the last of the series of litigations is inappropriate." *Schwab*, 449 F. Supp. 2d at 1079. Judge Weinstein's ruling is particularly significant because he was the trial judge in *Blue Cross* (as well as in *Falise*, which resulted in a hung jury, *see supra* at 9 n.6), and thus is uniquely situated to determine whether the judgments are inconsistent.

---

[12]      Plaintiff argues further that defendants "tacitly and judicially conceded that there is no inconsistency" by arguing in *DOJ* that a settlement with "other states sufficiently restrained them from engaging in further fraud." Pl.'s Br. at 23. This makes no sense. The issue in *DOJ* was whether for purposes of RICO, it would be appropriate to impose restrictions on defendants' conduct (assuming misconduct is found) where such restrictions are already in place. This question is fundamentally different from whether a finding of misconduct would be inconsistent with prior defense verdicts.

1    Plaintiffs do not even acknowledge Judge Weinstein's ruling, but instead cling

2  to a single smoking and health case that applied preclusion in a very different context.

3  *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006) (cited in Pl.'s Br. at 23-

4  24).  As a threshold matter, the *Engle* court did not address whether the *DOJ* findings

5  could be given preclusive effect, and thus on its face has no bearing on this motion.

6  Moreover, *Engle* did not even involve non-mutual offensive preclusion.  Rather, the

7  court there invoked the issue certification process of Rule 23(c)(4) and held that

8  members of a decertified class could have the benefit of certain "common" findings

9  made during the class action trial in subsequent lawsuits.  *Engle*, 945 So. 2d at 1268,

10  1268-69.  Thus, there was mutuality of parties in *Engle* -- the court was merely

11  directing that the plaintiffs should continue to obtain the benefit of findings they had

12  already won.  For these reasons, *Engle* is inapposite here.

13    In sum, plaintiffs do not dispute that defendants have repeatedly won verdicts in

14  cases involving the same allegations of misconduct as *DOJ*, and this is reason alone

15  why it would be improper to apply preclusive effect to the *DOJ* findings.

16  **III.   Plaintiff cannot establish that the *DOJ* findings were necessary to the**
   **judgment.**
17

18    Plaintiff's request for issue preclusion also fails because she has not and cannot

19  demonstrate, as she must, that the findings for which she seeks preclusive effect were

20  "*necessary* to a court's judgment."  *United States v. Alaska*, 521 U.S. 1, 13 (1997)

21  (emphasis in original); *see also*, *e.g.*, *Parklane*, 439 U.S. at 326 n.5 (collateral

22  estoppel only "precludes relitigation of issues actually litigated and necessary to the

23  outcome").  "A determination ranks as necessary or essential only when the final

24  outcome hinges on it."  *Bobby*, 129 S. Ct. at 2152.  The party seeking preclusion must

25  therefore distinguish between a "determination necessary to the bottom-line

26  judgment" and "a subsidiary finding that, standing alone, is not outcome

27  determinative."  *Id.* at 2153; *see also*, *e.g.*, *Beechwood Restorative Care Ctr. v. Leeds*,

28

1   436 F.3d 147, 153 (2d Cir. 2006) (a finding was not "necessary" because the

2   proponent of estoppel did not demonstrate that it "would have made a difference --

3   necessarily -- in the . . . ultimate determination").

4       Plaintiff has not even attempted to meet her burden of demonstrating which of

5   the over 4,000 findings made in *DOJ* were "essential" to the "final outcome" in that

6   case, and which were merely "subsidiary." *Bobby*, 129 S. Ct. at 2152-53; *see also*,

7   *e.g.*, *Gordon v. Microsoft Corp.*, 2003 WL 22281574, at *7 (Minn. Dist. Ct. 2003)

8   (questioning whether "hundreds of findings containing thousands of facts from any

9   one trial [can] all be important enough to be set in stone forever"). Instead, she asks

10  this Court for a blanket order giving preclusive effect to the *DOJ* findings in their

11  entirety. *See* Pl.'s Proposed Order. And even for the hundreds of findings that she

12  cites in her brief as "[e]xemplars," Pl.'s Br. at 7, she makes no effort to demonstrate

13  how each of those specific findings was outcome determinative.

