FILED

DEC 0 2 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELAINE CONLEY, an individual; DOROTHY
WHITE, an individual; and WELDON WHITE,
an individual,

          Plaintiffs,

    v.

R.J. REYNOLDS TOBACCO CO., et al.,

        Defendants.

No. C 00-1740 SBA

**ORDER ADJUDICATING MOTIONS IN
LIMINE AND ADDRESSING OTHER
PRETRIAL MATTERS**

*(left margin, vertical text)* United States District Court — For the Northern District of California

    Before the Court are a number of the parties' motions in limine and other pretrial motions.
Prior to addressing these motions, however, the Court will recount its experiences with plaintiffs'
repeated violations of the Court's pretrial scheduling and preparation orders.

### BACKGROUND

    On April 17, 2002, the Court filed an Order in this action that, <u>inter alia</u>, modified the Order
for Pretrial Preparation as follows:

| | |
|---|---|
| Pretrial Documents Due: | October 28, 2002 |
| Motions in Limine (MILs)/ Objections to Evidence | November 1, 2002 |
| Responses to MILS/Objections to Evidence | November 8, 2002 |
| Pretrial Conference | November 19, 2002 at 1:00 p.m. |
| Trial | December 2, 2002 at 8:30 a.m. |

    On October 30, 2002, following defendants' counsel's communication of their concerns
about plaintiffs' apparent failure to comply with the Court's pretrial orders, the Court convened an

United States District Court

For the Northern District of California

1   impromptu telephonic conference.  Among other things, plaintiffs had served defendants with an

2   exhibit list that did not identify each exhibit by number, in contravention of the Order for Pretrial

3   Schedule and impeding defendants' ability to prepare for trial.  Counsel for all parties attended the

4   conference by telephone.  At the conference, the Court ordered plaintiffs' counsel to submit to

5   defendants by November 4, 2002, a revised exhibit list that complied with the requirements set out

6   in the Order for Pretrial Preparation.  In view of plaintiffs' delay in submitting a compliant exhibit

7   list, the Court extended the deadline for the parties to file motions in limine and objections to

8   evidence to November 8, 2002, and it extended the deadline for the parties to file responses to any

9   motions in limine and objections to evidence to November 13, 2002.  Plaintiffs' counsel

10  acknowledged his recognition of the new deadlines on the record.  The deadline to respond to

11  objections to evidence (but not to motions in limine) was subsequently extended by stipulation and

12  Court Order to November 15, 2002.[1]

13         On November 7, 2002, the Court filed its Order Granting Defendants' Renewed Motion for

14  Summary Judgment on Plaintiffs' Fraud Claim.

15         On November 8, 2002, defendants timely filed over 20 motions in limine and objections to

16  evidence.  In one of these motions, defendants sought relief for plaintiffs' service of a witness list

17  that did not comply with the Order for Pretrial Preparation in that it did not provide summaries of

18  the witnesses' anticipated testimony.  Plaintiffs filed no motions in limine or objections to evidence

19  by the deadline.  On November 12, 2002, plaintiffs filed a motion to strike all of defendants'

20  motions in limine, incorrectly asserting that the extension of the deadline to November 8, 2002,

21  applied only to objections to evidence and not to motions in limine.  That same day, plaintiffs filed a

22  handful of oppositions to defendants' motions in limine and other pretrial filings.  Plaintiffs did not

23  file any other oppositions to defendants' motions in limine by the applicable deadline, November 13,

24  2002, or any oppositions to defendants' objections to evidence by the applicable deadline,

25

26         [1] As the Court stated to the parties at the November 22, 2002, telephonic conference, the
    Court does not recognize any substantive difference between "objections to evidence" and "motions
27  in limine."  Nevertheless, the stipulation and proposed order that the Court signed, which extended
    the deadline to respond to objections to evidence to November 15, 2002, mentioned only "objections
28  to evidence."

1   November 15, 2002.

2        In view of the Court's granting of summary judgment in defendants' favor on plaintiffs'

3   fraud claim and the fact that a number of the parties' filings appeared to assume that the fraud claim

4   was still viable, on November 12, 2002, the Court issued an Order Continuing Pretrial Conference

5   and Ordering Supplemental Briefing, which ordered the parties to meet and confer regarding all

6   pretrial disputes and to file submissions notifying the Court, inter alia, whether any motions were

7   moot or unopposed.  In addition, in light of defendants' complaint about plaintiffs' service of a

8   noncompliant witness list, in the Order the Court ordered plaintiffs to file and serve a compliant

9   witness list by November 15, 2002.  The Order also continued the pretrial conference to November

10  26, 2002.

11       On November 18, 2002, three court days after the applicable deadline, plaintiffs filed a raft

12  of papers in apparent opposition to defendants' motions in limine.  Some of these papers are labeled

13  "Oppositions," and others are labeled "Positions."  On November 21, 2002, plaintiffs filed a motion

14  in limine, nearly two weeks after the relevant deadline had lapsed.

15       The parties' submissions contained contradictory statements about which motions required

16  the Court's resolution.  They also disclosed a dispute over whether the extension to November 8,

17  2002, applied only to motions in limine or whether it applied both to motions in limine and to

18  objections to evidence.  The Court was also confronted with having to address a large number of

19  plaintiffs' papers that were untimely and only recently filed.

20       Accordingly, the Court again convened an impromptu telephonic conference, on November

21  22, 2002, in an effort to resolve these difficulties.  At the conference the Court read to the parties a

22  portion of a draft transcript of the telephonic conference of October 30, 2002, which revealed

23  unequivocally not only that the deadline extension applied to both motions in limine and objections

24  to evidence, but also that plaintiffs' counsel acknowledged his recognition of this extension.  The

25  Court advised plaintiffs' counsel that his chronic untimeliness was unacceptable and that the motion

26  in limine filed on November 21, 2002, would be stricken.  The Court ordered the parties to meet and

27  confer and then to file by November 25, 2002, a grid clearly demonstrating what motions in limine

28  were still pending for the Court's resolution and which were consented-to or moot, with a courtesy

**United States District Court**
For the Northern District of California

3

1  copy to be faxed to chambers by noon on that date.  On November 25, 2002, the Court received a

2  Joint Grid of Motions (the "Grid").

3      On November 25, 2002, despite the Court's clear admonishment to plaintiffs' counsel at the

4  conference on November 22, 2002, plaintiffs filed yet another untimely motion in limine.  That same

5  day, the Court filed an Order continuing the pretrial conference to December 2, 2002, at 10:00 a.m.

6  and the commencement of trial to December 4, 2002, at 8:30 a.m.

## DISCUSSION

8      Plaintiffs' repeated violations of the Court's pretrial orders have imposed a tremendously

9  heavy burden on the Court's resources as it endeavors to prepare for trial.  Plaintiffs have not put

10  forth any reasonable and convincing excuse for their flagrant disregard of the Court's orders.  And

11  whereas plaintiffs' untimely filing a motion in limine on November 21, 2002, is arguably only

12  reprehensible, their filing yet another motion in limine on November 25, 2002, borders on

13  contumacy.

14      Accordingly, the Court will strike from the record all of plaintiffs' untimely submissions

15  other than their oppositions and "positions" filed on November 18, 2002.  Even these oppositions

16  and "positions," which the Court declines to strike, are significantly untimely, having been filed five

17  calendar days and three court days after the deadline.  Were the Court to strike from the record all of

18  plaintiffs' untimely submissions, the Court would be well within its discretion.  Nevertheless, the

19  Court declines to do so, preferring instead to strike only those submissions the untimeliness of which

20  is particularly inexcusable and which has resulted in prejudice to the Court's ability to handle

21  pretrial matters.

22      In the Grid the parties have identified 28 motions that are "at issue" either wholly or in part.

23  The Court now addresses these motions.

24  **1.    Plaintiffs' Motion in Limine to Prohibit the Use of the Words "Assumption of**

25  **Risk"**

26      Although the Grid indicates that this motion was filed on November 1, 2002, plaintiffs never

27  in fact did so, even though they evidently served it on defendants.  Since plaintiffs did not file this

28  motion, there is nothing for the Court to adjudicate.

4

**United States District Court**
For the Northern District of California

1    **2.    Plaintiffs' Motion in Limine Re: Legality of Tobacco Products**

2        Although the Grid indicates that this motion was filed on November 1, 2002, plaintiffs never

3    in fact did so, even though they evidently served it on defendants.  Since plaintiffs did not file this

4    motion, there is nothing for the Court to adjudicate.

5    **3.    Plaintiffs' Motion in Limine Re: Comparative Negligence**

6        Although the Grid indicates that this motion was filed on November 1, 2002, plaintiffs never

7    in fact did so, even though they evidently served it on defendants.  Since plaintiffs did not file this

8    motion, there is nothing for the Court to adjudicate.

9    **4.    Plaintiffs' Motion in Limine to Preclude Defendants from Arguing that Its (sic)
        Industry Is "Highly Regulated"**

10

11        Although the Grid indicates that this motion was filed on November 1, 2002, plaintiffs never

12   in fact did so, even though they evidently served it on defendants.  Since plaintiffs did not file this

13   motion, there is nothing for the Court to adjudicate.

14   **5.    Plaintiffs' Motion in Limine Re: "Public Knowledge" of the Risks of Smoking**

15       Although the Grid indicates that this motion was filed on November 1, 2002, plaintiffs never

16   in fact did so, even though they evidently served it on defendants.  Since plaintiffs did not file this

17   motion, there is nothing for the Court to adjudicate.

