647

```
 1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF SOUTH CAROLINA
 2                  CHARLESTON DIVISION

 3                        - - -

 4   SUZANNE Q. LITTLE,           :    CIVIL ACTION
     INDIVIDUALLY AND AS PERSONAL      NO.  2:98-1879-23
 5   REPRESENTATIVE OF THE ESTATE :
     OF SAMUEL MARTIN LITTLE,
 6   DECEASED,                    :

 7        PLAINTIFF,              :

 8     VS.                        :    CHARLESTON, SOUTH CAROLINA
                                       MONDAY, JANUARY 22, 2001
 9   BROWN & WILLIAMSON TOBACCO   :    9:43 A.M.
     CORPORATION, ETC., AND R.J.
10   REYNOLDS TOBACCO COMPANY,    :

11        DEFENDANTS.             :

12                        - - -

13        TRANSCRIPT OF JURY TRIAL - VOLUME V
          BEFORE THE HONORABLE P. MICHAEL DUFFY
14     UNITED STATES DISTRICT JUDGE, AND A JURY.

15   APPEARANCES:

16   FOR THE PLAINTIFF:      NESS, MOTLEY, LOADHOLT, RICHARDSON &
                                POOLE
17                           BY:  CHARLES W. PATRICK, JR., ESQ.
                                  JERRY HUDSON EVANS, ESQ.
18                                CINDY SOLOMON, ESQ.
                             POST OFFICE BOX 1792
19                           MT. PLEASANT, SOUTH CAROLINA  29465

20   FOR THE DEFENDANT       NEXSEN, PRUET, JACOBS, POLLARD &
     BROWN & WILLIAMSON:         ROBINSON
21                           BY:  PAUL A. DOMINICK, ESQ.
                             POST OFFICE BOX 486
22                           CHARLESTON, SOUTH CAROLINA   29402
                                  AND
23                           KING & SPALDING
                             BY:  S. STEWART HASKINS, ESQ.
24                                GORDON A. SMITH, ESQ.
                                  WILLIAM E. HOFFMAN, JR., ESQ.
25                           191 PEACHTREE STREET, N.E.
                             ATLANTA, GEORGIA  30303
```

A. WILLIAM ROBERTS, JR., & ASSOCIATES

LITTLE v BROWN & WILLIAMSON, et al-TRANSCRIPT OF JURY TRIAL, VOL IV-1/22/01

### 755

```
 1  YOU HAVE TESTIFIED FOR ME OR MY FIRM IN OTHER AREAS OF
 2  LITIGATION REGARDING TOBACCO, HAVE YOU NOT?
 3  A.  YES, SIR, I HAVE.
 4  Q.  AND YOU HAVE TESTIFIED ON OUR BEHALF OR MY FIRM'S
 5  BEHALF IN ASBESTOS LITIGATION, AS WELL, CORRECT?
 6  A.  CORRECT.
 7  Q.  AND, IN FACT, WE'VE KNOWN EACH OTHER FOR SOME TIME NOW?
 8  A.  YES, SIR.
 9  Q.  AND THE FIRST TIME WE MET, WAS I ASKING YOU THESE
10  QUESTIONS ON DIRECT EXAMINATION, OR WAS I SITTING OVER THERE
11  LIKE MS. PARKER IS READY TO DO CROSS-EXAMINATION?
12  A.  THE FIRST TIME I RECALL -- I DON'T KNOW IF I CAN SAY
13  THE NAME YET OR NOT, OF A CERTAIN TRIAL THAT I REMEMBER THE
14  NAME OF, THAT I THINK YOU WERE ON THE OPPOSITE SIDE FROM ME.
15  Q.  SO YOU HAVE TESTIFIED AGAINST CLIENTS OF MINE, AND
16  YOU'VE TESTIFIED ON BEHALF OF CLIENTS OF MINE?
17  A.  YES, I HAVE.
18  Q.  AND YOU'VE TESTIFIED FOR DEFENDANTS IN ASBESTOS
19  LITIGATION, AND YOU'VE TESTIFIED FOR PLAINTIFFS IN ASBESTOS
20  LITIGATION?
21  A.  CORRECT.
22  Q.  AND WOULD IT BE FAIR TO SAY THAT WHEN YOU DIAGNOSE
23  CANCER, YOU CALL THAT DIAGNOSIS AS YOU SEE IT?
24  A.  YES.
25  Q.  AND I WAS THE LAWYER THAT ASKED YOU TO GET INVOLVED IN
```

