[ARGUED OCTOBER 14, 2008]

Case Nos. 06-5267, 06-5268, 06-5269, 06-5270,
06-5271, 06-5272, 06-5332, 06-5367, 07-5102, 07-5103
(Consolidated)

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee and Cross-Appellant,*

and

TOBACCO-FREE KIDS ACTION FUND, et al.,

*Intervenors,*

v.

PHILIP MORRIS USA INC. (f/k/a Philip Morris, Inc.), et al.,

*Defendants-Appellants and Cross-Appellees.*

Appeal From The Judgment Of The United States District Court
For The District Of Columbia

# PETITION FOR REHEARING OR REHEARING EN BANC OF
# DEFENDANT-APPELLANT PHILIP MORRIS USA INC.

| | |
|---|---|
| James M. Rosenthal | Miguel A. Estrada |
| Robert A. McCarter | Amir C. Tayrani |
| ARNOLD & PORTER LLP | GIBSON, DUNN & CRUTCHER LLP |
| 555 Twelfth Street, N.W. | 1050 Connecticut Avenue, N.W. |
| Washington, D.C. 20004 | Washington, D.C. 20036 |
| Telephone: (202) 942-5000 | Telephone: (202) 955-8257 |
| Facsimile: (202) 942-5999 | Facsimile: (202) 530-9616 |

*Counsel for Philip Morris USA Inc.*

Accordingly, the Panel's opinion should be vacated and the case remanded for the district court to reconsider its jurisdiction under RICO. *See Sys. Fed'n No. 91 Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961).[5]

## II. THE PANEL'S REFUSAL TO UNDERTAKE AN INDEPENDENT REVIEW OF THE DISTRICT COURT'S FACTUAL FINDINGS EXACERBATES AN EXISTING INTRACIRCUIT CONFLICT AND DISREGARDS FIRST AMENDMENT RIGHTS.

"[I]n cases raising First Amendment issues," an "appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Bose Corp.*, 466 U.S. at 499 (internal quotation marks omitted). The Panel failed to perform this constitutionally mandated "independent examination"—even though Defendants have argued throughout this case that the First Amendment forecloses the Government's fraud allegations. By applying the "highly deferential" clearly erroneous standard of review (slip op. 45), the Panel compounded an existing conflict in this Court's precedent—as well as an existing

---

[Footnote continued from previous page]

point to CORESTA as evidence of possible future joint activity by Defendants until its reply brief in support of its cross-appeal.

[5] At a minimum, the district court's injunctions should be reformulated in light of significant areas of conflict with the FDA Act. For example, while the district court permanently enjoined the use of descriptors, the Act permits their use with products that the FDA finds "significantly reduce harm." § 911(g)(1). An injunction restraining future violations cannot survive "a change in the law" that establishes legal standards different from those imposed by the injunction. *Am. Horse Protection Ass'n v. Watt*, 694 F.2d 1310, 1316 (D.C. Cir. 1982).

8

conflict among the circuits—disregarded important First Amendment rights, and upheld findings that could not have survived independent appellate review.

The Panel applied this "highly deferential" standard of review even though the great majority of the findings at issue pertain to statements that Defendants made as part of the public-health debate about smoking, including many statements made before legislative or regulatory bodies. These statements fall squarely within the First Amendment's Speech and Petition Clauses, which provide constitutional protection for "debate on public issues" (*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)) and efforts to influence governmental policy. *Roth v. United States*, 354 U.S. 476, 484 (1957). Indeed, it goes without saying that the "First Amendment bars the state from imposing upon its citizens an authoritative vision of truth." *Herbert v. Lando*, 441 U.S. 153, 184-85 (1979). Yet, the district court concluded (and the Panel affirmed) that Defendants' public statements that directly addressed the "scientific consensus" were knowingly "fraudulent." The public-health community's adoption of an "official," orthodox position on the health risks of smoking did not, however, extinguish Defendants' constitutional right to argue a contrary point of view to the public.[6]

---

[6] Defendants' public statements about smoking and health were also protected under the *Noerr-Pennington* doctrine. The Panel's conclusion (at 40) that *Noerr-Pennington* "does not protect deliberately false or misleading statements" conflicts with the decisions of four other circuits. *See, e.g., Davric Me. Corp. v. Rancourt*,

9

Because the Government's novel RICO theory rested on allegedly fraudulent statements that Defendants made as part of a public-health debate, the First Amendment and *Bose* self-evidently require independent review of the district court's findings. Indeed, even setting aside the existing conflicts regarding independent review in *false advertising* cases, independent review is unquestionably required of the findings that pertain to statements that Defendants made as part of the public-health debate on smoking, a public-policy matter that rests "[a]t the core of the First Amendment." *Brown v. Hartlage*, 456 U.S. 45, 52 (1982).

A. Where the First Amendment is implicated, appellate courts are "not bound by the conclusions of lower courts, but will re-examine the evidentiary basis on which those conclusions are founded." *Bose*, 466 U.S. at 509-10 (internal quotation marks omitted). This independent appellate review is constitutionally required because the "stakes . . . are too great in cases implicating the freedom of speech to entrust determinations of falsity . . . finally to the judgment of the trier of fact." *Lebron*, 749 F.2d at 897 n.9 (internal quotation marks omitted; first altera-

---

[Footnote continued from previous page]

216 F.3d 143, 147 (1st Cir. 2000); *Armstrong Surgical Ctr., Inc. v. Armstrong County Mem'l Hosp.*, 185 F.3d 154, 160 (3d Cir. 1999); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972) ("[m]isrepresentations [are] condoned in the political arena"). Moreover, absent the deferentially reviewed fraud findings, the statements in Defendants' product advertisements would have fallen within the scope of the First Amendment's protections for commercial speech. *See In re R.M.J.*, 455 U.S. 191, 203 (1982).

tion in original). And the "stakes" are even "great[er]" where, as here, the findings at issue are also the predicate for enjoining protected speech in the future.

