## DECLARATION OF LESLIE J. GRISHAM

I, Leslie J. Grisham, declare as follows:

1. I am the plaintiff in the above entitled matter and if called as a witness, I could and would competently aver concerning the following facts and information, which is stated within the best of my knowledge and as a result of refreshing my recollection from the review of certain documents attached as exhibits to the declaration of my counsel, Frances M. Phares.

2. I reside in the County of Los Angeles, City of Northridge, and am employed as a paralegal in my counsel's law firm.

3. My parents are and were Carl Grisham, deceased and Barbara J. ("B.J") Parker. Both of my parents smoked, before, during, and after I was born on December 31, 1949. My mother, Mrs. Parker, resides in Lake Forest, California, with her husband, Drake Parker. My mother continues to smoke to this time and has smoked Marlboro cigarettes for as long as I can remember.

4. I smoked my first cigarette when I was approximately 7-8 years old. I took a two cigarettes from my mother and my sister and I hid from her and my father to try this exotic temptation. I had seen both my parents smoking ever since I could remember and was around and exposed to cigarette smoke from infancy. I particularly remember my mother, whom I thought was extremely beautiful, sitting at the dining table elegantly smoking. In my mind's eye, I can still see the smoke softly curling its way up into the atmosphere and remember that it used to mesmerize me. I also recall that my sisters and I used to beg my parents to blow smoke rings and then we would have great fun chasing them around the room. By today's standards, that would probably be tantamount to child abuse. However then, due to my environment, smoking was as natural to me as the sun rising in the morning.

5. In addition to my memories of my parents smoking behavior, I also recall television shows in the early 1950's and 1960's where not only were there cigarette advertisements, but also many of the live performers, news commentators, actresses, movie stars, and even doctors, were touting not only the glamour, enjoyment and pleasure associated with cigarettes, but also that cigarettes were good for you. Cigarettes seemed to make people happy. I remember as a child, for example, Lucy and Ricky Ricardo smoking on their television show and I believe I have seen Lucy advertising cigarettes in a magazine. I also remember Dave Garroway, news anchor and host for the original Today Show in the early 1950s, sitting there in black and white on our Admiral television set, smoking his cigarette. As a young child, I also remember other people smoking on the air, such as Dorothy Kilgallon and Betty Davis, whom my mother used to adore. I also remember Miss Kitty from Gunsmoke smoked, though I don't recall whether she smoked on the television

fact that I smoked. I then learned that the connection between smoking and periodontal disease had been known to defendants since the early 60s before I started smoking. Although things like lung cancer didn't mean much to me as a teenager, had the defendants told me that I could lose my teeth from smoking I would never have started smoking. No medical professional or dental professional had ever advised me that if I did not quit smoking I would loose my teeth and have severe periodontitis. When I had to quit smoking in order to be treated for periodontal disease is when I first suffered an injury from smoking. (See Ex. 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 51, 52 to Phares Dec.)

21. Although I could not recall a specific reference during my deposition, I have now refreshed my memory by reviewing tobacco industry documents from the 1970s and documents produced by defendants. The documents I have thus far reviewed have refreshed my recollection and memory of documents I had previously seen and events in which I had participated. As a result of refreshing my memory, I can now "specifically point to" statements made by Brown & Williamson and Philip Morris through the Tobacco Institute, regarding genetic predisposition. (Ex. 5 to Phares Dec.)

22. In reviewing documents I recall statements and news releases which I most likely saw in the 1960s and other articles and news releases in the 1970s and 1980s in which the defendants disputed or questioned the link between smoking and lung cancer. (See also, Ex. 2, 5 to Phares Dec.)

23. I was about five years old when the "Frank Statement" first appeared Later in the 60s when I was a teenager, I believe that I read the "Frank Statement." I was uncertain about and did not fully understand the message the "Frank Statement" was sending. I continued to believe in a general way that genetically predisposed individuals who smoked might develop cancer or heart disease, but I didn't think every body who smoked and had a genetic predisposition would get these diseases.

24. I believe that the reason I could not recall during my deposition seeing anything about tobacco companies denying health charges of addiction and cancer is because tobacco companies were not so much denying that smoking caused lung cancer or addiction in the 60s as creating controversy and casting doubt about the health charges without actually denying them. I have refreshed my memory by reviewing a 3-24-65 press release issued by The Tobacco Institute and recall the huge cigarette labeling controversy that was occurring in the mid-1960s. I now recall discussing the cigarette labeling issues in Social Studies, Current Events, while a sophomore at Webster Groves High School.

25. I thought my deposition was going to be limited to periodontal disease and smoking, as well as any issues raised from the *Soliman* 9th Circuit Court of Appeals opinion I did not

6

116 6

000911

prepare for the deposition by reviewing articles, advertisements and documents to jog my memory about what I saw, heard and read, throughout the many years that I smoked, about the health risks of smoking. My deposition responses reflected what I remembered without having my memory refreshed.

26. The warnings I referred to in my deposition had to do with whether the tobacco manufacturers had to place the tar and nicotine content information on the cigarette packages.

27. I relied upon the advertisements and messages of these companies during and throughout the 1970s and 80s as to the safety of their products and expected that if the tobacco companies knew additional information regarding cancer and heart disease being associated with cigarettes, that they would have truthfully informed me and the consuming public. Instead, defendants 1980s advertisements, especially in regard to its ultra light cigarettes, continued to portray safety, social desirability, sexuality and intrigue. (Exs. 15, 16, 17, 18, 19 to Phares Dec.)

28. I was not paying close attention to statements made by the tobacco industry in the 1990s because I was involved as a paralegal in my firm's representation of hemophiliacs infected with HIV from contaminated blood products. I was aware in the 1990s that the tobacco companies were denying that there were any health risk associated with smoking. I was aware of the tobacco company executives' congressional testimony denying that cigarettes posed a serious health risk or that cigarettes were addictive. This information was one of the major news events of 1996. I did not necessarily believe any of this, nor did I fully understand this. I had been smoking for many years with no serious effects and didn't think this meant that I personally had any health risk.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 17, 2003

LESLIE J. GRISHAM

116   7

000942