Michael L. Baum (CA State Bar #119511)
mbaum@baumhedlundlaw.com
Frances M.  Phares (LA  State Bar #10388)
fphares@baumhedlundlaw.com
Ronald L.M. Goldman (CA State Bar #33422)
rgoldman@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.
12100 Wilshire Boulevard, Suite 950
Los Angeles, California 90025
(310) 207-3233 Tel
(310) 820-7444 Fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE GRISHAM,<br><br>        Plaintiff,<br><br>    v.<br><br>PHILIP MORRIS USA INC., et al.<br><br>        Defendants. | Case No.  02-7930 SVW (Rcx)<br><br>Judge:  Hon. Stephen V. Wilson<br><br>Date:          September 14, 2009<br>Time:          1:30 p.m.<br>Courtroom:  6<br><br>Plaintiff's Reply Memorandum Regarding Plaintiff's Request For Collateral Estoppel/Issue Preclusion in Relation to Motion to Stay |

# TABLE OF CONTENTS

**Page**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -

I.    The United States Supreme Court has granted trial courts broad
      discretion to determine when issue preclusion should be applied.
      The burden of proof under federal law for applying issue preclusion
      has been met because the defendants had the opportunity and did
      fully and fairly litigate identical fraud issues in the *DOJ* case . . . . . . - 2 -

II.   Defense verdicts were obtained in some earlier cases at a time the
      defendants were successfully concealing incriminating documents
      under the attorney-client work-product privilege. After some of
      these documents were finally produced in the *DOJ* case, the
      defendants' fraudulent conduct was exposed. If the documents
      had been produced earlier, it is probable that the defendants'
      fraudulent conduct could have been established in earlier cases . . . . - 4 -

III.  Grisham has identified particular findings of fact which support the
      *DOJ* decision that the defendants intended fraudulent conduct.
      This court should apply these same findings to reach the same
      outcome — that defendants intended fraudulent conduct. Thus, the
      identified factual findings are "necessary to the bottom-line
      judgment": a finding that the defendants intended fraudulent
      conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

IV.   The defendants have inaccurately asserted that certain defense
      verdicts are "inconsistent" with the *DOJ* decision. Most of the
      verdicts either were not based on fraud or the jury finding on fraud
      cannot be determined from the verdict. These verdicts cannot be
      considered inconsistent with the *DOJ* case . . . . . . . . . . . . . . . . . . . - 12 -

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*(Re Mowbray) Brambles Australia Ltd. v. British American*
  *Tobacco Australia Services Ltd.,*
  [2006] NSWDDT 15, at Par. 56, 57 . . . . . . . . . . . . . . . . - 3 -, - 4 -, - 15 -

*Blonder-Tongue Laboratories, Inc. v. University of*
*Illinois Foundation,*
  402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 . . . . . . . . . . . . - 2 -

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip*
*Morris, Inc.,*
  178 F. Supp. 2d 198 (E. D. N. Y. Oct 19, 2001) . . . . . . . . . . - 15 -, - 16 -

*Bobby v. Bies,*
  (2009) 129 S.Ct. 2145, 2153 . . . . . . . . . . . . . . . . . . . . . . . . - 9 -, - 10 -

*Burton v. R.J. Reynolds Tobacco,*
  167 F.R.D. 134, 142 (D.Kan.1996) . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

*Carter v. Brown & Williamson,*
  Case No. 95-00934 CA (Duval Cty. Cir. Ct., Fla.,
  Tran. July 26, 1996, at 1329-32) . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

*Falise v. American Tobacco Co.,*
  193 F.R.D. 73 (E.D.N.Y. Jan 04, 2000) . . . . . . . . . . . . . . . . . . . . - 18 -

*Florida v. American Tobacco,*
  Civ. Action No. CL 95-1466 AH (Palm Beach Cty. Fla.,
  filed Feb. 21, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

*Haines v. Liggett Group,*
  140 F.R.D. 681, 689 (D.N.J.1992) . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

*Humphrey v. Philip Morris,*
  (Minn. App., Mar. 17, 1998, No. CX-98-414) . . . . . . . . . . . . . . . . - 4 -

*Iron Workers Local Union No. 17 Insurance Fund v. Philip*
*Morris et al,*
  ND Ohio, 1:97-cv-1422, Verdict 3-18-99 . . . . . . . . . . . . . . . . . . . . - 17 -

*Jack Faucett Associates, Inc. v. American Tel. and Tel. Co.,*
  (D.C. Cir. 1984) 744 F.2d 118, 130 . . . . . . . . . . . . . . . . . . . . . . . - 14 -

*Parklane Hosiery Co. v. Shore*
  (1979) 439 U.S. 322, 331 . . . . . . . . . . . . . - 2 -, - 3 -, - 12 -, - 13 -, - 19 -

*Pool Water Prods. v. Olin Corp.,*
  (9th Cir. 2001) 258 F.3d 1024, 1033 . . . . . . . . . . . . . . . . . . . . . . . - 10 -

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u>

**CASES**                                                                    **Page(s)**

(Continued)

*Sackman v. Liggett Corp.,*
  173 F.R.D. at 363  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  - 6 -

*Schwab v. Philip Morris U.S.A. Inc.,*
  (E.D.N.Y. 2006) 449 F. Supp. 2d 992 . . . . . . . . . . . . . . . . . . . . . . . .  - 17 -

*State ex rel. Humphrey v. Philip Morris, Inc.,*
  (Minn. App. Feb 22, 2000) 606 N. W. 2d 676, 682  . . . . . . . . . . . . .  - 4 -