14      In similar circumstances, the Ninth Circuit rejected a request to give preclusive

15  effect to 895 prior findings because the plaintiff had not made a finding-by-finding

16  showing as to which findings satisfied all of the elements of issue preclusion. *Pool*

17  *Water Prods.*, 258 F.3d at 1033. Notwithstanding its acknowledgement that "some"

18  of those findings were "probabl[y]" necessary to the prior judgment, the court

19  explained that "[i]t is up to the party seeking" preclusion to "establish that it has met

20  the requirements." *Id.* Accordingly, "[n]either the district court nor the defendant is

21  required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and

22  necessary findings." *Id.* That plaintiff asks this Court to engage in such a "hunt and

23  peck" exercise here is further reason to deny her motion.[13]

24  _____

[13]     In addition, it is well-established that "changes in facts essential to a judgment

25  will render collateral estoppel inapplicable in a subsequent action raising the same
    issues." *Montana v. United States*, 440 U.S. 147, 159 (1979); *see also, e.g., Ezagui v.*

26  *Dow Chem. Corp.*, 598 F.2d 727, 732 (2d Cir. 1979) (denying preclusion where
    emerging scientific evidence "cast[s] doubt" on prior judgment). In light of plaintiff's

27  failure to make a finding-by-finding showing, defendants reserve the right to
    demonstrate that particular findings cannot be given preclusive effect because of

28  changes in fact. *See, e.g.,* Seeman & Carchman, "The Possible Role of Ammonia

                                    15

**IV. Applying collateral estoppel would cause severe prejudice and would not conserve judicial resources.**

Plaintiff's request for issue preclusion also independently fails in light of the remaining issues that would still need to be litigated in this case. As explained above, the government in *DOJ* was seeking only equitable relief to restrain future RICO violations. *See supra* at 4. Although plaintiff on occasion suggests that the *DOJ* court found that "defendants defrauded smokers," Pl.'s Br. at 7, *DOJ* did not involve the claims of any individual smoker and the *DOJ* court did not make any finding of liability as to any individual smoker, let alone the plaintiff here.

As a result, even if the *DOJ* findings were given preclusive effect to establish that some acts of misconduct occurred, plaintiff would still have to litigate all of the remaining plaintiff-specific issues to establish liability, such as causation, reliance, injury, and damages.[14] Defendants would have the right to assert plaintiff-specific affirmative defenses, such as the failure to mitigate damages. *See, e.g., Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1568, 54 Cal. Rptr. 468, 474 (Ct. App. 1996) ("A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts.").

---

Toxicity on the Exposure, Deposition, Retention, and the Bioavailability of Nicotine during Smoking," 46 *Food & Chem. Toxicology* 1863 (2008) (Ex. 8) (reporting on a new study contradicting the *DOJ* court's findings with respect to the effects of ammonia in cigarettes); Mendes *et al.*, "A Randomized, Controlled Exposure Study in Adult Smokers of Full Flavor Marlboro Cigarettes Switching to Marlboro Lights and Marlboro Ultra Lights Cigarettes," *Reg. Toxicology and Pharmacology* (May 2008) (Ex. 9) (reporting on a new study contradicting the *DOJ* court's findings with respect to compensation when smoking low tar cigarettes).

[14]    *See, e.g., Buckland v. Threshold Enterprs., Ltd.*, 155 Cal. App. 4th 798, 66 Cal. Rptr. 543, 549 (Ct. App. 2007) ("A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance . . ."); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 20, 220 Cal. Rptr. 392, 395 (Ct. App. 1985) (in breach of express warranty action, warranty must have been "part of the basis of the bargain") (citation and internal quotations omitted); *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 534, 89 Cal. Rptr. 801, 817 (Ct. App. 2009) ("The elements of a negligence cause of action are: (1) a legal duty to use care; (2) a breach of that duty; (3) the breach was the proximate cause or legal cause of the resulting injury; and (4) actual loss or damages resulting from the breach of the duty of care."); *County of Santa Clara v. Atl.Richfield Co.*, 137 Cal. App. 4th 292, 318, 40 Cal. Rptr. 313, 335 (Ct. App. 2006) ("The elements of a strict products liability cause of action are a defect in the manufacture or design of the product or a failure to warn, causation, and injury.") (citation omitted).