18   **6.    Plaintiffs' Motion in Limine to Limit Joan Hoff's Testimony to Information
        Actually Heard and Relied upon by Frank White**

19

20       This motion in limine was not filed until November 18, 2002, ten calendar days and six court

21   days after the deadline for filing motions in limine—which deadline was extended in the first

22   instance due to plaintiffs' noncompliance with the Court's Order for Pretrial Preparation.  Plaintiffs

23   have not put forth any reason for the untimeliness of this motion.

24       Plaintiffs' filing of this motion demonstrates a willful disregard for the Court's orders.

25   Moreover, even though defendants filed an opposition to this motion on November 20, 2002, the

26   timing of the motion deprived defendants of the five-day period to oppose the motion that was

27   contemplated by the Court's order at the October 30, 2002, telephone conference (motions in limine

28   to be filed by November 8, 2002; oppositions, by November 13, 2002).  Accordingly, the Court

5

United States District Court

For the Northern District of California

1  STRIKES the motion from the record.

2      **7.**    **Defendants' Motion for Certain Trial Procedures Pursuant to L.R. 7-10**

3  This motion shall be addressed by the Court at the pretrial conference on December 2, 2002.

4      **8.**    **Defendants' Motion to Implement Certain Additional Trial Procedures**

5  This motion shall be addressed by the Court at the pretrial conference on December 2, 2002.

6      **9.**    **Defendants' Motion in Limine to Exclude Certain Evidence and Argument Regarding Wrongful Death Damages**

7

8      In this motion, defendants contend that plaintiffs cannot recover (1) for their grief and

9  sorrow, (2) lost earnings or income, (3) the value of household services provided by decedent, and

10  (4) loss of society, comfort, care, and protection offered by the decent.  First, they contend that as a

11  matter of California law, damages for mental and emotional distress, including grief and sorrow, are

12  not available in a wrongful death action.  Second, they argue that because at the time of his death the

13  decedent was 81 years old, was not working, and was completely dependent on other family

14  members, there are no lost earnings or income for plaintiffs to recover.  Third, defendants assert that

15  plaintiffs cannot recover for loss of services because the decedent was not providing such services at

16  the time of his death.  Fourth, they contend that because the decedent was in very poor condition

17  near the time of his death and was completely dependent on others for assistance, he was not

18  affording plaintiffs any care, comfort, and society to support an award of damages.  Consequently,

19  defendants seek an order precluding plaintiffs from presenting evidence or argument regarding any

20  emotional injury, grief, or sorrow that they suffered as a result of the decedent's death or evidence or

21  argument relating to lost income, lost services, or lost care, comfort, and society.

22      Plaintiffs' response, in its virtual entirety, is as follows:

23  The law is clear in California that Wrongful Death Damages are limited to the financial
support each of the said heirs would have received from the deceased, except for the

24  support, and the right to receive support, if any, which each of the heirs has lost by
reason of the death, and reasonable compensation for the loss of love, companionship,

25  comfort, affection, society, solace, moral support, and any loss of the enjoyment of
sexual relations (with respect to DOROTHY).  (BAJI 14.50)

26

27  Plaintiffs will claim only the above and will introduce evidence on the issues outlined
above.

28      Although the Court finds plaintiffs' response vague and conclusory, the Court concludes that

**United States District Court**
For the Northern District of California

1  defendants' motion in limine should not be granted in its entirety at this time.  Defendants

2  are correct that plaintiffs, as a matter of law, may not be awarded damages for their grief and sorrow

3  based on plaintiffs' wrongful death claim, and plaintiffs have not offered any response to

4  defendants' arguments on this point.  Accordingly, the Court GRANTS the motion on the first

5  category of damages addressed by defendants in this motion.

6  But defendants' contentions about plaintiffs' inability to recover damages for the other

7  categories of injury are fundamentally different.  Defendants are contending that plaintiffs are not

8  entitled to damages on these bases not as a matter of law, but as a matter of fact:  they assert that

9  plaintiffs cannot put forth sufficient evidence to demonstrate that they are entitled to recover for

10  these categories of injuries.  Effectively, defendants are seeking an order of partial summary

11  judgment on these issues.  But if at this late stage of the pretrial proceedings defendants believe that

12  plaintiffs cannot put forward sufficient evidence on these issues at trial, they should have already

13  moved for partial summary judgment.  Now is not the appropriate time to do so.

14  If plaintiffs introduce evidence at trial tending to show that they are entitled to recover for

15  the last three categories of injury identified by defendants above, they can then argue to the jury that

16  they are entitled to appropriate damages.  If they do not introduce such evidence, on defendants'

17  objection they will be precluded from making such arguments.  Moreover, defendants may opt to

18  move for judgment as a matter of law on any of these issues pursuant to Federal Rule of Civil

19  Procedure 50.  Accordingly, the Court DENIES this motion as to the last three categories of

20  damages without prejudice to its being renewed at trial, either in whole or in part.

21  **10.  Defendants' Motion in Limine to Preclude Testimony by Ray Goldstein, Dia
22      Hardin and "Various Custodians of Records of Defendants"**

23  Defendants have moved for an order precluding plaintiffs from having Ray Goldstein, Dia

24  Hardin, and "Various Custodians" of defendants testify at trial.  Plaintiffs have withdrawn Dia

25  Hardin as a witness, so this motion is DENIED AS MOOT with respect to Dia Hardin.  The motion

26  now relates only to Ray Goldstein and "Various Custodians."

27  Defendants contend that plaintiffs did not disclose Ray Goldstein or the "Various

28  Custodians" until plaintiffs' service of their witness list on defendants (on October 28, 2002), even

7

1   though, defendants contend, plaintiffs were required to do so in their initial disclosures two years

2   ago pursuant to Federal Rule of Civil Procedure 26(e)(1).  Moreover, the witness list that plaintiffs

3   served on defendants on October 28, 2002, did not contain summaries of the witnesses' anticipated

4   testimony, in contravention of the Court's Order for Pretrial Preparation; an amended witness list

5   containing these summaries was not served until November 15, 2002.  Defendants add that Ray

6   Goldstein's testimony is objectionable because defendants cannot imagine how he will be able to

7   authenticate defendants' business records.

8       Plaintiffs' response states, in pertinent part:

9       Ray Goldstein will testify as a fact witness only, as to the existence of certain documents
        on defendants' web sites.  As a non-expert, Plaintiffs do not believe he was required on
10      the Rule 26 Disclosure.

11      The Custodians will be subpoenaed if the Defendants are not willing to stipulate to the
        authenticity of documents on their web sites.  Plaintiffs have assumed that this should
12      be enough for authenticity.   If the Court disagrees, Plaintiffs may subpoena the
        Custodians, perhaps for rebuttal as impeachment witnesses.
13

14      Rule 26(a)(1)(A) requires a party to provide in its initial disclosures information pertaining

15  to "each individual likely to have discoverable information that the disclosing party may use to

16  support its claims or defenses, unless solely for impeachment, identifying the subjects of the

17  information."  Rule 26(e)(1) requires a party to supplement its initial disclosures "if the party learns

18  that in some material respect the information disclosed is incomplete or incorrect and if the

19  additional or corrective information has not otherwise been made known to the other parties during

20  the discovery process or in writing."

21      Rule 37(c)(1) provides in pertinent part:  "A party that without substantial justification fails

22  to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless,

23  permitted to use as evidence at a trial . . . any witness or information not so disclosed."  The

24  threshold issue, therefore, is whether plaintiffs' failure to disclose Ray Goldstein or "Various

25  Custodians" of defendants contravenes Rule 26(a) or 26(e)(1).

26      The Court concludes that plaintiffs' failure to disclose Ray Goldstein contravenes Rule 26(a)

27  and/or 26(e)(1).  It was crucial that plaintiffs timely disclose Mr. Goldstein to defendants to enable

28  them adequately to prepare their respective defenses in this action.  Apparently, Mr. Goldstein will

United States District Court
For the Northern District of California

8

be used to authenticate certain documents on defendants' websites, although this purpose was not revealed until November 15, 2002, when plaintiffs first disclosed to defendants the substance of Mr. Goldstein's anticipated testimony in their Amended Witness List.  Authentication of these documents may be a significant aspect of plaintiffs' case, as presumably certain crucial information that plaintiffs will attempt to attribute to defendants are contained in these documents.

Had Mr. Goldstein been disclosed, defendants could have deposed him to discover the basis for his purported knowledge of the existence of certain documents, which documents he reviewed, and how he gained access to those documents.  Defendants could then verify with their employees whether Mr. Goldstein's answers were correct.  For example, if Mr. Goldstein were to testify at a deposition that he reviewed a certain R.J. Reynolds document on its website three years ago, defendant R.J. Reynolds could then check with its employees to ascertain when that document was posted on its website; if it turned out that the document was posted, for example, only one year ago, defendants would have a basis to impeach or otherwise refute Mr. Goldstein's testimony.  The consequence of plaintiffs' nondisclosure of Mr. Goldstein is that he will be able to make virtually unchallenged averments of fact about certain documents, as it is unreasonable to expect defendants, two large corporations, to be in a position to know, without having the time for research, whether or not a factual assertion that Mr. Goldstein may make at trial is correct.