### 756

```
 1  THIS CASE AND COME TO CHARLESTON TO TESTIFY, CORRECT?
 2  A.  YES, SIR.
 3  Q.  AND YOU EXPECT TO BE COMPENSATED FOR THAT; ISN'T THAT
 4  CORRECT?
 5  A.  YES, SIR.
 6        MR. PATRICK: YOUR HONOR, THOSE ARE ALL THE
 7  QUESTIONS I HAVE.  THANK YOU, DR. ROGGLI.
 8        THE COURT:  MAESTRO, THAT WAS A MASTERFUL
 9  ORCHESTRATION OF FINISHING RIGHT AT LUNCHTIME.
10        LADIES AND GENTLEMEN, WE'LL TAKE OUR LUNCH BREAK AT
11  THIS TIME.  PLEASE DO NOT DISCUSS THE CASE, AND WE'LL SEE YOU
12  BACK AT 2:30.
13        HOLD ONE SECOND.  BEFORE YOU LEAVE, LAWYERS ARE
14  TOLD TO BE VERY CAREFUL ABOUT ANY JUROR CONTACT.  AND ALL OF
15  THE LAWYERS THAT TRY CASES ARE VERY SCRUPULOUS ABOUT NOT
16  TALKING TO ANY JURORS.  AS YOU'VE HEARD ME SAY, TELL ME IF
17  ANYBODY TRIES TO TALK TO YOU ABOUT THE CASE.  AND LAWYERS
18  TRYING TO BE AS ETHICAL AS POSSIBLE, IF THEY SEE YOU COMING
19  AND GOING ON THE STREET WON'T EVEN SPEAK TO YOU.  THEY DON'T
20  WANT YOU TO THINK THEY ARE DOING ANYTHING IMPROPER.  THEY ARE
21  NOT BEING UNFRIENDLY, AND THEY MAY RECOGNIZE YOU BUT JUST TO
22  PRECLUDE ANY PROBLEM, THEY MAY NOT SPEAK TO YOU.  SO IF
23  YOU'VE SEEN ANY OF THE LAWYERS IN THIS TRIAL WALKING ABOUT
24  TOWN AND THEY DIDN'T SPEAK TO YOU, IT ISN'T BECAUSE THEY
25  DIDN'T WANT TO; THEY WERE TRYING TO DO THE PROPER THING.
```

### 757

```
 1  THANK YOU VERY MUCH.
 2        BY THE WAY, I'VE TOLD THEM IT'S OKAY TO SAY HELLO.
 3        (JURY OUT AT 12:52 P.M.)
 4        THE COURT:  THANK YOU.  PLEASE BE SEATED.
 5        DOCTOR, YOU CAN STEP DOWN, IF YOU'D LIKE.  YOU HAD
 6  SOMETHING YOU WANTED ME TO LOOK AT OVER LUNCH.  HAVE YOU
 7  HANDED THAT UP, YET?
 8        MR. EVANS:  YES, SIR, YOUR HONOR, I BELIEVE YOU HAVE
 9  THE OBJECTIONS AND THE TRANSCRIPT OF THE CAROL HENRY
10  DEPOSITION.
11        THE COURT:  OKAY.  ANYTHING ELSE?  SEE YOU AT 2:30.
12  THANK YOU.
13        MS. PARKER:  THANK YOU, YOUR HONOR.
14        (AT 12:53 O'CLOCK, P.M., THE FURTHER TRIAL OF THIS
15  CAUSE WAS RECESSED UNTIL 2:30 O'CLOCK, P.M., OF THE SAME DAY,
16  TO-WIT:  MONDAY, JANUARY 22, 2001.)
17                  - - -
```