The Supreme Court has repeatedly applied this requirement of independent appellate review where the question whether a defendant's speech was false or misleading was determinative of First Amendment protection. In *Peel v. Attorney Registration & Disciplinary Commission*, 496 U.S. 91 (1990), the Court undertook de novo review of the Illinois Supreme Court's finding that it was misleading for an attorney to state that he was a certified civil trial specialist. *Id.* at 108 (plurality op. of Stevens, J.); *id.* at 111-12 (Marshall, J., concurring in the judgment). Similarly, in *Ibanez v. Florida Department of Business & Professional Regulation*, 512 U.S. 136 (1994), the Court reviewed without deference a state agency's finding that an attorney had engaged in misleading advertising by identifying herself as a certified public accountant and financial planner. *Id.* at 143-49; *see also Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 621 (2003).

Although *Bose* would seem to settle the issue, even prior to the Panel's decision, this Court had reached conflicting conclusions about whether *Bose* and its progeny require independent appellate review in deceptive advertising cases. In *Lebron*, this Court independently reviewed a district court's finding that an advertisement was deceptive. After "[c]arefully inspecting the poster for [itself]," the Court found that the advertisement in fact was not misleading. 749 F.2d at 898.

11

Only a year later, however, the Court held—in direct conflict with *Lebron*—that "*Bose* does not change the standard of review in deceptive advertising cases" and therefore reviewed for clear error a district court's conclusion that an advertisement was deceptive. *Brown & Williamson*, 778 F.2d at 41 n.3; *see also Novartis Corp. v. FTC*, 223 F.3d 783, 787 (D.C. Cir. 2000) (same).[7]

B.  The Panel exacerbated these existing intracircuit and intercircuit conflicts when it declined to perform an independent examination of the district court's factual findings regarding the allegedly fraudulent nature of Defendants' speech. Slip op. 45, 48. In so doing, it extended the conflict between *Lebron* and *Brown & Williamson* beyond the deceptive advertising context to a case where the vast majority of Defendants' challenged speech represented constitutionally protected participation in a public-health debate. Whatever the applicability of *Bose* to commercial advertising, there is no question that it applies to such "core" First Amendment speech. *Brown*, 456 U.S. at 52.

If the Panel had undertaken the required de novo review, it would have been required to vacate many of the district court's most important findings. Indeed, the

---

[7] In accordance with *Bose* (but in conflict with *Brown & Williamson* and *Novartis*), other circuits undertake independent review of factual findings when determining whether constitutionally protected speech is false or misleading. *See, e.g., Byrum v. Landreth*, 566 F.3d 442, 448 n.5 (5th Cir. 2009); *Falanga v. State Bar of Ga.*, 150 F.3d 1333, 1347 (11th Cir. 1998); *Revo v. Disciplinary Bd.*, 106 F.3d 929, 932 (10th Cir. 1997).

Panel acknowledged as much by conceding that it may have reached a different conclusion from the district court if it had independently examined the record. *See, e.g.*, slip op. 61.

While length restrictions preclude an exhaustive examination of the issues on which the Panel may have come out differently under an independent factual review, one example is the district court's finding that the use of "low tar" descriptors is fraudulent because smokers purportedly compensate completely for the lower nicotine yields of those cigarettes through subconscious smoking behavior. Slip op. 44-45. Although that finding should not have survived even the most deferential review, the need for *independent* review is underscored by the fact that a number of courts have reached a conclusion contrary to the one affirmed by the Panel. *E.g.*, *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 627 (D.N.M. 2007) ("a significant number of persons . . . received the promised lower tar and nicotine from Marlboro Lights cigarettes"); *Pearson v. Philip Morris, Inc.*, 2006 WL 663004, at *7 (Or. Cir. Ct. Feb. 23, 2006) (same). Indeed, the record here establishes that "as to ultra low tar cigarettes, . . . a smoker switching down may not be able to compensate fully." *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 438 (D.D.C. 2006).

The Panel also deferred to the district court's finding that descriptors are fraudulent because they are not, as Defendants argued, "simply verbal representa-

tions of numerical ratings authorized by the FTC." Slip op. 45. But if the Panel had reexamined that finding de novo, the record would have compelled it to reject the district court's conclusion because it was premised on a flawed comparison between the tar and nicotine yields of cigarettes *of different lengths* (Virginia Slims 100's and Virginia Slims Lights 120's). *See* FTC, *"Tar," Nicotine, and Carbon Monoxide of the Smoke of 1,294 Varieties of Cigarettes* 32 (2000).

### III. THE PANEL'S REFUSAL TO SET ASIDE THE DISTRICT COURT'S IMPERMISSIBLY VAGUE AND OVERBROAD INJUNCTIONS CONFLICTS WITH DECISIONS OF THIS COURT AND THE SUPREME COURT.

Rehearing is also warranted because the Panel's analysis of the district court's vague and overbroad injunctions cannot be reconciled with Federal Rule of Civil Procedure 65(d)(1) or controlling precedent.

Federal Rule of Civil Procedure 65(d)(1) requires that "[e]very order granting an injunction . . . state its terms specifically [and] describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1) (emphasis added). The rule recognizes that "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam). To that end, the rule prohibits injunctions that are "so vague as to put the whole conduct of the defendants' business at the peril of a summons for con-