*State of Minnesota v. Philip Morris,*
  (Minn. Dist. Ct., Mar. 7, 1998, No. C1-94-8565)
  1998 WL 257214 *5  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -, - 5 -, - 18 -

*State v. Philip Morris,*
  (1998) 523 U.S. 1056, 118 S.Ct. 1384, 140 L. Ed. 2d 643 . . . . . . . . .  - 4 -

*Syverson v. IBM,*
  472 F.3d 1072, 1078, n.8 (9th Cir. 2007)  . . . . . . . . . . . . . . . . . . . . .  - 19 -

*Tompkins v. R.J. Reynolds Tobacco Co.,*
  92 F.Supp.2d 70 (N.D.N.Y. Mar 03, 2000)  . . . . . . . . . . . . . . . . . .  - 18 -

*United States v. Philip Morris, Inc.,*
  (D.D.C. 2002) 273 F. Supp. 2d, 3, 11, 27 . . . . . . . . . . . . . . . . . . . - 1 -, -18-

*Washington v. American Tobacco,*
  No. 96-2-15056-8 SEA (King Cty. Sup.Ct.1998) . . . . . . . . . . . . . . . .  - 6 -

**STATUTES**

18 U.S.C.A. §§ 1341, 1343  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  - 8 -

N.Y. Gen. Bus. Law § 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  - 2 -

_____

Plaintiff's Reply  Memorandum In
                                      Relation to Motion to Stay

**Introduction**

The ultimate focus of the *DOJ* case was to " prevent and restrain" these tobacco product  manufacturers from further prohibited acts through "wide-ranging equitable relief."[1]  That is, the defendants ***and their attorneys*** are permanently enjoined by the *DOJ* "Final Judgment And Remedial Order" from committing any prohibited acts "relat[ed] in any way to the manufacturing, marketing, promotion, health consequences or sale of cigarettes in the United States."  Also, they were permanently enjoined from "making or causing to be made in any way, any material false,  misleading, or deceptive statement of representation . . . that misrepresents or suppresses information concerning cigarettes." *See*, Ex. 34 (Order #1015 at II. A. 1, 3).

That the defendants and their attorneys persist in making mis-representations and arguments which have already been found to be fraudulent and which they have been ***permanently enjoined*** from ever raising again, and go so far as to effectively tell this Court to ignore the *DOJ* order, is nothing short of asking this Court to violate the *DOJ* order, too.  The defendants pretend that the *DOJ* order somehow provides them latitude to continue with prohibited acts. The order does no such thing: The point of the order was to stop them from ever again misleading the public and suppressing information about smoking and health.

If the defendants are allowed to argue that the *DOJ* order does not apply to this or that case, or this or that act in which they want to engage, then there is no point to the order.  The *DOJ* order is not a suggestion.  Nor is the order discretionary.  Subsequent courts must apply the *DOJ* order and findings of fact to prevent the defendants from ever misleading the American public again.

---

[1] *United States v. Philip Morris, Inc.*, (D.D.C. 2002) 273 F. Supp. 2d, 3, 11, 27.

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

**I.      The United States Supreme Court has granted trial courts broad discretion to determine when issue preclusion should be applied.[2]  The burden of proof under federal law for applying issue preclusion has been met because the defendants had the opportunity and did fully and fairly litigate identical fraud issues in the *DOJ* case.[3]**

If ever there were a situation where the doctrine of issue preclusion should apply, this is it.  Re-litigation of the defendants' fraud and wrongdoing under these particular circumstances would be "particularly wasteful" due to the "staggering expense and typical length" of time required to present the issues.[4]  Grisham's fraud-related claims are based on virtually identical facts and circumstances as were litigated and decided in the *DOJ* case.  Moreover, although the defendants argue that it would be unfair for this court to apply pertinent *DOJ* findings to this case, they have never suggested that they will be producing any new or different evidence on the issue of liability than what was presented in the *DOJ* case.  Instead they want this court to consider the same liability evidence the *DOJ* court considered but (hopefully) reach a different conclusion.  The defendants had full opportunity in the *DOJ* case to present voluminous evidence —which they did[5] — and the *DOJ* court ultimately ruled

---

[2] *Parklane Hosiery Co. v. Shore,* (1979) 439 U.S. 322, 331.

[3] *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 329.

[4] *See*, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788.

[5] "The seven-year history of this extraordinarily complex case involved the exchange of millions of documents, the entry of more than 1,000 Orders, and a trial which lasted approximately nine months with 84 witnesses testifying in open court."  *United States v. Philip Morris USA, Inc.* (D. D.C. 2006) 449 F.
(continued...)

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

that defendants could no longer misrepresent the facts, which is exactly what they are now doing in asking this court to present the same fraudulent evidence one more time.

Further, while the defendants note that the D.C. Circuit Court "may not have reached all the same conclusions as the district court,"[6] as a practical matter, no two courts will reach exactly the same conclusions under any circumstances.  What is important is that the three-judge appellate panel unanimously found the district court's factual findings had "sufficient evidentiary support; [and] its decision to order equitable relief was not an abuse of discretion."[7]  Moreover, given the seriousness of the government's allegations and the negative implications for defending future litigation if they were found liable for RICO violations, these defendants had every incentive in the *DOJ* case to mount the vigorous defense they did in fact put forth.[8]

---

[5](...continued)
Supp.2d 1, 28, *aff'd in part, vacated in part*, (D.C. Cir. 2009) 566 F.3d 1095, 1106 ("*DOJ* Case").