16

164581v1

1    Moreover, plaintiff is pursuing punitive damages. The heightened procedural
2 protections required in any punitive damages claim, *see*, *e.g.*, *Philip Morris USA v.*
3 *Williams*, 549 U.S. 346 (2007), as a matter of due process foreclose the use of issue
4 preclusion to prevent defendants from defending themselves against such a claim. *Cf.*,
5 *e.g.*, *United States v. Smith-Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005) (rejecting use
6 of issue preclusion in criminal proceedings).[15] Moreover, as a matter of California
7 law, even if "sufficiently serious misconduct has been established, the jury has the
8 discretion not to award punitive damages." *Chavez v. Kent*, 34 Cal. App. 4th 1406,
9 1415, 41 Cal. Rptr. 72, 79 (Ct. App. 1995). And the Ninth Circuit has made clear that
10 this punitive damages inquiry is necessarily plaintiff-specific because the jury must
11 assess the defendants' alleged reprehensible conduct *in relation to the conduct of the*
12 *plaintiff. See*, *e.g.*, *White v. Ford Motor Co.*, 500 F.3d 963, 971-72, 976 (9th Cir.
13 2007) (ruling that due process requires that the jury should have been told that the
14 plaintiffs "were found to be 40 percent responsible for the accident" because
15 "reprehensibility is judged in relation to the conduct and actions of others, not merely
16 by looking at Ford's conduct in the abstract").
17    These interwoven plaintiff-specific issues that remain to be litigated provide
18 two additional reasons why it would be improper to apply collateral estoppel. *First*,
19 these issues cannot be resolved without consideration of the same alleged misconduct
20 evidence that plaintiff would put on if there were no issue preclusion. For example,
21 the jury cannot determine whether the plaintiff here can satisfy the reliance
22 requirement of her fraud claims unless it first hears evidence about the statements or
23 concealment upon which the plaintiff supposedly relied. Accordingly, contrary to
24 plaintiff's claims of substantial time savings, Pl.'s Br. at 14, there would be little (if
25

26 [15]    Although the Ninth Circuit has previously permitted the use of issue preclusion
in the punitive damages context, *see Bates v. Union Oil Co. of Cal.*, 944 F.2d 647 (9th
27 Cir. 1991), this decision was before the U.S. Supreme Court began imposing
significant due process restrictions on punitive damages claims in *BMW of N. Am.*,
28 *Inc. v. Gore*, 517 U.S. 559 (1996).

164581v1

1    any) efficiencies gained, because the same evidence that would be introduced without

2    issue preclusion would have to be replayed in any event.

3        Recognizing this, Judge Weinstein held that another reason not to apply issue

4    preclusion based on *DOJ* was that "little efficiency would be gained." *Schwab*, 449 F.

5    Supp. 2d at 1079. As he explained, "plaintiffs' proof of reliance and damages would

6    almost certainly -- as a matter of legal burden and persuasive strategy -- require

7    presentation of all evidence available to them of defendants' alleged scheme." *Id*.

8        This ruling is consistent with the rulings of courts across the country that have

9    declined to apply preclusion where the same evidence would have to be presented for

10   the consideration of the remaining issues in the case. *See, e.g., Acevedo-Garcia v.*

11   *Monroig*, 351 F.3d 547, 577 (1st Cir. 2003) ("Where even one issue of liability must

12   be made available to defendants in the second trial, granting preclusive effect to the

13   other issues may not result in efficiency gains because litigation of the 'live' issue

14   may require introduction of some of the same evidence pertinent to the estopped

15   issue."); *Setter*, 748 F.2d at 1331 ("Even if collateral estoppel were invoked here, little

16   court time would be saved, because most plaintiffs . . . claim punitive damages . . . and

17   the same facts, or most of them, that would have been relevant on the issue of liability

18   would still have to come in and be considered by the court or jury on the issue of

19   exemplary damages.").[16] As Wright & Miller summarize:

20   _____
      [16]   *See also, e.g., Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 852 (D.C.
21   Cir. 1981) (collateral estoppel ruling that "did not wholly foreclose the issue of
      causation" would have "limited value in avoiding repetitious litigation"), *abrogated*
22   *on other grounds by, Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d
      230 (D.C. Cir. 1991); *Coburn v. Smithkline Beecham Corp.*, 174 F. Supp. 2d 1235,
23   1239-41 (D. Utah 2001) (denying preclusion on issues of "fault" and "general
      causation" where issues of individual injury and "specific causation" remained open
24   for decision because collateral estoppel would not promote judicial economy and
      would "inevitably color the jury's decision regarding" the open issues); *Held v.*
25   *Mitsubishi Aircraft Int'l, Inc.*, 672 F. Supp. 369, 389-90 (D. Minn. 1987) (denying
      collateral estoppel on the issue of defect where issue of causation would still need to
26   be tried, requiring the same testimony on the same subjects, and thus "applying
      collateral estoppel will not result in significant judicial economy"); *Miller v. Johns-*
27   *Manville Sales Corp.*, 538 F. Supp. 631, 634 (D. Kan. 1982) (denying preclusion on
      issue of defect because "the presentation of a product liability suit . . . will not be
28   simplified by a mere statement that the product is defective and inherently dangerous

                                            18

> Whatever values may be gained by nonmutual preclusion
> are substantially diminished when the need to try related
> issues requires consideration of much the same evidence as
> bears on the issue tendered for preclusion.  Preclusion has
> been denied in such circumstances because it would not
> significantly expedite the second trial.

18A Wright & Miller, *Fed. Prac. & Proc.* § 4465.  This result makes sense, given that "efficiency is offensive collateral estoppel's *only* true justification." *Gough v. Natural Gas Pipeline Co. of Am.*, 996 F.2d 763, 769 (5th Cir. 1993) (emphasis added) (internal quotations omitted); *see also, e.g.*, *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) ("When the efficiency rationale for collateral estoppel fails, however, courts have understandably declined to apply the doctrine.").[17]

*Second*, courts have also recognized that it would be improper to apply preclusion in these circumstances because it would prejudice the jury's consideration of the remaining issues by implying that they must find against the party who is subject to preclusion.  As Wright & Miller explain:

> Beyond the lack of time saving, moreover, preclusion on one
> issue while closely related issues must be tried may
> substantially distort decision of the issues that remain open.
> Determinations of comparative fault, for example, may be
> drastically affected if the evidence must be examined from
> the authoritative perspective that one party was at fault.

---

as a matter of law.  It will still be necessary for plaintiffs to present the same evidence . . .").

[17]     In addition, plaintiff does not even address the substantial trial management issues that would arise if the findings were given preclusive effect, including what (if anything) the jury would be told about the *DOJ* findings to the extent to which the parties may put on evidence on subject matters related to the findings given preclusive effect.  Defendants reserve the right to address all such issues as necessary at the appropriate time.

1    18A Wright & Miller, *Federal Practice & Procedure* § 4465; *see also*, *e.g.*,

2    *Phonetele, Inc. v. AT&T*, 1984 WL 2943, at *2, *5 (C.D. Cal. 1984) (denying request

3    for issue preclusion in part because preclusion could "substantially distort the decision

4    on the issues that remain open" and "application of issue preclusion to the questions

5    designated by [the plaintiff] would make a fair resolution of the remaining questions

6    unacceptably difficult"); *Whelan v. Abell*, 953 F.2d 663, 668-69 (D.C. Cir. 1992)

7    (affirming rejection of collateral estoppel where allowing preclusion on some issues

8    might provide the plaintiffs "a head start larger than warranted in the jury's

9    deliberations" on the "open" issues that would still remain for the jury's decision);

10   *Coburn*, 174 F. Supp. 2d at 1241 ("[I]t is entirely unclear to this court exactly what

11   would be accomplished by granting Plaintiffs' motion, other than causing prejudice to

12   [defendant] and confusion to the jury" on the remaining issues.).[18]

13          The same reasoning applies here.  By giving preclusive effect to the *DOJ*

14   findings, there is a substantial risk that the jury's consideration of the remaining issues

15   would be tainted, violating defendants' due process rights.  This is yet another reason

16   not to apply collateral estoppel.