Defendants are therefore correct that the result of plaintiffs' nondisclosure is that they "are unable to make well-grounded, specific objections to the proposed testimony as required by the Pretrial Order, ¶ F.3, and are equally unable to adequately prepare to cross-examine" Mr. Goldstein. The fact that plaintiffs apparently believed that their duty of disclosure (and of supplementing their disclosures) extended only to expert witnesses does not excuse their noncompliance with the plain and unequivocal directives set out in Rule 26(a)(1) and 26(e)(1).  The Court thus agrees with defendants that "[p]laintiffs should not be awarded a tactical advantage because of their failure to comply with the Pretrial Order."  Since it is clear that plaintiffs' noncompliance is not harmless, Rule 37(c)(1) requires the Court to preclude Mr. Goldstein from testifying at trial.  Accordingly, the Court GRANTS the motion as to Mr. Goldstein.

As for the "Various Custodians," these individuals, whatever their names, are employees of

9

*United States District Court*
*For the Northern District of California*

1  defendants. Defendants, not plaintiffs, have access to the relevant information for these individuals.

2  Defendants cannot reasonably claim to have been caught off-guard by plaintiffs' listing of "Various

3  Custodians" in the witness list they served on defendants on October 28, 2002. Their true objection

4  appears to be to the tardy disclosure of a compliant exhibit list, as presumably defendants'

5  custodians of records will simply be asked basic factual questions regarding the authenticity of

6  defendants' documents. The Court, therefore, DENIES defendants' motion as to the "Various

7  Custodians."

8      **11.    Defendants' Motion in Limine to Preclude Dr. Farone from Testifying as an
Expert Witness**

9

10        Defendants have moved to preclude Dr. William Farone from testifying as an expert witness,

11  although they do not object to his testifying as a percipient witness regarding information obtained

12  and witnessed during his experience as an employee at Philip Morris from 1976 to 1984.

13  Defendants' motion has several features and arguments. First, defendants contend that whatever Dr.

14  Farone's testimony may be, he is not sufficiently qualified to offer opinions on the wide variety of

15  issues suggested in his Rule 26 report. In particular, defendants assert that he has formal education

16  or training only in chemistry and biotechnology; that his methodology is idiosyncratic in that it is

17  based on issuing hypotheses that he assumes to be true until they are proven false; that Dr. Farone

18  lacks personal knowledge of documents and events that he did not witness while he was at Philip

19  Morris from 1976 to 1984; and that his information about R.J. Reynolds has been developed solely

20  from his review of documents in litigation in which he has participated and not from any personal

21  experience.

22        Second, defendants contend that Dr. Farone should be prohibited from offering an expert

23  opinion regarding safer alternative cigarette designs because his hypotheses do not meet the

24  admissibility standards for expert opinions under Rule 702 set out in Daubert v. Merrell Dow

25  Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. In particular, defendants argue that Dr.

26  Farone's hypothesized alternative cigarette design has never been tested, meaning that the science

27  and theories on which the design is based cannot be considered sufficiently reliable to be admissible

28  under Daubert.

United States District Court

For the Northern District of California

1    Third, defendants assert that Dr. Farone, by his own admission, is not qualified to offer

2  expert opinions on addiction.  Consequently, defendants argue that Dr. Farone should be barred from

3  testifying that ammonia affects nicotine or addiction and from testifying that theobromine, glycerin,

4  acetaldehyde, or pyridine affect nicotine or addiction.

5    Finally, defendants contend that Dr. Farone should not be permitted to testify concerning

6  disease causation because he is not qualified to provide expert testimony on that subject.  According

7  to defendants, Dr. Farone has no education or training in medicine, pathology, or toxicology.

8    In their opposition, plaintiffs "submit that William Farone is a recognized expert in cigarette

9  design."  They provide a copy of his curriculum vitae, a list of tobacco-related trials in which he has

10  testified over the last four years, Dr. Farone's Rule 26 report, and a list of publications he has

11  authored.  Plaintiffs explain that while Dr. Farone was employed at Philip Morris, his "specific

12  purpose was to help develop 'safe' cigarette products.  He developed new technologies and

13  processes which would have changed the nature of cigarette making, and make cigarettes less

14  hazardous for smokers."  Plaintiffs reference Dr. Farone's report, stating that Dr. Farone "will testify

15  that it has been technologically feasible since the early 70's to design a cigarette which would not

16  cause an increase in cancer, emphysema, heart failure or other smoking-related disease.  The

17  cigarette companies did not implement this technology until recently, and when they did, with

18  products such as Eclipse, Next, Premier and Accord, they did not market the products so that there

19  was credibility that they were, in fact, safer (¶. 11-16, Report)."  With regard to ammonia, plaintiffs

20  assert that "[a]mmonia has the effect in a cigarette of increasing nicotine delivery levels, which are

21  important to create, maintain and satisfy nicotine addiction. (See ¶. 21-23, Report.)  PHILIP

22  MORRIS started adding ammonia to its products in 1965.  This caused the sales of Marlboro to

23  grow very rapidly in sales after the addition of the ammonia . . . ."  Citing Dr. Farone's report,

24  plaintiffs continue that "PHILIP MORRIS agreed with other cigarette manufacturers not to compete

25  among themsleves [sic] on health issues and not to conduct meaningful biological research."

26  Plaintiffs conclude by asserting that Dr. Farone is not a disgruntled employee of Philip Morris.

27    Plaintiffs' opposition is insufficient to withstand defendants' persuasive arguments regarding

28  the propriety of Dr. Farone's offering expert testimony.  Much of plaintiffs' opposition references

11

matters within Dr. Farone's personal experience, such as Philip Morris' Director of Research's allegedly telling Dr. Farone that "his real job was to maintain the controversy about smoking and health." But defendants do not oppose Dr. Farone's testifying to matters within his personal experience.

As for matters apparently within the province of expert opinion, plaintiffs have not put forth evidence or arguments sufficient to dispel the reasonable concerns raised by defendants that Dr. Farone is insufficiently qualified to offer expert opinions on addiction and pathology and that the science he apparently employs is insufficiently reliable to satisfy the Rule 702 requirements established in <u>Daubert</u> and its progeny. The centerpiece of plaintiffs' evidence is Dr. Farone's report. But the report, a mélange of hearsay statements, unsupported contentions, vague references to the "cigarette manufacturing industry," and invective, does not establish Dr. Farone's qualifications to offer <u>expert opinions</u> on the subjects on which he intends to testify. For example, plaintiffs have not put forth any evidence tending to demonstrate that Dr. Farone is an expert on addiction. The only hard evidence presented to the Court on this subject is Dr. Farone's own admissions that he is not an expert on addiction. Similarly, plaintiffs have not provided evidence showing that Dr. Farone is qualified to provide medical opinions.

Nor have plaintiffs demonstrated that Dr. Farone's opinions are based on reliable science. For example, in his report Dr. Farone claims that "[a]ny of the tobacco defendants could have developed a less harmful cigarette by" doing a number of things that Dr. Farone lists. But nowhere does Dr. Farone demonstrate that such a "less harmful" cigarette is technically or commercially feasible, and nowhere does he state that such a cigarette has been tested. At one point in the report he states that he "was personally involved in development of one method for removing from smoke virtually all nitrosamines, generally recognized as one of the most carcinogenic agents, even in 'low tar' cigarettes, but never saw the result successfully marketed." Tellingly, however, he does not elaborate on why the result was not successfully marketed. Without elaboration or plaintiffs' putting forth additional evidence, the Court has great difficulty construing that statement as anything more weighty than innuendo.

Much of Dr. Farone's report appears to consist of hearsay statements that have nothing to do

12

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  with an expert opinion.  For example, Dr. Farone writes:

2  > One industry commentator notes that Philip Morris introduced the use of added ammonia
   > in their cigarette products in 1965.  "Philip Morris brands, especially Marlboro, began
3  > growing in sales very rapidly after introduction of added ammonia."  The industry began
   > studying ammonia technology as early as the 1950s when Claude Teague (RJR)
4  > investigated the ammoniation of tobacco.

5  Although expert witnesses may rely on hearsay if such matter would "reasonably [be] relied upon by

6  experts in the particular field in forming opinions or inferences upon the subject," Fed. R. Evid. 703,

7  Dr. Farone's report does not make clear to what opinion or inference the statement of the "industry

8  commentator," or the broader discussion of ammonia in cigarettes, relates.  (The Court also notes

9  that it is the particular two defendants alone that are parties to this action, not the "industry" in

10  general.)  Nor does the report make clear whether experts in Dr. Farone's relevant field (whatever

11  that field may be) reasonably rely on statements of unnamed industry commentators in forming

12  expert opinions or inferences on the subject—although, as explained above, it is unclear what is the

13  particular subject on which Dr. Farone is supposed to offer an expert opinion.  See Fed. R. Evid. 703

14  ("If of a type reasonably relied upon by experts in the particular field in forming opinions or

15  inferences on the subject, the facts or data need not be admissible in evidence in order for the

16  opinion or inference to be admitted.").