### 758

```
 1              MONDAY AFTERNOON SESSION,
 2                 JANUARY 22, 2001.
 3                      - - -
 4        (2:35 P.M. -- JURY OUT.)
 5        THE COURT:  THANK YOU VERY MUCH.  PLEASE BE SEATED.
 6  PLAINTIFF READY?
 7        MR. PATRICK:  YES, YOUR HONOR.
 8        THE COURT:  DEFENDANT READY?
 9        MS. PARKER:  YES, YOUR HONOR.
10        THE COURT:  ALL RIGHT.  BEFORE I CALL THE JURY BACK
11  IN, THERE ARE A COUPLE OF THINGS I WANT TO MENTION, AND ONE
12  OF WHICH IS THE THINGS Y'ALL ASKED ME TO RULE ON CONCERNING
13  CAROL J. HENRY, AND I'LL DO THAT NOW RATHER THAN ASK THE JURY
14  TO LEAVE LATER, ALTHOUGH IT MIGHT NOT COME UP UNTIL LATER IN
15  THE AFTERNOON.  AND IN DOING THAT, DR. FARONE WAS HERE FOR A
16  WHILE, AND I SEE HE MAY HAVE LEFT.  I WANTED TO ADD SOME
17  COMMENTS TO WHAT I SAID EARLIER THIS MORNING AS TO HIS
18  TESTIMONY, AND WHY I LIMITED IT THE WAY I DID.
19        AND I THINK SOMETIMES IT MUST BE DIFFICULT FOR
20  SCIENTISTS TO UNDERSTAND WHY COURTS REASON THE WAY THEY DO
21  AND WHY THEIR SCIENTIFIC OPINIONS DON'T MEET THE LEGAL
22  STANDARDS.
23        BUT JUST TO BE MORE SPECIFIC ON THAT, MY CONCERN
24  ABOUT THE SAFER ALTERNATIVE, IF YOU WILL, CIGARETTES
25  CONCERNING HIS TESTIMONY PARTICULARLY WAS THAT ALL OF THE
```

LITTLE v BROWN & WILLIAMSON, et al-TRANSCRIPT OF JURY TRIAL, VOL IV-1/22/01

**Page 759**

1. TECHNIQUES THAT HE MENTIONED FAILED TO QUANTIFY ANYTHING AND
2. FAILED TO GIVE ME ANY SCIENTIFIC TESTING FOR MOST OF IT.
3. WHETHER ANYONE CAN QUANTIFY HOW THE USE OF ANY OF HIS
4. TECHNIQUES WOULD AFFECT THE SEVERITY OF MR. LITTLE'S
5. FORESEEABLE INJURIES, THERE IS NOTHING IN THE RECORD AS TO
6. THAT. WHETHER THE TECHNIQUES WOULD HAVE BEEN FINANCIALLY
7. FEASIBLE, WHETHER THE END RESULT WOULD HAVE BEEN COMMERCIALLY
8. VIABLE. AND I THINK ABOUT THAT WOULD BE, NICOTINE --
9. WHATEVER THAT INHALER WAS, I'VE FORGOTTEN HOW HE DESCRIBED
10. IT, PARTICULARLY THAT, AND WHETHER THE, QUOTE, SAFER
11. ALTERNATIVE WOULD, IN FACT, RETAIN ITS DESIRABILITY. WOULD
12. ANYBODY RECOGNIZE IT AS A CIGARETTE FROM WHICH THEY GOT ANY
13. SATISFACTION AND WOULD PAY ANY MONEY TO SMOKE IT. AND IF ANY
14. THREE OR FOUR OF THOSE WERE PRESENT IN ONE PERSPECTIVE, THEN
15. MAYBE I WOULD HAVE HAD SOME COMFORT LEVEL IN ALLOWING HIM TO
16. TESTIFY ABOUT THOSE THINGS. BUT IN THIS SITUATION, ALL OF
17. THOSE THINGS IN PERSPECTIVE AND WHEN I LOOKED AT HIS
18. TESTIMONY, IT SEEMED TO ME THE TOTALITY OF WHAT HE WAS
19. PROFFERING WAS TOO SPECULATIVE TO FORM THE BASIS OF
20. SCIENTIFIC EVIDENCE SO SOMEONE COULD OPINE IN A WAY THE JURY
21. COULD RELY ON.
22. I WAS HOPEFUL HE WOULD BE HERE WHEN I SAID THAT
23. BECAUSE I FELT THAT I OWED HIM THAT, BUT IT'S IN THE RECORD.
24. NOW, AS TO THE PROFFER TESTIMONY OF CAROL HENRY,
25. I'M GOING TO ALLOW THE TESTIMONY WITH AN INSTRUCTION TO THE