[6]  *See,* Defendants' Memorandum in Response to Plaintiffs' Supplemental Brief on Collateral Estoppel/Issue Preclusion in Relation to Motion to Stay ("Defs.' Issue Preclusion Memo") at pp. 1:13-17 and 4:23-5:11.

[7]  *United States v. Philip Morris USA, Inc.* (D.C. Cir. 2009) 566 F. 3d 1095, 1134.

[8]  *See also*, *Parklane Hosiery Co. v. Shore*, *supra*, at p. 329 ("In light of the serious allegations made in the SEC's complaint against the petitioners, as well as the foreseeability of subsequent private suits that typically follow a successful Government judgment, the petitioners had every incentive to litigate the SEC lawsuit fully and vigorously.")

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

**II.    Defense verdicts were obtained in some earlier cases at a time the defendants were successfully concealing incriminating documents under the attorney-client work-product privilege.  After some of these documents were finally produced in the *DOJ* case, the defendants' fraudulent conduct was exposed.[9]  If the documents had been produced earlier, it is probable that the defendants' fraudulent conduct could have been established in earlier cases.**

In the *Minnesota* case,[10] these Defendants asserted privilege over approximately 230,000 documents, comprising more than one million pages. [11]

_____

[9] *See, DOJ* Finding of Fact ("FOF") 4001: "At various times during which litigation and federal regulatory activities were pending, Defendants improperly sought to conceal research material behind the attorney-client privilege and the work product doctrine in order to avoid discovery. To accomplish that purpose, Defendants' lawyers exercised extensive control over joint industry and individual company scientific research and often vetted scientific documents." *United States v. Philip Morris USA, Inc*., *supra*, 449 F. Supp. 2d at 832.  *See* also, FOFs 4002-4017.

[10] *State of Minnesota v. Philip Morris* (Minn. Dist. Ct., Mar. 7, 1998, No. C1-94-8565) 1998 WL 257214 *5; *mandamus denied sub nom., State by Humphrey v. Philip Morris* (Minn. App., Mar. 17, 1998, No. CX-98-414); *petitions for further review denied sub nom., State v. Philip Morris* (Minn., Mar. 27, 1998, Nos. CX-98-414, CX-98-431) 1998 WL 154543; *stay denied, State v. Philip Morris* (1998) 523 U.S. 1056, 118 S.Ct. 1384, 140 L. Ed. 2d 643.

[11] *State v. Philip Morris, Inc.*, *supra*, 1998 WL 154543 *1;  *See*, *also*, *State of Minnesota v. Philip Morris, supra*, 1998 WL 257214 *5 at fn 6; *State ex rel. Humphrey v. Philip Morris, Inc*. (Minn. App. Feb 22, 2000) 606 N. W. 2d 676, 682 ("According to domestic appellants, respondents sought discovery of more than 33,000,000 pages of documents. Appellants asserted attorney-client and work-product privilege as to some 230,000 documents, which are estimated to contain more than 1,000,000 pages."); *See*, *also*, *United States v. Philip*

(continued...)

_____

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

The *Minnesota* court concluded that 37,000 documents were ***not*** privileged because they showed evidence of intent to commit fraud, which is an exception to the general attorney-client or work-product privilege rule — the so-called "crime fraud exception."[12]  The *DOJ* court agreed with the Minnesota court's findings.[13]   Additionally, the *DOJ* court ordered the production of many more tobacco industry documents which had not been released in the *Minnesota* litigation, finding either there was no privilege or, as in the *Minnesota* case, a "blatant disregard of court orders, the authority of the court, and the judicial process by B & W. . . "[14]

Whether plaintiffs who litigated and lost their cases before the release of thousands of incriminating documents under the crime-fraud exception could have pursued claims and ultimately proved defendants' fraudulent conduct is of course, unknown.  But disclosure of at least some of those documents seems to have made an impact upon subsequent courts and juries, as not one of the following cases identified in the *DOJ* findings of fact is listed in the defendants' "win" column in their Appendix A:

---

[11](...continued)
*Morris USA, Inc.*, *supra*, 449 F. Supp.2d at 931.

[12]  *See*, *State of Minnesota v. Philip Morris, Inc., supra*, 1998 WL 257214.

[13]  *See, DOJ* Findings of Fact ("FOF") 4025 - 4027 (FOF 4027:  "...The [*Minnesota*] court also adopted the special master's findings that for several categories of documents, including scientific reports, the crime-fraud exception to the attorney-client privilege applied.")

[14]  *See, DOJ* FOF 4025, 449 F.Supp.2d at 837.

---

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

1    ● FOF 4024. "In April 1997, the Florida Circuit Court upheld a special
2        master's ruling that lawyers for Defendants American, Reynolds, B & W,
3        BATCo, Philip Morris, Liggett, Lorillard, CTR, and the Tobacco Institute
4        'undertook to misuse the attorney/client relationship to keep secret
5        research and other activities related to the true health dangers of smoking.'
6        *Florida v. American Tobacco,* Civ. Action No. CL 95-1466 AH (Palm
7        Beach Cty. Fla., filed Feb. 21, 1995)."

8    ● FOF 4028. "In *Washington v. American Tobacco,* the court issued several
9        rulings in which it determined that numerous documents for which
10       Defendants American, B & W, Liggett, Lorillard, Philip Morris,
11       Reynolds, CTR, and the Tobacco Institute had asserted privilege were
12       subject to the crime-fraud exception and were therefore 'de-privileged.'
13       The bases for the findings included 'that defendants attempted to misuse
14       legal privileges to hide research documents;' 'that attorneys controlled
15       corporate research and/or supported the results of research regarding
16       smoking and health;' 'that the industry, contrary to its public statements,
17       was suppressing information about smoking and health;' and 'that Special
18       Account # 4 was used to conceal problematic research.' *Washington v.*
19       *American Tobacco,* No. 96-2-15056-8 SEA (King Cty. Sup.Ct.1998)."