17   **V.    Plaintiff's request for issue preclusion cannot justify denying defendants'
         pending summary judgment motions.**

18

19          Although she does not specifically raise this in her supplemental brief,

20   plaintiff's proposed order suggests that the application of issue preclusion would

21   foreclose defendants' pending summary judgment motions.  *See* Pl.'s Proposed Order

22   at 2.  To the contrary, even if this Court were to give preclusive effect to the *DOJ*

23   findings, it would have no bearing on either of these motions.

---

24   [18]    Consistent with this case law, the U.S. Supreme Court has recognized that it
25   would violate due process to try damages alone where the issues presented by the
     damages trial would be inextricably intertwined with the underlying liability issues.
26   *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931); *see also*, *e.g.*,
     *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001) (courts "have steadfastly
27   applied [*Gasoline Products*] 'to prevent limited new trials where a tangled or complex
     fact situation would make it unfair to one party to determine damages apart from
28   liability'") (citations omitted).

1    The fundamental flaw in plaintiff's argument is that her claim is fundamentally

2  different from the claim asserted in *DOJ*. Again, the *DOJ* case did not litigate the

3  claims of any smoker. Instead, the court there allowed the government to base its

4  request for equitable relief on decades of alleged tobacco industry misconduct

5  untethered to any individual's harm. In contrast, as other California courts have

6  recognized, this case is about the personal injury claims of *this plaintiff* and

7  necessarily must be restricted by the plaintiff's individual circumstances and injury:

8              Plaintiffs appear to believe that this trial will involve a free-

9              ranging seminar on the dangers of tobacco products and the

10             motivations and effects of tobacco advertising. But

11             plaintiffs' sole remaining claim is a wrongful death action

12             based on products liability. If plaintiffs cannot demonstrate

13             that certain conduct (or omissions) of defendants contributed

14             in any way to the decedent's death, then evidence or

15             argument related to such conduct is irrelevant.

16  *Conley* Order at 16 (emphasis in original).

17    In light of the differences between *DOJ* and this case, the *DOJ* court did not

18  decide the issues presented by these motions, and thus plaintiff cannot demonstrate

19  that the identical issue was actually decided in *DOJ*, as is required for issue

20  preclusion. *See, e.g., Sydnes v. C.I.R.*, 647 F.2d 813, 814-15 (8th Cir. 1981) (issue

21  must be "identical *in all respects* to the issue decided in the first proceeding")

22  (emphasis added); Pl.'s Br. at 6 (acknowledging that issue preclusion must involve the

23  "identical issue" that was "actually litigated"). And even if the *DOJ* court had

24  somehow made any findings on these issues, those findings could not be given

25  preclusive effect because they would not have been necessary for the imposition of

26  RICO liability. *See supra* at 14-15.[19]

27
_____

28  [19]    For this reason, many of the *DOJ* findings address issues that simply have no
relevance to plaintiff's claims here. For example, findings with respect to defendants'

21

1    As explained in defendants' Reply Memorandum in Support of Defendants

2   Motion for Summary Judgment on the Statute of Limitations Defense (Jun. 29, 2009),

3   the *DOJ* court did not address the application of the statute of limitations for any

4   smoker, let alone the plaintiff here. *See id.* at 11. And the *DOJ* court did not find the

5   type of conduct sufficient to toll the statute of limitations on fraudulent concealment

6   grounds. *Id.* For these reasons, the application of issue preclusion has no bearing on

7   whether plaintiff's claims must be dismissed as time-barred. *Id.*

8    The same principles apply to defendants' separate motion for summary

9   judgment against the negligence, strict liability, fraudulent concealment, and breach of

10  express warranty claims. *See* Mem. in Supp. of Defs.' Mot. for Summ. J. (Jun. 30,

11  2009) ("Defs. S.J. Br."). For example, defendants' arguments that plaintiffs' strict

12  liability claims fail as a matter of law because plaintiff cannot offer any superior

13  alternative to defendants' products that could have been made available and prevented

14  her injury, *id.* at 6-8, address a question that was not at issue in *DOJ*. Accordingly,

15  plaintiffs cannot point to any *DOJ* finding that such an alternative design existed.