17  Nor is there any discussion of whether the alleged presence of ammonia in cigarettes has

18  been demonstrated through reliable science to increase addiction.  There is no explanation for the

19  evident insinuation that Philip Morris' alleged decision to add ammonia to cigarettes was the cause

20  of its increased sales; for all the reader knows, there may have been other factors that caused the

21  increase in sales.  Thus, as far as the Court can tell, Dr. Farone's discussion of ammonia in his report

22  has nothing to do with any expert opinion and is merely designed to inflame the jury's sensibilities

23  about defendants' conduct.  If plaintiffs consider the underlying information to be important,

24  including the statement of the unnamed industry commentator set out above, they may present that

25  evidence, if admissible, directly to the jury for it to form its own conclusion.[2]

26

27  [2] The Court does not find the other evidence offered by plaintiffs in their opposition to be
    persuasive.  Dr. Farone's curriculum vitae does not disclose any information that would lead one to
28  conclude that he is an expert in addiction or pathology or that the scientific methods that he

United States District Court

For the Northern District of California

1    For these reasons, the Court GRANTS the motion.

2    **12.    Defendants' Motion in Limine to Limit Dr. Feingold's Testimony to Pulmonology and Internal Medicine**

3

4    Defendants contend that the scope of testimony of plaintiffs' expert witness Dr. Allan

5    Feingold should be limited to pulmonology and internal medicine, his fields of expertise, and he

6    should not be permitted to testify to matters beyond these fields.  Plaintiffs respond as follows:

7    Dr. Feingold will be offered as a witness by Plaintiffs in rebuttal only, as an impediment or rebuttal witness.  This is in view of the fact that BAJI 9.00.5 - Design Defect -

8    Essential Elements and the cases interpreting this instruction [see Barker v. Lull Engineering Co. (1978) 20 Cal 3d 413] establish that once a plaintiff makes a prima facie

9    showing that the injury or death was proximately caused by the product's design, the burden shifts to the defendant to prove that the product is not defective.  This burden

10   includes showing that the benefits of the products as a whole outweigh the danger inherent in such design.  Dr. Feingold may offer testimony on that issue, and therefore

11   his testimony is that of a rebuttal witness.  Any attempt at this time to limit his testimony would be premature.

12

13   Plaintiffs' opposition is both conclusory and non-responsive to defendants' contention that

14   Dr. Feingold is <u>not qualified</u> to opine on matters other than pulmonology and internal medicine.

15   Accordingly, the Court GRANTS the motion.

16   **13.    Defendants' Motion in Limine to Preclude the Testimony of Professor Marvin E. Goldberg**

17

18   Defendants contend that the plaintiffs' expert witness Professor Marvin E. Goldberg should

19   be precluded from testifying at trial because there is no evidence that the subject matter of Professor

20   Goldberg's putative testimony has anything to do with the decedent and, in fact, the evidence

21   adduced thus far indicates that it has <u>nothing</u> to do with the decedent.  Specifically, defendants

22

-------------------

23   employs, whatever they may be, are reliable and commonly accepted.  The list of cases in which Dr.

24   Farone has testified does not indicate whether he was permitted to testify as an expert or percipient witness in those cases and what the subject matter of his testimony was in each case.  Ironically,

25   defendants cite to one of the cases that appear on this list, Engle v. R.J. Reynolds Tobacco Company, No. 94-08273 CA22 (Cir. Ct. Fla. 1998), a Florida state-court case, in which the court

26   limited Dr. Farone's testimony to "what he did" while at Philip Morris and "the end results of that research in which he has direct knowledge."  Finally, Dr. Farone's lengthy list of publications does

27   not support plaintiffs' efforts to demonstrate that he is qualified in the relevant areas of testimony.  The vast majority of the titles of these publications indicate that they have nothing to do with

28   chemistry or biotechnology relating to cigarettes and tobacco, and of the few that do so, the Court has not been provided with the text of these publications.

14

United States District Court

For the Northern District of California

1   explain that Professor Goldberg apparently will testify as to matters including the advertising efforts

2   of the tobacco industry, the proper interpretations of cigarette advertisements, the effect of these

3   advertisements on consumer expectations, the intent of tobacco companies in issuing certain

4   advertisements, and so forth.  Defendants point out, however, that Professor Goldberg has admitted

5   that he knows virtually nothing about the decedent and the decedent's background, and, moreover,

6   the decedent's brother testified at his deposition that the decedent never saw any advertisements for

7   cigarettes during the period of time when he began smoking.  Accordingly, Defendants argue that

8   Professor Goldberg's putative testimony is irrelevant and unfairly prejudicial and fails to meet the

9   standards for expert testimony embodied in Federal Rules of Evidence 702 and 703.

10        The entirety of plaintiffs' opposition consists of the following:

11        Professor Goldberg is qualified to testify in this action as to failure to warn issues, such
          as the existence or lack of warnings on cigarette packages and cigarette advertisements.

12

13        He is also qualified to testify as to consumer expectations as resulting from
          advertisements, warnings and public statements of tobacco executives and employees.
          He should be allowed to testify.

14

15        The arguments in defendants' brief are addressed only to Professor Goldberg's expert

16   testimony on the subject of advertising.  In their opposition, however, plaintiffs indicate that

17   Professor Goldberg will testify not only with regard to advertising, but also with regard to the

18   existence of warnings or lack thereof on cigarette packages.  Professor Goldberg, therefore, may

19   testify with regard to such matter, but only if plaintiffs have laid sufficient foundation both to

20   demonstrate that his expert opinion is relevant to plaintiffs' claim and that he is qualified to offer an

21   expert opinion.  This proviso requires, inter alia, that plaintiffs demonstrate that the cigarette

22   packaging about which Professor Goldberg will offer an expert opinion was actually seen and relied

23   on by the decedent—which, of course, entails that the packaging be for cigarettes that the decedent

24   actually smoked.  Professor Goldberg may not simply offer opinions on cigarette packaging for

25   cigarettes that the decedent never smoked or packaging that the decedent never saw.  In addition,

26   some of this testimony may be barred by the Court's resolution of other motions in limine in this

27   Order infra.  Accordingly, the motion is DENIED with regard to Professor Goldberg's offering

28   testimony on cigarette packaging WITHOUT PREJUDICE to the motion's being renewed at trial if

United States District Court
For the Northern District of California

1    appropriate.

2         Plaintiffs' opposition, however, fails to address the relevancy argument posed by defendants

3    with regard to expert testimony on advertising:  if the decedent was never exposed to cigarette

4    advertising when he started smoking, it is impossible to understand how testimony about cigarette

5    advertising is relevant to plaintiffs' wrongful death claim.  Plaintiffs appear to believe that this trial

6    will involve a free-ranging seminar on the dangers of tobacco products and the motivations and

7    effects of tobacco advertising.  But plaintiffs' sole remaining claim is a wrongful death action based

8    on products liability.  If plaintiffs cannot demonstrate that certain conduct (or omissions) of

9    defendants contributed in any way to the decedent's death, then evidence or argument relating to

10   such conduct is irrelevant.  See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any

11   tendency to make the existence of any fact that is of consequence to the determination of the action

12   more probable or less probable than it would be without the evidence.").  This is precisely the

13   concern presented by Professor Goldberg's putative testimony.  Accordingly, the Court GRANTS

14   the motion with respect to Professor Goldberg's offering testimony on the subject of cigarette

15   advertising.

16   **14.    Defendants' Motion in Limine to Exclude Evidence Relating to Preempted**
          **Claims**
17

18        According to the Grid, Defendants' Motion in Limine to Exclude Evidence Relating to

19   Preempted claims is "at issue" solely as to post-1969 design defect claims under the consumer

20   expectations and risk-benefit tests.  With regard to what is at issue, defendants, citing Papike v.

21   Tambrands, Inc., 107 F.3d 737 (9th Cir. 1997), contend that any post-1969 design defect claim is

22   expressly preempted because the warning labels required by federal law beginning in 1969 establish,

23   as a matter of law, the consumer expectations for the safety of cigarettes.  Defendants further

24   contend that evidence offered to prove that defendants' cigarettes do not satisfy the risk-benefit test

25   for products liability under California law and evidence of "feasible alternative cigarette designs"

26   should be excluded due to conflict preemption.  Specifically, defendants argue that when Congress

27   chose not to ban cigarettes but instead to require warning labels, Congress made a decision to keep

28   legal cigarettes in the form they existed at the time; accordingly, if the Court effectively finds that

16

1  under California law cigarettes should be banned, the intent of Congress will be frustrated.

2          With respect to preemption as to consumer expectations, plaintiffs respond that consumer

3  expectations under California law involve more than warning labels; they involve advertising and

4  literature concerning safety as well.  As for defendants' conflict preemption arguments, plaintiffs

5  comment that defendants have cited to no authority in support; that defendants' references to the

6  Federal Food and Drug Administration's (FDA) conclusion that tobacco products cannot be made

7  safe for obtaining their intended effects is irrelevant in light of the Supreme Court's holding that the

8  FDA does not have jurisdiction over tobacco products; and that if Congress intended to displace

9  state authority to regulate the safety of tobacco products, it was required to announce its intent to do

10 so with a clear statement.

11         The Court finds persuasive defendants' argument that plaintiffs' design defect claim is

12 preempted insofar as it is based on the consumer expectations test.  The Ninth Circuit's reasoning in

13 Papike appears to be squarely on point.  In Papike, the court concluded that the district court acted

14 properly by dismissing the plaintiff's design defect claim arising from injury allegedly caused by a

15 substance contained in a tampon.  The tampon packaging, however, bore a warning mandated by

16 federal law.  The court explained:  "[Defendant's] warnings met the federal requirements and

17 [plaintiff's] design defect claim therefore fails the 'consumer expectation' test.  To rule otherwise

18 would allow the anomalous circumstance that a consumer is entitled to expect a product to perform

19 more safely than its government-mandated warnings indicate."  Id. at 743.

20         Similarly, after 1969 defendants' products and advertising bore warning labels mandated by

21 federal law.  Plaintiffs have not presented any argument for why federally mandated warnings for

22 tampons are able to preempt state-law design defect claims based on consumer expectations but

23 similar warnings for cigarettes cannot do so.  Plaintiffs' contention that under California law,

24 consumer expectations involve more than warning labels does not address the issue of whether

25 federal law preempts California law in the first place.  Accordingly, the Court GRANTS the motion

26 with regard to plaintiffs' post-1969 design defect claim under the consumer expectations test.