**Page 760**

1. JURY AND WITH A REDACTION ON ONE OF THE DOCUMENTS. AND I'LL
2. TELL YOU WHAT THAT IS AS SOON AS I CAN FIND IT.
3. THE MARCH 12TH, 1983, DRAFT DOCUMENT DEALING WITH
4. THE MEETING WITH DR. BOB DIMARCO IN WINSTON-SALEM, THIS IS
5. DOCUMENT 37350, I'M GOING TO REDACT THE LAST PARAGRAPH ON THE
6. FIRST PAGE STARTING WITH I GAVE D.D. SOME BACKGROUND
7. INFORMATION ABOUT THE PAPER GOING OVER TO THE END OF THE
8. PARAGRAPH ON THE NEXT PAGE WHERE IT STATES: SHARE OF MARKET,
9. GERMANY'S SHARE OF THE MARKET DID NOT HAVE ENOUGH CAUSE TO
10. REMEDY THE SITUATION.
11. IN MY OPINION, THAT IS SO PREJUDICIAL THAT ANY
12. PROBATIVE VALUE IS OUTWEIGHED BY THE PREJUDICIAL. SO I'M
13. GOING TO STRIKE THAT UNDER RULE 403. THE REST OF IT MAY COME
14. IN, AND I INTEND TO GIVE THE JURY THE INSTRUCTION THAT IT'S
15. NOT ADMITTED AS EVIDENCE OF ANY FRAUDULENT CONCEALMENT OR ANY
16. FAILURE TO WARN ASSOCIATED WITH SMOKING, AND IT IS TO BE
17. CONSIDERED ONLY IN CONJUNCTION WITH PLAINTIFF'S CLAIM THAT
18. THE DEFENDANTS WERE NEGLIGENT IN THEIR TESTING AND RESEARCH
19. PROCEDURES.
20. YES, SIR.
21. MR. BARINGER: YOUR HONOR, VERY BRIEFLY.
22. I DID NOT HAVE AN OPPORTUNITY TO SEE PLAINTIFF'S
23. RESPONSE. THIS IS PURELY FOR THE RECORD, AND I'M NOT TRYING
24. TO TRY YOUR PATIENCE ON THIS.
25. THE COURT: I'M VERY PATIENT.