20   ● FOF 4029. "In *Sackman v. Liggett Group,* the court found that attempts
21       by Liggett, Philip Morris, B & W, Reynolds, Lorillard, and CTR to
22       designate CTR Special Project documents as privileged was inappropriate.
23       173 F.R.D. 358, 362-64 (E.D.N.Y.1997). The court concluded that,
24       despite lawyer involvement in Special Projects, the documents were not
25       privileged because they were prepared to further the public relations
26       position of the tobacco manufacturers and that any usefulness in litigation
27       'was merely an incidental benefit.' *Sackman,* 173 F.R.D. at 363."

28   ● FOF 4030. "The court in *Burton v. R.J. Reynolds* found that numerous

_____

- 6 -

documents identified as privileged by Reynolds and American were in
fact not privileged, including memoranda relating to research and
development, letters from outside counsel on scientific research, literature
reviews prepared by scientists at the direction of counsel, minutes of
research-related meeting, and notes made by employees at industry
meetings on smoking and health research. 170 F.R.D. 481, 490
(D.Kan.1997); *Burton v. R.J. Reynolds Tobacco,* 167 F.R.D. 134, 142
(D.Kan.1996)."

- FOF 4031. "In *Carter v. Brown & Williamson,*[15] the court found that even
if a privilege existed, an issue that the court did not reach, the crime-fraud
exception applied to certain B & W documents (the Merrell Williams
documents). *Carter v. Brown & Williamson,* Case No. 95-00934 CA
(Duval Cty. Cir. Ct., Fla., Tran. July 26, 1996, at 1329-32)."

- FOF 4032. "In *Haines v. Liggett Group,* 140 F.R.D. 681, 689
(D.N.J.1992), vacated on procedural grounds, 975 F.2d 81 (3rd Cir.1992),
the court, following an *in camera* review of 1,500 documents, confirmed
'plaintiff's contentions of the explicit and pervasive nature of the alleged
fraud by defendants [Liggett, Lorillard, Reynolds, Philip Morris, and the
Tobacco Institute] and defendants' abuse of the attorney-client privilege
as a means of effectuating that fraud.' Specifically, the court found 'that
the attorney-client privilege was intentionally employed to guard against
... unwanted disclosure.' *Haines,* 140 F.R.D. at 684. Finally, the court
stated that defendants and their lawyers 'abused the attorney-client
privilege in their efforts to effectuate their allegedly fraudulent schemes.'
*Id.* at 695."

- FOF 4033. "In (*Re Mowbray*) *Brambles Australia Ltd. v. British*

---

[15] The *Carter* case on defendants' Appendix A at p. 46 is a different case.

*American Tobacco Australia Services Ltd.,* [2006] NSWDDT 15, at Par. 56, 57, the Dust Diseases Tribunal of New South Wales concluded, after considering evidence that included the trial testimony of Frederick Gulson in the present litigation, that "BATAS in 1985 drafted or adopted the Document Retention Policy for the purpose of a fraud ...."; that "[t]he terms of the policy would appear to be so contrived that BATAS may secure legal sanction for the stated policy, while nevertheless selectively destroying prejudicial documents"; and that BATAS' communications to its lawyers made for the purpose of obtaining advice about document destruction under the 1985 Document Retention Policy "were communications in furtherance of the commission of a fraud. . . "[16]

To summarize, Judge Kessler found:

- FOF 4034. "The foregoing Findings of Fact demonstrate that, ***over the course of approximately fifty years***, different Defendants, at different times, took the following actions in order to maintain their public positions on smoking and disease-related issues, nicotine addiction, nicotine manipulation, and low tar cigarettes, in order to protect themselves from smoking and health related claims in litigation, and in order to avoid regulation which they viewed as harmful: they suppressed, concealed, and terminated scientific research; they destroyed documents including scientific reports and studies; and ***they repeatedly and intentionally improperly asserted the attorney-client and work product privileges over many thousands of documents (not just pages) to thwart disclosure to plaintiffs in smoking and health related litigation and to federal regulatory agencies, and to shield those documents from the harsh light of day***." [Emphasis added].

---

[16]In 1980 BATAS was Brown & Williamson's holding company.

Had the courts and juries in the defendants' Appendix A cases had the benefit of additional defense documents evidencing the defendants' fraud and concealment of material information, such as the documents which were eventually released, it is likely that the defendants' wrongdoing and liability would have been established in each of those cases.   Once the incriminating documents were finally disclosed and produced at trial, plaintiffs started winning cases, including the California cases *Henley, Boeken, Whiteley* and *Bullock.*[17]

**III.   Grisham has identified particular findings of fact which support the *DOJ* decision that the defendants intended fraudulent conduct.  This court should apply these same findings to reach the same outcome — that defendants intended fraudulent conduct.  Thus, the identified factual findings are "necessary to the bottom-line judgment": a finding that the defendants intended fraudulent conduct.[18]**

Ms. Grisham wants the Court to apply the *DOJ* factual findings which are "outcome determinative" on the issue of the defendants' fraud and wrongdoing. She is not asking (as the defendants suggest) that the Court apply *every DOJ* finding of fact to her claims, only the pertinent facts that show fraudulent conduct.  (*See*, Appendix A to Grisham's Supplemental Memo on Motion to Stay filed July 27, 2009 ("Supp. Memo")

---

[17]  *See*, *Henley vs Philip Morris Incorporated*, Case Number: CGC-98-995172, Superior Court of California, County of San Francisco; *Boeken v. Philip Morris, Inc.,* Case No. BC226593, Superior Court of the State of California, County of Los Angeles; *Whiteley vs Raybestos-Manhattan Inc.*, Case Number: CGC-99-303184 , Superior Court of California, County of San Francisco; and, *Bullock v. Philip Morris, Inc.,* Case No.BC249171, Superior Court of California, County of Los Angeles.  These California cases included claims for fraud, deceit, and misrepresentation, so-called "predicate acts" which the defendants were found to have committed in the *DOJ* case.