16  Indeed, the *DOJ* court specifically rejected the allegation that defendants "[c]hose

17  [n]ot to [u]tilize or [m]arket [f]easible [d]esigns or [p]roduct [f]eatures that [c]ould

18  [p]roduce [l]ess [h]azardous [c]igarettes." 449 F. Supp. 2d at 384, 429. The court

19  determined, for example, that the defendants "spent many years, enormous amounts of

20  money, and the creative energies of their top scientists to investigate different

21  approaches to production of cigarettes which would present fewer health risks to the

22  statements in the 1990s would not be relevant to her claims because she has conceded
23  that she "was not paying close attention to statements made by the tobacco industry in
    the 1990s," and that she "did not necessarily believe anything she did hear." Grisham
24  Decl., 2/17/2003, ¶¶ 23, 28 (Ex. 10). And findings related to the ten-year immunity
    period (1988 to 1997) imposed by the former immunity statute, Cal. Civ. Code §
25  1714.45, cannot be the basis of liability. *See, e.g., Naegele v. R.J. Reynolds Tobacco
    Co.*, 28 Cal. 4th 856, 866, 123 Cal. Rptr. 2d 61 (2002). In light of plaintiff's failure to
26  make a finding-by-finding showing as to the propriety of issue preclusion, *see supra*
    at 14-15, defendants reserve the right to challenge particular findings as not relevant to
27  this lawsuit. *See, e.g., Pool Water*, 258 F.3d at 1031 ("Only those issues in the first
    proceeding that are relevant in the second proceeding are admissible.").

28

164581v1

1  public." *Id.* at 429.  Thus, the court found that although these design efforts "failed"
2  to produce a feasible safer alternative design, it was not a result of any misconduct on
3  the part of the defendants -- it simply was impossible to develop such a design. *Id.*

4  Defendants' arguments that plaintiff's claims are preempted to the extent they
5  are based on allegations that defendants should have provided additional information
6  about the health risks of smoking after 1969, Defs. S.J. Br. at 10-13, address a legal
7  question -- the scope of a preemption provision -- that by definition could not have
8  been addressed in the *DOJ* court's *factual* findings.  Similarly, the question of whether
9  this plaintiff has established that she was owed a duty to disclose information prior to
10 1969 as a matter of California fraudulent concealment law, *id.* at 14, was not at issue
11 in *DOJ*, which again involved only federal RICO claims for equitable relief.  Plaintiff
12 can point to no finding, for instance, that she was in a fiduciary relationship with the
13 defendants or that defendants actively concealed information from her in statements
14 she saw necessary to create such a duty. *Id.*

15 Finally, defendants' arguments with respect to the express warranty claim turn
16 on whether plaintiff can identify any promise made to her that became the basis of her
17 bargain and is sufficient to constitute a warranty as a matter of California law. *Id.* at
18 15-19.  Again, *DOJ* did not involve any express warranty claims -- let alone the
19 warranty claims of this plaintiff -- and thus plaintiff cannot identify any finding by the
20 *DOJ* court that decides whether defendants made any promise to her.

21 Thus, plaintiff's request for issue preclusion has no bearing on defendants'
22 pending summary judgment motions.

23 ///
24 ///
25 ///
26 ///
27 ///
28

DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN RELATION TO MOTION TO STAY

164581v1

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court decline to apply collateral estoppel based on the judge's findings in the *DOJ* case.

Dated:  August 6, 2009

Gary R. Long, *pro hac vice*
Tammy B. Webb
Patrick J. Gregory
SHOOK, HARDY & BACON L.L.P.

Attorneys for Defendant
PHILIP MORRIS USA INC.

and

Elizabeth P. Kessler, *pro hac vice*
JONES DAY
325 John H. McConnell Boulevard
Columbus, OH  43125

Peter N. Larson
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104

Attorneys for Defendant BROWN &
WILLIAMSON HOLDINGS, INC. (f/k/a
Brown & Williamson Tobacco
Corporation)