27         The Court, however, is not similarly persuaded by defendants' arguments regarding the risk-

28 benefit test.  The Court is not prepared to assume in the absence of substantial authority that by

17

United States District Court

For the Northern District of California

1  passing the Labeling Act, Congress intended to displace all state regulation of tobacco products; at

2  most, the Court may assume that Congress intended to displace state regulation of <u>safety warnings</u>

3  for tobacco products.  When considering preemption, federal courts presume that the historic police

4  powers of the states were not to be superseded by federal law unless that was the "clear and

5  manifest" purpose of Congress.  <u>City of Columbus v. Ours Garage and Wrecker Serv., Inc.</u>, 122 S.

6  Ct. 2226, 2232 (2002) (citations omitted).  The Court will not deviate from this practice here, as

7  defendants have not presented sufficient evidence or authority to overcome this presumption.

8  Accordingly, the Court DENIES the motion with regard to plaintiffs' post-1969 design defect claim

9  under the risk-benefit test.

10  **15.    Defendants' Motion in Limine to Exclude Any Evidence Regarding the Acts,**
11  **Documents, and Testimony of Non-party Tobacco Companies and Industry**
     **Trade Associations**

12        Defendants contend that plaintiffs should be precluded from introducing evidence regarding

13  the acts, documents, and testimony of tobacco companies other than defendants and industry trade

14  associations because such evidence is irrelevant (Rule 401), hearsay (Rule 801), and is unfairly

15  prejudicial (Rule 403).  Defendants further contend that the documents of non-parties cannot be

16  authenticated.  Defendants also anticipate (correctly) plaintiffs' arguing that the evidence sought to

17  be precluded should be admissible under Rule 801(d)(2)(E) as statements of co-conspirators of

18  parties-opponent during the course and furtherance of the conspiracy.  They ask the court to issue an

19  order precluding plaintiffs and any of their witnesses from offering any evidence about, referring to,

20  or making any innuendo regarding the acts, documents, and testimony of non-party tobacco

21  companies and industry trade associations, and from commenting thereon in the presence of the jury

22  at any time, including opening statements and jury voir dire.

23        Plaintiffs respond that they "have a substantial amount of evidence linking all of the

24  American tobacco companies and the indicated trade associations, such as CTR, TIRC, TI and Hill

25  & Knowlton in a massive and pervasive conspiracy to deny consumers the true facts and risks of

26  smoking."  They cite to Rule 801(d)(2)(E) and argue evidence of statements by such non-parties is

27  admissible.

28        In light of plaintiffs' representation to the Court that they have significant evidence

18

United States District Court

For the Northern District of California

1   establishing such a conspiracy, the Court DENIES the motion at this time.  Defendants' argument

2   that plaintiffs cannot authenticate documents of non-parties is in essence a question of foundation or

3   sufficiency of evidence, not one of whether the evidence falls within a category of excludable

4   evidence.  The Court, however, strongly admonishes plaintiffs to lay a proper foundation before they

5   attempt to introduce evidence of acts, statements, and documents of various non-parties.  Laying a

6   foundation entails demonstrating that such a conspiracy exists and that the statements were made in

7   furtherance of the conspiracy.  The evidence must also satisfy other requirements under the Federal

8   Rules of Evidence, including those embodied in Rules 401 and 403.  Accordingly, the Court's denial

9   of this motion is without prejudice to its being renewed at trial on any or all of the grounds identified

10  by defendants.  If plaintiffs introduce the evidence at issue without having first laid a sufficient

11  foundation, the Court will be inclined to grant the motion either with regard to the evidence

12  specifically at issue or, if the Court cannot be confident that plaintiffs will lay a foundation before

13  offering such evidence going forward, with regard to all such evidence for the remainder of trial, and

14  it will be inclined to strike any evidence or argument offered improperly.

15   **16.   Defendants' Motion in Limine to Preclude Evidence or Argument About
              Diseases Associated with Smoking Other than the Diseases at Issue in This Case**

16

17          Defendants contend that plaintiffs should be precluded from introducing evidence or

18  argument about diseases other than the diseases that afflicted the decedent at the time of his death

19  pursuant to Rules 401, 402, and 403.  Defendants are especially concerned about the potential for

20  unfair prejudice arising from references to cancer, which the decedent never developed, and they

21  contend that the introduction of statistics purporting to demonstrate the rate of deaths caused by

22  tobacco products will confuse the jury because presumably a substantial portion of those deaths will

23  not be caused by the diseases that afflicted the decedent.

24          Plaintiffs respond as follows:

25          Plaintiffs will not allege, or attempt to prove, that Frank White died of cancer, or any
        other disease other than pulmonary disease and cardiomyopathy.  However, the
26      connection between cancer and smoking has been known since the early 1950's, and it
        is Plaintiffs' position that this should have precipitated warnings long before the
27      Federally mandated warnings in 1969. Warnings that smoking is a hazard to health were
        warranted at least by the early 1950's and would have perhaps been heeded by Frank
28      White at that time.

19

United States District Court
For the Northern District of California

1   With respect to the statistical data, the number of deaths attributable anywhere to
2   pulmonary problems and heart problems due to smoking is certainly relevant to
    Defendants' knowledge of the risks of smoking and their duty to warn.  These figures
    are also relevant to the actual risk of smoking, a factor in the risk-benefit analysis of the
3   product liability allegation in Plaintiffs' complaint.

4        In light of plaintiffs' statements in their opposition, the Court concludes that evidence of

5   diseases other than those experienced by the decedent may be relevant to plaintiffs' products

6   liability cause of action and particularly their failure to warn theory.  For this evidence to be

7   relevant, however, plaintiffs will have to lay a foundation by demonstrating that defendants were

8   aware of the links between smoking tobacco and disease.  If, for example, it was not until a number

9   of years after defendants had been marketing their products that studies were disseminated that

10  showed that smoking causes a variety of diseases, and plaintiffs do not demonstrate that defendants

11  knew or should have known the substance of these studies, the after-the-fact studies would not be

12  relevant to defendants' duty to warn.  As for defendants' concerns about prejudice, the Court may be

13  able to alleviate some of these concerns by providing a limiting instruction to ensure that the jury

14  understands the purpose for which such evidence is offered.

15       For these reasons, the Court DENIES this motion.  However, because the Court cannot

16  discern from plaintiffs' opposition the substance of the evidence that plaintiffs intend to introduce,

17  the Court's denial of this motion is without prejudice to its being renewed at trial, either in whole or

18  in part, if appropriate.

19       **17.   Defendants' Motion in Limine to Exclude Evidence of and References to**
              **Tobacco Industry Advocacy Efforts, Government Petitioning Activities, and**
20            **Testimony at Hearings Before Any Committee or Subcommittee of Any**
              **Government Agency or Legislative Body**
21

22       Defendants move to exclude evidence of and reference to defendants' advocacy efforts,

23  government petitioning activities, or testimony at Congressional Subcommittee Hearings pursuant to

24  Federal Rules of Evidence 401, 402, 403, and 501.  The centerpiece of their argument is that such

25  conduct is protected by certain sections of the California Civil Code.  Plaintiffs respond:

26       Plaintiffs do not intend to introduce any evidence of governmental advocacy, petitioning
         and testimony at hearings, except in rebuttal or impeachment.  Testimony by Defendants
27       may come up relating to their own conduct during the immunity period.  Plaintiffs
         should be allowed to rebut or impeach this.  This would apply to the testimony in the
28       1994 Hearings.  For example, if a tobacco employee in this trial alleged that tobacco

20

1    executives never said tobacco was not addicting, the testimony at the 1994 Hearings
2    should be allowed to be brought up as rebuttal or impeachment.

3        With the understanding indicated in plaintiffs' opposition, the Court agrees with plaintiffs.
4    Defendants should not be entitled to use any immunity both as a sword and as a shield.  If one of
5    defendants' witnesses makes a statement that is contradicted by such evidence, plaintiffs may
6    properly rebut or impeach him or her with such evidence.  If, however, no such evidence is ever
7    introduced through the course of trial, plaintiffs will not be able to make any argument based on
8    such evidence.

9        Accordingly, the Court GRANTS in part and DENIES in part the motion:  plaintiffs are
10   precluded from offering such evidence in their case-in-chief, but, if appropriate as explained above,
11   they may introduce such evidence in rebuttal or for impeachment purposes.

12       **18.    Defendants' Motion in Limine to Exclude All References to Industry Statements
13           or Acts Never Heard or Relied upon by Decedent**

14       Defendants move to exclude all references to industry statements or acts never heard or
15   relied on by the decedent.  Defendants' arguments are primarily directed to plaintiffs' fraud claim,
16   which is no longer at issue in this action.  Defendants also reiterate their arguments in part relating
17   to California Civil Code § 1714.45.

18       Plaintiffs contend that defendants' motion is moot because it relates to plaintiffs' fraud
19   claim.  The Court agrees.  Defendants' arguments relating to § 1714.45 will be addressed in
20   defendants' motion expressly based on that statute (see No. 19, infra).  Accordingly, the Court
21   DENIES the motion.  Defendants, however, are not precluded from objecting to industry statements
22   or acts never heard or relied on by the decedent on the usual grounds, such as relevance and hearsay.