**Page 761**

1. GO AHEAD.
2. MR. BARINGER: I DID NOT SEE PLAINTIFF'S RESPONSE TO
3. OUR OBJECTIONS UNTIL THE LUNCH BREAK, AND THEY MADE AN
4. ARGUMENT IN THERE THAT THEY ANTICIPATE OR THEY BELIEVE THE
5. RELEVANCE OF THE CTR TESTIMONY FROM MS. HENRY RELATES TO OUR
6. DEFENSE ON OUR RESEARCH AND TESTING PRACTICES. AND THEY SAY
7. WE ARE GOING TO OFFER CTR AS OUR DEFENSE ON THAT, AND THAT
8. COULD NOT BE FARTHER FROM THE TRUTH. FROM THE VERY BEGINNING
9. OF THE ORIGIN OF CTR, THE COMPANIES TOLD THE JUSTICE
10. DEPARTMENT THAT CTR WOULD NOT BECAUSE OF ANTITRUST CONCERNS
11. ENGAGE IN ANY COMMERCIAL OR PRODUCT DEVELOPMENT-RELATED
12. RESEARCH. AND NONE OF THE COMPANIES RELIED ON CTR, AND
13. CERTAINLY REYNOLDS AND BROWN & WILLIAMSON AS SUCCESSOR TO
14. AMERICAN DO NOT IN THIS CASE RELY ON CTR'S SMOKING AND HEALTH
15. RESEARCH AS IT RELATES TO DESIGN RESEARCH. AND I THINK IT'S
16. A CRITICAL DISTINCTION, AND WE DON'T RAISE THAT, AND IT'S
17. SORT OF A RED HERRING THAT THEY'VE THROWN UP THAT WE HAVE TO
18. SHOOT AT THAT SOMEHOW CTR RELATES TO OUR DEFENSE OF A
19. NEGLIGENT DESIGN CLAIM. AND IT'S ABSOLUTELY IRRELEVANT AND
20. WE'RE NOT GOING TO RAISE IT AT ALL.
21. BY INJECTING CTR INTO IT, WE INJECT AN ISSUE ABOUT
22. WHAT THE RELEVANCE OF THAT RESEARCH WAS WHEN THERE IS NO
23. CLAIM RELATED TO THOSE AREAS.
24. SO, FOR THE RECORD, I WOULD WANT OUR OBJECTION
25. PRESERVED THAT THAT IS NOT A DEFENSE WE ARE RAISING IN THIS

**Page 762**

1. CASE, AND, THEREFORE, THE CTR ISSUE IS IRRELEVANT BECAUSE THE
2. ONLY ISSUE IT PERTAINS TO IS SMOKING AND HEALTH AS IT RELATES
3. TO CAUSATION OF DISEASE AND THAT IS NOT AN ISSUE IN THIS
4. CASE. THERE IS NO FAILURE TO WARN, THERE IS NO SUPPRESSION,
5. NO SCIENTIFIC MANIPULATION CLAIM.
6. SECOND, WITH RESPECT TO THE DIMARCO DOCUMENT, I
7. DIDN'T ANTICIPATE THAT WAS GOING TO BE INTRODUCED IN
8. CONJUNCTION WITH THE HENRY DEPOSITION. THAT IS A PRIVILEGED
9. DOCUMENT. THE AUTHOR OF THAT WAS AN RJR OUTSIDE COUNSEL, AND
10. I WOULD OBJECT TO ITS INTRODUCTION AT ALL ON THE GROUNDS THAT
11. IT IS PRIVILEGED.
12. THE COURT: I DIDN'T SEE ANY OF THAT IN YOUR MEMO.
13. MR. BARINGER: I DIDN'T KNOW THAT THE DOCUMENT WAS
14. ATTACHED OR RELATED TO THE HENRY DEPOSITION, SO I DID NOT
15. INCLUDE THAT. AND THAT MAY BE MY OVERSIGHT, AND I APOLOGIZE.
16. THE COURT: I JUST WANT TO UNDERSTAND CLEARLY FOR
17. THE RECORD, THAT I HAD ADDRESSED WHAT I PERCEIVED YOUR
18. OBJECTIONS TO BE.
19. LET ME HEAR FROM MR. PATRICK.
20. MR. PATRICK: YOUR HONOR, AS FAR AS THE DEMARCO
21. DOCUMENT IS CONCERNED, WE DO INTEND TO OFFER IT. THERE MAY
22. BE SOME MISUNDERSTANDING REGARDING ITS RELATIONSHIP TO THE
23. HENRY DEPOSITION. WE WANT TO OFFER IT, BUT THEY DON'T
24. NECESSARILY GO HAND IN HAND. BUT WE DO NEVERTHELESS --
25. THE COURT: I'VE NOT SEEN OR READ THE TRANSCRIPT OF