[18] *Bobby v. Bies* (2009) 129 S.Ct. 2145, 2153.

---

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

1    Grisham has identified the findings of fact which *DOJ* Judge Kessler

2  previously identified as necessary for her final decision that the defendants

3  committed fraud and wrongdoing.  ("A determination ranks as necessary or

4  essential only when the final outcome hinges on it." *See*, Defs.' Issue preclusion

5  memo at p. 14 citing to *Bobby v. Bies*, *supra*, 129 S.Ct. at 2153.)[19]   These

6  identified findings of fact are building blocks that link together to prove the

7  elements necessary to find that the defendants committed fraud and wrongdoing.

8  Hence, these findings of fact are "outcome determinative" on the issue of the

9  defendants' fraud and wrongdoing.

10    Also, as already mentioned, Grisham has limited her request for issue

11  preclusion; She has not asserted that all 4088 facts apply — 1,487 of Kessler's

12  findings are not applicable here.  Grisham has carefully identified only those

13  *DOJ* findings which prove her specific causes of action and allegations.[20]

14  Moreover, the *DOJ* findings she has identified are limited to these defendants,

15  their predecessors or successors in interest, and their trade organizations: the

16  Tobacco Institute and the TIRC/CTR, groups which were formed to deceive the

17  American public, including Grisham.

18    Despite defense contentions to the contrary, this Court is not required to

19  "hunt and peck" for the appropriate factual findings to apply.  *See*, *Pool Water*

20  *Prods. v. Olin Corp.* (9th Cir. 2001) 258 F.3d 1024, 1033.  Grisham has

21  specifically identified the findings of facts which apply to her claims. *See*,

22  Appendix A to Grisham's Supplemental Memo.  Moreover, the *DOJ* factual

23  findings are straightforward, concise, and easy to understand.  Applying these

---

25    [19] The facts of *Bobby, supra*, are distinguishable. In that case, the lower

26  court was reversed because it improperly applied issue preclusion to an issue

27  (whether or not the defendant was mentally retarded) that had never actually

    been litigated.

28    [20] *See*, Grisham's Appendix A to her Suppl. Memo for specific FOFs..

---

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

findings of fact will establish the defendants' liability and thus limit the trial to causation and damages, which would save  tremendous time and cost for all involved.

Of note, by arguing against the doctrine of issue preclusion, the defendants are perpetuating their longstanding, stated agenda of making litigation against them as difficult and costly as possible.  The tactics of the tobacco industry to spare no expense in defending these cases was voiced by J. Michael Jordan, counsel for R J Reynolds, speaking for the industry as a whole:

> [T]he aggressive posture we have taken regarding depositions and discovery in general continues to make these cases extremely burdensome and expensive for plaintiffs' lawyers, particularly sole practitioners. To paraphrase General Patton, the way we won these cases was not by spending all of [RJR]'s money, but by making that other son-of-a-bitch spend all of his.[21]

To summarize the disturbing extent of the defendants' massive wrongdoing, Judge Kessler wrote:

> . . . despite the length and detail of the Findings of Fact, the evidentiary picture must be viewed in its totality in order to fully appreciate how massive the case is against the Defendants, how irresponsible their actions have been, and how heedless they have been of the public welfare and the suffering caused by the cigarettes they sell.  *DOJ*, 449 F.Supp.2d at 31.

Re-litigation of the defendants' fraudulent conduct is particularly inefficient in this instance, where the defendants will likely defend Grisham's claims with virtually identical evidence to what they presented in the *DOJ* case. It is reasonable to presume that if the evidence against them had not been so

---

[21]  *See,* news article titled *Plaintiffs' Lawyers Undaunted by Tobacco Defeats*, LEGAL TIMES, Jan. 27, 1986, at 2 (describing how plaintiffs' lawyers face unlimited funds in litigating against tobacco companies).

"massive," the *DOJ* court would not have found them liable.[22]  Thousands of hours of attorney and court time, plus tremendous costs went into the *DOJ* verdict.  To re-litigate the defendants' fraudulent conduct is unnecessary, time consuming, and costly, and will be avoided through applying issue preclusion.

**IV.    The defendants have inaccurately asserted that certain defense verdicts are "inconsistent" with the *DOJ* decision.  Most of the verdicts either were not based on fraud or the jury finding on fraud cannot be determined from the verdict.  These verdicts cannot be considered inconsistent with the *DOJ* case.**

The defendants are flatly wrong in claiming that the United States Supreme Court disallows issue preclusion when an earlier judgment is inconsistent.  This is simply incorrect.  They imply that issue preclusion is ***absolutely*** unavailable when there is an earlier inconsistent judgment.[23]  Instead, whether to apply issue preclusion in view of inconsistent judgments turns on fairness and is a ***discretionary*** determination.  The US Supreme Court wrote: "Allowing offensive collateral estoppel ***may*** also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendants."[24]

For the court to consider the effect of "inconsistent judgments," at a minimum these "judgments" should actually be comparable to the claims under

_____

[22]  *Parklane Hosiery Co. v. Shore*, *supra*, 439 U.S. at 329.