23       **19.    Defendants' Motion in Limine to Exclude All Evidence of Tobacco Company
24           Conduct Immunized by Civil Code Section 1714.45**

25       In their motion in limine to exclude all evidence of tobacco company conduct from January
26   1, 1988, through December 31, 1997, that was immunized by California Civil Code § 1714.45,
27   defendants reiterate an argument made in Defendants' Renewed Motion for Summary Judgment on
28   Plaintiffs' Fraud Claim, which the Court did not address in ruling on that motion.  Specifically,

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  defendants argue that in a pair of recent decisions, <u>Myers v. Philip Morris Cos., Inc.</u>, 28 Cal. 4th 828

2  (2002), and <u>Naegele v. R.J. Reynolds Tobacco Co.</u>, 28 Cal. 4th 856 (2002), the California Supreme

3  Court held that tobacco manufacturers are immune from all product liability claims, other than

4  actions based on a manufacturing defect or breach of express warranty, for injury or death based on

5  conduct in which they engaged during this ten-year period.  Accordingly, defendants move that

6  evidence of such conduct be excluded on grounds of relevancy and unfair prejudice.

7         Plaintiffs do not dispute defendants' interpretation of <u>Myers</u> and <u>Naegele</u>.  They note at the

8  outset that this evidence would apply only to plaintiffs' suit against Philip Morris because the

9  decedent stopped smoking cigarettes manufactured by R.J. Reynolds in 1973.  As for evidence

10 presented against Philip Morris, plaintiffs invoke the risk-benefit theory of products liability and

11 state, "[i]f PHILIP MORRIS attempts to introduce evidence on the [relevant factors to be proven in

12 the risk-benefit theory], they may well get into their conduct during the immunity period."  Plaintiffs

13 essentially argue that if Philip Morris introduces such evidence, plaintiffs should be entitled to

14 introduce such evidence in rebuttal or for impeachment purposes.  As they state succinctly, "PHILIP

15 MORRIS should not be allowed to use the immunity period as both a 'shield' and a 'sword'."

16        The Court agrees with defendants' arguments about excluding evidence of defendants'

17 conduct or statements from the immunity period, but the Court also agrees with plaintiffs that

18 defendants should not be allowed to use § 1714.45 both as a shield and as a sword.  Accordingly, the

19 Court GRANTS in part and DENIES in part the motion, such that plaintiffs may not introduce

20 evidence of defendants' statements or conduct during the immunity period in their case-in-chief, but

21 they may do so for impeachment purposes or in rebuttal if defendants introduce such evidence in

22 their own case-in-chief.

23    **20.    Defendants' Motion in Limine to Exclude All Evidence of, or References**
          **Pertaining to, Their Use of Ammonia or Ammonia Compounds**
24

25        Defendants move to exclude all evidence of, or references pertaining to, defendants' use of

26 ammonia or ammonia compounds on grounds of relevancy (Rule 401) and undue prejudice (Rule

27 403).  Specifically, defendants contend that such evidence is irrelevant because R.J. Reynolds did

28 not start using ammonia to make its cigarettes until 1974, and the decedent stopped smoking R.J.

22

1  Reynolds cigarettes in 1973.  They further contend that such evidence is unduly prejudicial because

2  the concept of "nicotine manipulation" is a "hot-button issue" and there is no evidence that the

3  presence of ammonia in cigarettes makes them more addictive.

4        Plaintiffs respond as follows:

5        With respect to Defendant R.J. REYNOLDS:

6        The claims of R.J. REYNOLDS which seem to imply that ammonia was not used in the
         manufacture of Camels pror [sic] to 1974 do not hold weight.  In the affidavit of Jeffery
7        Gentry, he admits that R.J. REYNOLDS invented the ammonia process in the late
         1940's.  Then he states, "Reynolds began using ammonia in the processing of certain
8        types of RTS in 1974."

9        The affidavit stops short of saying ammonia was not used in the manufacture of Camels
         prior to 1974.  William Farone will testify that Claude Teague of R.J. REYNOLDS
10       invesigated [sic] the ammoniation of tobacco in the 1950's.  The affidavit of Mr. Gentry
         keeps using the term, "Ammoniated re-constituted tobacco", in his allegations that this
11       substance was not in any REYNOLDS cigarette earlier than 1974.  This argument does
         not say ammonia was not added to any part of any REYNOLDS cigarette before 1974.

12

13       PHILIP MORRIS

14       Frank White began smoking PHILIP MORRIS cigarettes in 1973.  William Farone will
         testify that PHILIP MORRIS began adding ammonia in 1965, which caused its brands,
15       especially Marlboro, to begin growing in sales very fast.

16  The opposition concludes with the assertion that William Farone is qualified to testify to the use of

17  ammonia in cigarettes and that his testimony should go to the jury.

18        Plaintiffs' opposition is insufficient to withstand defendants' arguments.  Although plaintiffs

19  are correct that the affidavit of Jeffery Gentry offered in support of defendants' motion does not

20  explicitly state that ammonia was not used in R.J. Reynolds cigarettes prior to 1973, that is the clear

21  import of his statements in his declaration.  More importantly, plaintiffs do not offer any evidence to

22  refute this assertion.  It is not completely certain what the nature of William Farone's discussion of

23  Claude Teague's investigation of the ammoniation of tobacco in the 1950's will be, but presumably

24  plaintiffs are referring to the statement in Dr. Farone's report that "[t]he industry began studying

25  ammonia technology as early as the 1950s when Claude Teague (RJR) investigated the ammoniation

26  of tobacco."  There is no indication, however, that ammonia was in fact used in R.J. Reynolds

27  cigarettes prior to 1974.  Accordingly, plaintiffs have not demonstrated the relevancy of such

28  evidence with regard to defendant R.J. Reynolds.

As for defendants' Rule 403 argument with regard to Philip Morris, the Court concludes that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice because, as more fully explained in the Court's discussion of Defendants' Motion in Limine to Preclude Dr. Farone from Testifying as an Expert Witness supra, there is no reliable evidence that the presence of ammonia in cigarettes makes them more addictive.

Accordingly, the Court GRANTS the motion.

### 21.   Defendants' Omnibus Motion in Limine to Exclude Irrelevant and Prejudicial Matters

Defendants have moved in an "omnibus motion in limine" to exclude various "irrelevant and prejudicial" matters.  Presently there are only two matters at issue:  First, defendants argue that the use of the phrases "Big Tobacco" or "Tobacco Cartel" would be irrelevant and prejudicial, and therefore these phrases should be excluded.  Second, defendants contend that arguing or implying that they should be held to a moral or ethical duty beyond the duty of care imposed by law would be irrelevant and prejudicial.

Plaintiffs oppose defendants' motions by arguing in pertinent part:  "Use of the words 'Big tobacco' and 'tobacco cartel' would be acceptable in closing argument.  Some of the Witnesses may, or may not, use that term. . . .  Arguing moral or ethical standards would be permissible [sic] during closing argument."

The Court agrees with defendants in substantial part.  The words "Big Tobacco" are unfairly prejudicial:  defendants are on trial, not the entire tobacco industry.  As for "Tobacco Cartel," the Court agrees with plaintiffs that this term may be used in closing argument, but only if competent evidence has been introduced demonstrating that such a cartel exists.  Otherwise, the use of this term shall be prohibited.

As for arguing moral or ethical standards, the Court agrees with defendants that such argument would be unfairly prejudicial.  Defendants have been sued for allegedly violating California law, not for violating moral or ethical codes.  Plaintiffs have put forward no argument other than a conclusory statement that such argument is acceptable.

Accordingly, the Court GRANTS in part the motion to the extent described above.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2

22. **Defendants' Motion in Limine to Exclude Evidence Regarding Risk-Benefits of Cigarettes**

3   "Under California law, a product is defectively designed if it fails to meet an ordinary

4   consumer's expectations, or if injury is attributable to a specific design feature of the product and the

5   risks associated with the design outweigh its benefits." Papike v. Tambrands Inc., 107 F.3d 737,

6   743 (9th Cir. 1997) (citing Barker v. Lull Eng'g Co., 20 Cal. 3d 413 (1978)).  This latter test for

7   products liability is known as the risk-benefit test.  Defendants contend that even though California

8   courts apply the risk-benefit test to product liability actions, the test is inapplicable to cigarettes

9   because their "potential dangers are both widely recognized and unpreventable, and [their] benefits

10  are uniquely personal to individual consumers."

11          Defendants' arguments assume the answer to a key question at issue in the approaching trial:

12  whether the risks of cigarettes are preventable.  Moreover, defendants have not cited to any authority

13  that is from this Circuit and/or that purports to apply California law.  Accordingly, the Court

14  DENIES the motion.

15
16

23. **Defendants' Motion in Limine to Preclude Any Reference to or Evidence of the FDA's Proposed Rule-makings**

17          Defendants note that at least one of plaintiffs' expert witnesses, Dr. Marvin Goldberg, has

18  indicated that he intends to base his testimony, in part, upon reports issued by the Federal Food and

19  Drug Administration ("FDA").  In particular, these reports appear to relate to Professor Goldberg's

20  expert testimony on the subject of cigarette advertising (as opposed to the subject of warnings on

21  cigarette packaging).  Defendants contend that these reports should be excluded as inadmissible

22  hearsay.

23          Plaintiffs respond (in a "Position") as follows:

24          Marvin Goldberg is an expert in marketing and advertising.  He has been disclosed in
        this action, has filed a Rule 26 Statement, and has been deposed.  He is entitled to state
25      the information he has relied upon to come to his conclusions.  The FDA reports may be
        discussed by Professor Goldberg and even known to the jury.  However, Plaintiffs do not
26      intend to ask that the reports be admitted.