[23]  The defendants misleadingly state that a comment from a law review article is a"direction" from the United States Supreme Court.  *See*, Def's Issue Preclusion Memo at p. 7:21-25 and citation to *Parklane Hoisery*.  Nor has Grisham conceded the point.

[24]  *Parklane Hosiery Co. v. Shore*, *supra*, 439 U.S. at 330. (Emphasis supplied.)

_____

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

consideration.  The defendants' listed defense verdicts allegedly inconsistent
with the *DOJ* decision includes cases where fraud was not claimed, or the fraud
claims were voluntarily dismissed, or the question of fraud is indeterminate.  For
example, nine of the "inconsistent" verdicts involved claims for injury from
exposure to second hand smoke and do not indicate fraud  was an issue.  (*See,*
Def. Appendix A — *Menchini, Swaty, Routh, Seal, Tucker, Janoff, Fontana,*
*Butler,* and *Dunn* cases; Grisham Appendix 1 and Exhibits 2, 4, 10, 16, 19, 20,
26, 28, 29 to Phares Decl.)

In other cases the basis for the so-called "inconsistent" judgment cannot
be determined because the various verdict forms combine general questions of
fraud with questions about reliance, assumption of the risk or proximate cause,
or the verdict gives no specific basis for the verdict.  For example, in *Tune*
(citation omitted) the verdict reads: "Did [defendant commit certain acts] which
[were] the legal cause of loss, injury or damage to the [plaintiff]?"  In *Welch*
(citation omitted) the verdict reads: "On the claim of [plaintiff] for compensatory
damages against [defendants] as submitted in [jury instructions] the undersigned
jurors find in favor of [defendants]."  (*See,* Def. Appendix A — *Londgren,*
*Welch, Allen, Lucier, Tune,* and *Apostolou* cases; Grisham's Appendix 1 and
Exhibits 9, 12, 13, 15, 21, 27 to Phares decl.)

In still other cases, fraud was actually found (*RellerII*), fraud claims ended
in mistrial, fraud claims were never reached by the jury, the plaintiffs voluntarily
dismissed fraud claims, or the plaintiffs never alleged fraud in the first place.
See, Def. Appendix A — *Falise, Vandenburg, Beckum, Coolidge, Reller I and*
*II, Hall, Carter, Hyde, In re Tobacco Litigation, Tomkin, Mehlman, Rogers*;
Grisham Appendix 1 and Exhibits 1, 3, 5, 6, 7, 8, 11, 17, 22, 23, 24, 25, 30 to
Phares decl.)

Two final cases defendants cited, *Conley* and *Inzerilla* (citation omitted)
resulted in defense verdicts where the plaintiffs had originally pled fraud.

However, in *Conley* the defense attorney publically stated after the trial that "[the judge] . . . ruled that the plaintiffs had failed to show that [RJ Reynolds] products were defectively designed or that [plaintiff] had not been warned about the risks of smoking." *See*, Ex. 18 to Phares Decl.  Given this statement, fraud does not appear to have been one of the issues eventually decided in the case. The verdict in *Inzerilla* was based on pre-1969 fraudulent concealment only. The verdict form indicates the jury did not consider fraud based on the defendants' omissions or misrepresentations and that no fraud after 1969 was considered. *See*, Ex. 14 to Phares Decl.

Given that these cases do not ultimately present inconsistent judgments, there is nothing unfair about applying the selected *DOJ* findings of fact to Grisham's case.  In weighing so-called "inconsistent" verdicts,  "[A] district court should consider the facts of any given case including, for example, the posture of the opinion (i.e., whether it represents an interlocutory motion or a final judgment) and the attention and care that the decision devotes to the issue,"[25] before deciding that the two cases represent an inconsistency making the application of issue preclusion lean toward being unfair.[26]  Each case stands on its own footing for issue preclusion analysis.[27]

Judge Kessler's findings on fraud are clearly articulated and supported by evidence in the record.  Her findings of fact have been scrutinized for almost

---

[25]  *Jack Faucett Associates, Inc. v. American Tel. and Tel. Co.,* (D.C. Cir. 1984) 744 F.2d 118, 130.

[26]  There is no "inconsistency" between the *DOJ* Court's findings of fraud and one case on Defendants' Appendix A, where fraud was in fact found. *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 178 F. Supp. 2d 198 (E. D. N. Y. Oct 19, 2001).

[27]  *Jack Faucett Associates, Inc. v. American Tel. and Tel. Co.* (D.C. Cir. 1984) 744 F.2d 118, 130.

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

three years by the appellate court before it affirmed Judge Kessler's findings, reasoning, conclusions, and decisions.[28]  These findings are not the opinion of a *"a single judge in a single case."*[29]  The appellate court filed a "*Per Curiam*" opinion.  In other words, all three judges agreed with Kessler — the facts and evidence demonstrated mail and wire fraud upon the American public, including Grisham.