27          As discussed supra, the Court has concluded that Professor Goldberg may offer expert

28  testimony on the subject of cigarette packaging if the appropriate foundation is laid and if his

25

1    testimony otherwise complies with the Federal Rules of Evidence to be admissible, but he may not

2    testify on the subject of cigarette advertising.  The attachments to the declaration offered in support

3    of defendants' motion demonstrate that these reports relate <u>only</u> to Professor Goldberg's testimony

4    on the subject of cigarette advertising, and plaintiffs have not refuted this evidence.  Since the Court

5    has concluded that Professor Goldberg may not offer testimony on the subject of cigarette

6    advertising, he may not testify regarding FDA reports on that subject.  Accordingly, the Court

7    GRANTS the motion.

8            **24.    Defendants' Motion in Limine to Prohibit Plaintiffs' Expert Witnesses from
                     Testifying to the Meaning of Defendants' Documents or to Defendants' Intent in**
9            **Preparing Documents**

10           Defendants assert that several of plaintiffs' expert witnesses may testify to the meaning of

11   defendants' documents or to defendants' intent in preparing those documents.  According to

12   defendants, these witnesses' standard practice consists of reading the documents to the jury and then

13   interpreting what the authors of the documents intended when they made the statements set forth

14   therein.  Defendants contend that these witnesses should be precluded from offering their opinions

15   on these matters because they do not concern "scientific, technical, or other specialized knowledge,"

16   Fed. R. Evid. 702, and instead are appropriate only for the province of the jury because

17   interpretation of statements is within the common experience of laypeople.

18           Plaintiffs respond as follows:

19           Many of the documents referred to in the Defendants' Motion my [sic] be exhibits relied
             upon by the expert in forming his opinion.  As such, the documents are controlled by
20           Federal Rule of Evidence 703.  They are admissible if the foundational requirements are
             met.  They are relevant as part of the basis for the expert's opinion.
21
             Rule 701 may also apply to some of the documents.  Some of the Plaintiffs' witnesses
22           have personal knowledge of some issues, and as such they are fact witnesses.  Testimony
             by these witnesses as to documents may very well be helpful to a clear understanding of
23           the witness' testimony or the determination of a fact in issue.  As such, the witness'
             testimony may be admissible under Rule 701.
24
             In any event the testimony of any expert on any document cannot be excluded without
25           a specific determination that that testimony is based on conjecture or speculation, or
             would confuse the jury.  As such, the testimony would have to be examined on a case
26           by case basis.

27           The Court agrees with plaintiffs that this matter should be determined at trial on a case-by-

28   case basis.  Defendants appear to assume that these witnesses' opinions will be offered only as

                                              26

United States District Court
For the Northern District of California

1    expert opinions. But in their opposition, plaintiffs suggest that the witnesses' opinions may be

2    offered as opinions of lay witnesses. Defendants' motion does not address whether the anticipated

3    opinions would be admissible under Rule 701. Accordingly, the Court DENIES the motion without

4    prejudice to its being renewed in whole or in part at trial if appropriate.

5        **25.    Defendant Philip Morris Inc.'s Motion in Limine to Exclude Any Evidence of or
          Reference to This Week – the Marlboro Story – Death in the West, or the**

6        **Related Interview Transcripts**

7        Defendant Philip Morris has moved to exclude any evidence of or reference to a 1970's

8    British television film entitled "Death in the West" or the related interview transcripts. The film

9    purports to be a documentary of real-life "cowboys" who smoked Marlboro cigarettes and

10   subsequently developed terminal illnesses. The Queen's Bench in England issued an injunction on

11   behalf of Philip Morris prohibiting the copying and distribution of the film.[3]

12       Philip Morris moves the Court to exclude such matter or any reference thereto on grounds of

13   hearsay, relevance, unfair prejudice, and the doctrine of comity. It has offered an authenticated

14   transcript of the San Francisco Superior Court's ruling on the record in Whiteley, et al. v. Raybestos-

15   Manhattan, Inc., et al., No. 303184 (Feb. 14, 2000), granting Philip Morris' motion to exclude

16   "Death in the West" on independently sufficient grounds of the doctrine of comity (based on the

17   British court's injunction) and California Evidence Code 352 (equivalent to Federal Rule of

18   Evidence 403). With regard to the comity ground, the Court noted that in issuing the injunction, the

19   British court "following a trial, held in substance that the film was created through the perpetuation

20   of a fraud upon Philip Morris." As for Evidence Code 352, the Superior Court noted, inter alia, that

21   there was no evidence that the plaintiff knew of or in any way relied on the film or its content, and it

22   concluded that showing the film would work undue prejudice on Philip Morris in light of the fraud

23   that was perpetrated.

24       Plaintiffs respond as follows:

25       The video contains statements and interviews of two PHILIP MORRIS executives,
         James Bowling and Helmut Wakeham. The question is really whether these statements

26       by very high up PHILIP MORRIS executives are false. I doubt the Defendants'

27   _____

28       [3] The Court GRANTS Philip Morris' request for judicial notice, which is unopposed by
     plaintiffs.

                                              27

attorneys are alleging that. The statements and interviews are admissible to show knowledge and intent of these executives, and therefore the interviews and statements are admissible as part of Plaintiffs' case, or as impeachment. Plaintiffs will edit the video accordingly with guidance from the Court.

From their opposition, it appears that plaintiffs contend that the statements of the two Philip Morris executives are admissible as admissions of a party-opponent pursuant to Federal Rule of Evidence 801(d)(2). Apparently, plaintiffs do not oppose the exclusion of all other matter in the film or transcripts of the film, nor do they address Philip Morris' relevancy, unfair prejudice, and comity arguments.

The Court finds the reasoning of the San Francisco Superior Court persuasive and plaintiffs' opposition effectively non-existent. Permitting the film to be shown in this country would frustrate the British court's injunction, thereby violating the doctrine of comity. In addition, plaintiffs have not explained why the executives' "knowledge and intent" are relevant, particularly given that their fraud claim no longer exists in this action. Finally, allowing the introduction of the executives' out-of-context and fraudulently-procured statements to be admitted in trial would be unfairly prejudicial to defendants. Accordingly, the Court GRANTS the motion.

**26.     Defendant Philip Morris Inc.'s Motion in Limine to Exclude Evidence Regarding Merrell Dow Pharmaceutical and Nicorette Chewing Gum**

Defendant Philip Morris seeks an order precluding plaintiffs from introducing any evidence regarding Merrell Dow Pharmaceutical and Nicorette Chewing Gum on grounds of relevancy (Rules 401 and 402) and the potential for unfair prejudice, confusion of the issues, misleading the jury, and undue delay (Rule 403). Defendants apparently anticipate that plaintiffs "will contend that, as a result of its communications with Philip Morris, Dow either ceased or reduced efforts to supply smoking cessation literature to physicians who prescribed Nicorette." Philip Morris contends that this evidence is irrelevant because the decedent never used the gum or any other cessation aid and that, as plaintiff Elaine Conley testified at her deposition, the decedent rejected the notion of using a cessation aid because "[h]e felt he could quit on his own." Philip Morris further contends that the evidence is excludable under Rule 403 because, inter alia, its only possible purpose would be to evoke an emotional bias against Philip Morris and to distract the jury from the relevant facts of this

1  case.

2       Plaintiffs respond:

3       Any statements by employees of PHILIP MORRIS or R.J. REYNOLDS concerning the
        subjects are party admissions coming in under Federal Rule 801(d)(2).  The relevancy
4       is established by the fact that PHILIP MORRIS prevented access by Frank White's
        physicians to the chewing gum.  This could very well be probative on [sic] the fact that
5       Frank White's physicians failed to prescribe the gum.

6       The Motion should be denied.

7       At the outset, the Court notes that plaintiffs' invocation of Rule 801 is irrelevant, given that

8  Philip Morris has not sought to exclude the evidence as hearsay.  Turning to relevancy and unfair

9  prejudice, it appears that plaintiffs contend that Philip Morris' alleged efforts to prevent marketing

10  of the chewing gum "could very well be probative" of the failure of the decedents' physicians to

11  prescribe the gum.  This contention is plainly speculative, and plaintiffs have offered no evidence in

12  support of this suggestion.  If plaintiffs referenced some evidence demonstrating that the decedent's

13  doctors would have prescribed the gum had they received more literature about it and that the

14  decedent would have been willing to use the gum had it been proscribed, perhaps plaintiffs' theory

15  could be credited.  But plaintiffs have not done so.  To the contrary, plaintiffs' evidence

16  demonstrates that the decedent was in fact not receptive to any cessation aid.

17       Moreover, plaintiffs do not explain how the alleged suppression of a product designed to aid

18  smokers to quit smoking is relevant to their products liability claim.  For example, if plaintiffs assail

19  defendants' alleged failure to warn consumers about the potential for disease and addiction at the

20  time the decedent started smoking in the 1930's, it is unclear how the availability of Nicorette gum

21  (or the lack thereof) five decades later would be relevant to that theory of products liability.

22       In addition, the Court agrees that the evidence is excludable under Rule 403.  A jury

23  considering such evidence might very well develop a dislike of defendants based on what they

24  perceive to have been defendants' actions regarding Nicorette gum and allow this dislike to

25  influence their consideration of all the evidence even though the evidence of communications

26  between Philip Morris and Merrell Dow might be irrelevant to the elements of plaintiffs' product

27  liability claim.