Of special note, two cases the defendants have cited which alleged RICO claims are not necessarily inconsistent either.  In *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.* (EDNY 1999) 36 F. Supp. 2d. 560; (2003) 344 F. 3d. 211, the insurer-plaintiffs filed claims for health care reimbursements alleging both state law fraud claims and RICO violations. A jury found for the insurers on their state law fraud and misrepresentation claims[30] but

_____

[28]  *U.S. v. Philip Morris USA Inc.*, 566 F.3d 1095, 1121 (D.C.Cir. May 22, 2009) ("There was sufficient evidence to support district court's finding that cigarette manufacturers and tobacco-related trade organizations engaged in mail and wire fraud with specific intent to defraud smokers and potential smokers about health effects of smoking and environmental tobacco smoke, addictiveness of nicotine, and health benefits from low tar "light" cigarettes, despite defendants' contention that court applied impermissible "collective intent" standard, where companies' research indicated that cigarette smoking caused disease, that nicotine was addictive, that light cigarettes did not present lower health risks than regular cigarettes due to smoker compensation, and that secondhand smoke was hazardous to health, there was ensuing pattern of memoranda within corporations acknowledging that smoking was addictive, and accepted throughout corporations, and authors of fraudulent statements were high ranking executives. 18 U.S.C.A. §§ 1341, 1343.")

[29]  Def's. Memo, pp. 12:3-4.

[30]  Defendants were found liable for fraud and misrepresentation under New York's consumer protection statute, N.Y. Gen. Bus. Law § 349, Deceptive
(continued...)

_____

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

found that the insurer-plaintiffs had not proved a ***direct*** claim under RICO. (*See*, Ex. 31 to Phares decl.)  On appeal, the fraud verdict for the insurer-plaintiffs was reversed because these third-party claims were found to be too remote from the individuals who were actually injured by smoking. opposed to RICO.[31]

Despite defense assertions to the contrary, the *Blue Cross* and the *DOJ* cases are in fact very consistent.  In both cases the evidence showed the defendants made fraudulent misrepresentations for more than 50 years; the evidence showed that these defendants knew their statements and representations to be false; the evidence further showed that the representations were material and that the defendants intended the consuming public to rely upon those false representations.  Whether fraud is RICO mail and wire fraud, or statutory consumer fraud, or common-law fraud does not change the fraudulent acts upon which those claims are based.   The defendants persist in confusing "claims" with the underlying acts that form the basis for those claims.  In short, both courts found fraud.

Similarly, the *Iron Workers* case[32] involved third-party insurer-plaintiffs (Iron Workers Local Union 17 Insurance Fund) suing to recover costs paid for

_____

[30](...continued)
acts and practices unlawful, in the amount of more than $17 million dollars. See, Ex. 2 to Decl. of Pat Gregory.

[31]  Although informing this Court that the verdict was overturned on appeal, Defendants failed to inform the court that the decision was reached on a certified question to the N.Y. Appellate Court, which found that N.Y. Gen. Bus. Law § 349 could not be asserted derivatively by an insurer.  See, e.g. *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.,* 3 N.Y.3d 200, 818 N.E.2d 1140, 785 N.Y.S.2d 399, 2004 N.Y. Slip Op. 07403 (N.Y. Oct 19, 2004).

[32] *Iron Workers Local Union No. 17 Insurance Fund v. Philip Morris et al*, ND Ohio, 1:97-cv-1422, Verdict 3-18-99.  No appeal taken.

_____

- 16 -

1   smoking-related medical treatments for individual smokers.  The plaintiffs

2   brought claims for violations of federal and state RICO and conspiracy.

3   Defendants again argued that these plaintiffs were derivative and too remote

4   from the actual injuries of the smokers to justify recovery.  Because the jury

5   verdict appears to combine all elements of proof into each interrogatory, it is

6   impossible to tell on what basis the jury found for the defendants.   Verdict:

7   "We, the Jury [find for defendant] on the issue of Violation of Ohio's Corrupt

8   Activity Act. . . on the issue of Conspiring to Violate The Corrupt Activity Act,

9   . . . on the issue of Engaging in Civil Conspiracy."  (*See*, Ex. 32 to Phares decl.)

10  Was this verdict influenced by the remoteness issues?  The answer to this

11  question simply cannot be determined.   Thus, this verdict cannot be considered

12  to be squarely inconsistent.

13         Defendants also refer to *Schwab v. Philip Morris U.S.A. Inc.,* (E.D.N.Y.

14  2006) 449 F. Supp. 2d 992 to argue against issue preclusion.  The *Schwab* court

15  was asked to apply the *DOJ* findings of fact but did not do so.  The main  reason

16  was because Liggett, a tobacco defendant in *Schwab*, was a prevailing party in

17  the *DOJ* case and settled with the Department of Justice long before the *DOJ*

18  judgment was entered.  The *Schwab* court noted, "Application of estoppel to all

19  but one of many defendants would confuse the jury, making administration of

20  the case more difficult."  *Id.* at 1079.  Further, a fair reading of  *Schwab* infers

21  that because there was no "finality" to the *DOJ* opinion, at the time Judge

22  Weinstein thought it best not to apply issue preclusion on the basis of a "'non-

23  final" judgment.  Now that the DC Circuit Court of Appeals has affirmed the

24  *DOJ's* result, it is no longer a "non-final" judgment.

25         Finally, as previously noted, it cannot be determined the extent to which

26  the cases the defendants cite had the benefit of tying together each piece of

27  evidence which the *Minnesota* case started and the *DOJ* Court and the attorneys

28  working for the federal government methodically continued after the Minnesota

1    settlement. To this day, the defendants have repeatedly opposed producing even

2    that evidence which has been ordered to be made public in the *Minnesota* case,

3    asserting privileges where none exists.[33]

4        It is thus doubtful that earlier tobacco cases had the benefit of the many

5    years the federal government devoted to digesting, analyzing and sorting

6    through the evidence, categorizing each piece according to the issues of mail and

7    wire fraud, assembling the evidence related to smoking and health, nicotine

8    addiction and manipulation, youth smoking, second hand smoke, and

9    participation in the enterprise, as methodically assembled and set forth in Judge

10   Kessler's opinion and her outlined table of contents.  The specific purpose of

11   these findings and the manner in which they are ordered is to aid future courts,

12   such as this Honorable Court, in applying issue preclusion to these carefully

13   considered facts and issues that have now been litigated to finality.  Offensive

14   issue preclusion is the tool provided to the Court to prevent re-litigation of

15   exhausted litigation issues and to give the Court the ability to say, "enough is

16   enough."