28       Accordingly, the Court GRANTS the motion.

29

**27.    Defendants' Motion in Limine to Exclude Trial Exhibits Bearing Extraneous Markings**

Defendants contend that many of plaintiffs' exhibits bear extraneous markings, including exhibit stickers from other highly publicized cases, production stamps from other tobacco cases, confidentiality stamps from other tobacco cases, and marginalia written by plaintiffs' counsel in other tobacco cases.  Defendants have attached copies of plaintiffs' exhibits to a supporting declaration that appear to bear such extraneous markings.  Defendants contend that such documents should be excluded on grounds of unfairness (Rule 403) and authenticity (Rules 901 and 1003) and that plaintiffs be required to use "clean" copies of such documents as found on defendants' public Internet websites.

In their opposition, plaintiffs do not address the issue of whether the documents are unfairly prejudicial.  Rather, they state:

> The exhibits are presented as they have been pulled from Defendants' and other web sites.  Plaintiffs at this time have not attempted to edit or mutilate the documents as they have been presented.  If the Court indicates the markings are prejudicial, or confusing, Plaintiffs will gladly edit the documents to exclude such markings.  If Defendants can produce a web site that has "clean" copies, Plaintiffs will gladly present documents from that site.

Having reviewed the copies of plaintiffs' exhibits, the Court does not find the extraneous markings to be unfairly prejudicial or to have the potential for confusing the jury.  As for authenticity, plaintiffs have represented that these documents have been obtained directly from defendants' websites and from others' websites.  If plaintiffs introduce evidence that these documents were in fact so obtained, they should survive any authenticity objection.  If, however, no witness testifies that the documents were obtained from the Internet, then defendants are entitled to object on grounds of authenticity.  Accordingly, the Court DENIES the motion without prejudice to its being renewed at trial in the event that plaintiffs do not present sufficient foundation that the documents were obtained from the relevant websites.

**28.    Defendants' Motion for Relief from Plaintiffs' Non-compliance with Pre-trial Order Regarding Witness Lists Pursuant to Rule 16(f) Fed. R. Civ. P.**

Due to plaintiffs' failure to timely furnish defendants with a witness list that complies with

United States District Court

For the Northern District of California

the Court's Order for Pretrial Preparation, defendants have moved the Court to preclude plaintiffs from introducing certain witnesses at trial as a sanction under Federal Rule of Civil Procedure 16(f). Although the Court is sympathetic to defendants' concerns, the Court believes that much of the prejudice resulting from plaintiffs' noncompliance has been remedied by plaintiffs' voluntary withdrawal of certain witnesses, the Courts' adjudication of certain motions in this Order, and plaintiffs' filing and serving their Amended Witness List on November 15, 2002, pursuant to Court order. Accordingly, the Court DENIES the motion.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

A.   The following motions are STRICKEN from the record:

1.   Plaintiffs' Motion in Limine to Limit Joan Hoff's Testimony to Information Actually Heard and Relied upon by Frank White [Docket No. 361];

2.   Plaintiff's Motion in Limine to Exclude Evidence and Comment on Frank White's Bankruptcies, Weldon White's Bankruptcy, and Elaine Conley's Judgment Against Wayne White [Docket No. 370]; and

3.   Plaintiffs' Motion to Exclude Testimony of David Townsend [Docket No. 373].

B.   The following motions that were indicated as "at issue," either in whole or in part, in the Joint Grid of Motions are adjudicated as follows:

1.   Defendants' Motion in Limine to Exclude Certain Evidence and Argument Regarding Wrongful Death Damages [Docket No. 284] is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE, such that the motion is GRANTED with respect to defendants' contention that plaintiffs may not introduce evidence relating to damages for grief and sorrow, and the motion is DENIED with respect to defendants' contentions about plaintiffs' ability to introduce evidence relating to the other categories of injury identified in the motion WITHOUT PREJUDICE to the motion's being renewed at trial if appropriate in light of the relevant discussion supra;

2.   Defendants' Motion in Limine to Preclude Testimony by Ray Goldstein, Dia Hardin and "Various Custodians of Records of Defendants" [Docket No. 272] is GRANTED IN PART AND DENIED IN PART, such that Ray Goldstein is precluded from testifying at trial, but the "Various Custodians" are not so precluded;

3.   Defendants' Motion in Limine to Preclude Dr. Farone from Testifying as an Expert Witness [Docket No. 280] is GRANTED;

United States District Court
For the Northern District of California

31

4.   Defendants' Motion in Limine to Limit Dr. Feingold's Testimony to Pulmonology and Internal Medicine [Docket No. 274] is GRANTED;

5.   Defendants' Motion in Limine to Preclude the Testimony of Professor Marvin E. Goldberg [Docket No. 276] is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE, such that the motion is GRANTED with respect to Professor Goldberg's offering testimony on the subject of cigarette advertising, and the motion is DENIED with respect to Professor Goldberg's offering testimony on the subject of warnings (or the lack thereof) on cigarette packaging WITHOUT PREJUDICE to the motion's being renewed at trial if appropriate in light of the relevant discussion supra;

6.   Defendants' Motion in Limine to Exclude Evidence Relating to Preempted Claims [Docket No. 216] is GRANTED IN PART AND DENIED IN PART, such that plaintiffs may not introduce evidence relating to their post-1969 design defect claim under the consumer expectations test, but plaintiffs may introduce evidence relating to their post-1969 design defect claim under the risk-benefit test;

7.   Defendants' Motion in Limine to Exclude Any Evidence Regarding the Acts, Documents, and Testimony of Non-party Tobacco Companies and Industry Trade Associations [Docket No. 218] is DENIED WITHOUT PREJUDICE to its being renewed at trial if appropriate in light of the relevant discussion supra;

8.   Defendants' Motion in Limine to Preclude Evidence or Argument About Diseases Associated with Smoking Other than the Diseases at Issue in This Case [Docket No. 224] is DENIED WITHOUT PREJUDICE to its being renewed at trial if appropriate in light of the relevant discussion supra;

9.   Defendants' Motion in Limine to Exclude Evidence of and References to Tobacco Industry Advocacy Efforts, Government Petitioning Activities, and Testimony at Hearings Before Any Committee or Subcommittee of Any Government Agency or Legislative Body [Docket No. 226] is GRANTED IN PART AND DENIED IN PART, such that plaintiffs are precluded from offering such evidence in their case-in-chief, but, if appropriate as explained supra, they may introduce such evidence in rebuttal or for impeachment purposes;

10.  Defendants' Motion in Limine to Exclude All References to Industry Statements or Acts Never Heard or Relied upon by Decedent [Docket No. 229] is DENIED;

11.  Defendants' Motion in Limine to Exclude All Evidence of Tobacco Company Conduct Immunized by Civil Code Section 1714.45 [Docket No. 234] is GRANTED IN PART AND DENIED IN PART, such that plaintiffs are precluded from offering such evidence in their case-in-chief, but, if appropriate as explained supra, they may introduce such evidence in rebuttal or for impeachment purposes;

12.  Defendants' Motion in Limine to Exclude All Evidence of, or References Pertaining to, Their Use of Ammonia or Ammonia Compounds [Docket No. 237] is GRANTED;

13.  Defendants' Omnibus Motion in Limine to Exclude Irrelevant and Prejudicial Matters [Docket No. 240] is GRANTED IN PART, such that plaintiffs and their witnesses are precluded from using the phrase "Big Tobacco" in all circumstances, and plaintiffs and their witnesses may use the phrase "Tobacco Cartel" in closing arguments and, then, only if competent evidence has been introduced tending to show that a cartel among tobacco companies exists or existed;

14.     Defendants' Motion in Limine to Exclude Evidence Regarding Risk-Benefits of Cigarettes [Docket No. 243] is DENIED;

15.     Defendants' Motion in Limine to Preclude Any Reference to or Evidence of the FDA's Proposed Rule-makings [Docket No. 249] is GRANTED;

16.     Defendants' Motion in Limine to Prohibit Plaintiffs' Expert Witnesses from Testifying to the Meaning of Defendants' Documents or to Defendants' Intent in Preparing Documents [Docket No. 254] is DENIED WITHOUT PREJUDICE to its being renewed at trial if appropriate in light of the relevant discussion <u>supra</u>;

17.     Defendant Philip Morris Inc.'s Motion in Limine to Exclude Any Evidence of or Reference to <u>This Week – the Marlboro Story – Death in the West</u>, or the Related Interview Transcripts [Docket No. 255] is GRANTED;

18.     Defendant Philip Morris Inc.'s Motion in Limine to Exclude Evidence Regarding Merrell Dow Pharmaceutical and Nicorette Chewing Gum [Docket No. 258] is GRANTED;

19.     Defendants' Motion in Limine to Exclude Trial Exhibits Bearing Extraneous Markings [Docket No. 263] is DENIED WITHOUT PREJUDICE to its being renewed at trial if appropriate in light of the relevant discussion <u>supra</u>; and

20.     Defendants' Motion for Relief from Plaintiffs' Non-compliance with Pre-trial Order Regarding Witness Lists Pursuant to Rule 16(f) Fed. R. Civ. P. [Docket No. 268] is DENIED.

C.     All motions listed as "unopposed" or "agreed," in the Joint Grid of Motions [Docket No. 377], if not stricken by this Order, are GRANTED.

IT IS SO ORDERED.

Dated: December 2, 2002

SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
For the Northern District of California

33