17       The doctrine of issue preclusion has been endorsed not only by the 9th

18

19

20

21

22

23

24

25   _____

26       [33]  See, e.g.,  *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70

27   (N.D.N.Y. Mar 03, 2000);  *Falise v. American Tobacco Co.,* 193 F.R.D. 73
     (E.D.N.Y. Jan 04, 2000); *U.S. v. Philip Morris Inc.*, 212 F.R.D. 421 (D.D.C.

28   May 17, 2002).

_____

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

1  Circuit,[34] but also by the U.S. Supreme Court for cases just like Grisham's.[35]

2  Thus the Court is on solid ground in applying offensive issue preclusion where

3  appropriate in the *Grisham* case.

4  **Conclusion**

5          The defendants and their attorneys are permanently enjoined from

6  committing more fraudulent acts and controverting the facts finally adjudicated

7  in the *DOJ* case.  Thus, issue preclusion, particularly as related to fraud and

8  wrongdoing, should be applied to the instant case.  To find otherwise enables

9  these defendants and their attorneys to continue violating Judge Kessler's direct

10  Order.  Moreover, under 9th Circuit precedent, there is finality to the findings of

11  fact in the *DOJ* opinion, especially considering it has been affirmed on appeal.

12  Further, the defendants should not be allowed to re-litigate those *DOJ* findings

13  of fact relevant to Grisham's allegations of design defect, negligence and breach

14  of express warranty.  Res judicata should be given to the *DOJ* findings.  They

15  are based on considerable evidence, as cited in the *DOJ* record, and the same

16  evidence will be presented at trial in the Grisham matter.

17

18

19

20

21

22

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

24          [34] *See, e.g., Syverson v. IBM*, 472 F.3d 1072, 1078, n.8 (9th Cir. 2007).

25  Of note, the defendants' cited cases to oppose offensive issue preclusion are in

26  jurisdictions outside the 9th Circuit, which has approved offensive issue

27  preclusion on the basis of the Supreme Court's holding in *Parklane Hosiery Co.*

   *v. Shore*, 439 U.S. 322, 329 (1979).

28

           [35] *Parklane Hosiery Co. v. Shore*, *supra*, 439 U.S. at 329.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

1    Dated: August 28, 2009          Respectfully Submitted,

2                                    BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.

3

4                                    By:  /s/Frances M. Phares

5                                          Frances M. Phares, Esq.
                                           Michael L. Baum, Esq.
6                                          Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Reply  Memorandum In
Relation to Motion to Stay

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF LOS ANGELES                  )

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years, and am not a party to the within action; my business address is 12100 Wilshire Blvd., Suite 950, Los Angeles, California 90025.

     On the date hereinbelow specified, I served the documents described as set forth below on the named defendants in this action as follows:

**Date of Service:**            **August 28, 2009**

**Document Served:**      **PLAINTIFF'S REPLY  MEMORANDUM IN REGARDING PLAINTIFF'S REQUEST FOR COLLATERAL ESTOPPEL/ISSUE PRECLUSION IN RELATION TO MOTION TO STAY**

**Parties Served:**         **SEE ATTACHED SERVICE LIST**

 X    **(VIA THE COURT'S ECF FILING SYSTEM)**

\_\_\_    **(BY PERSONAL SERVICE)**

\_\_\_    **(BY U.S. MAIL)**  I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing or correspondence for mailing.  It is deposited with the U.S. Postal Service  on the same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

 X    **(BY E-MAIL)** I caused said documents to be transmitted via facsimile to the e-mail addresses marked on the attached service list.

\_\_\_    **(BY FACSIMILE)** I caused said documents to be transmitted via facsimile to the offices of the addressee(s) marked on the attached service list.

     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**EXECUTED**: August 28, 2009, 2009 at Los Angeles, California.

                    /s/ Sheila Beam
                    Sheila Beam

_____

1

2   SERVICE LIST

3

4   Frank P. Kelly
    fkelly@shb.com
5   Tammy B. Webb
    tbwebb@shb.com
6   Ingrid Peterson
    ipeterson@shb.com
7   Patrick J. Gregory
    Pgregory@shb.com
8   Dana N. Gwaltney
    dgwaltney@shb.com
9   SHOOK, HARDY & BACON L.L.P.
    333 Bush Street, Suite 600
10  San Francisco, California 94104-2828
    Telephone: (415) 544-1900
11  Facsimile: (415) 391-0281

12  Attorneys for Philip Morris USA, Inc.

13  Erin L. Dickinson
    eldickinson@jonesday.com
14  Amanda S. Jacobs
    asjacobs@jonesday.com
15  JONES DAY
    North Point
16  901 Lakeside Avenue
    Cleveland, OH 44114
17  Telephone: (216) 586-3939
    Facsimile: (216) 579-0212
18
    Peter N. Larson
19  pnlarson@jonesday.com
    JONES DAY
20  555 California Street, 26th Floor
    San Francisco, CA 94104
21  Telephone: (415) 626-3939
    Facsimile: (415) 875-5700
22
    Attorneys for Brown & Williamson Holdings, Inc.
23  (formerly known as Brown & Williamson Tobacco Corp.)

24

25

26

27

28

_____

- 22 -