EXHIBIT 8

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

EMMETT A. HALL,

    Plaintiff,

v.

R.J. REYNOLDS TOBACCO COMPANY; and
BROWN & WILLIAMSON TOBACCO
CORPORATION, individually and as successor
by merger to THE AMERICAN TOBACCO
COMPANY,

    Defendants.

CASE NO. 00-1061

DIVISION D

### VERDICT FORM

We, the jury, return the following verdict:

1. Did the defendants have a duty, before July 1, 1969, to warn Plaintiff Emmett Hall of the risks associated with using their cigarettes?

    R.J. Reynolds Tobacco Co.          Yes ✓          No _____
    Brown & Williamson Tobacco Corp.   Yes ✓          No _____

If your answer to Question 1 is NO as to both defendants, please proceed to Question 4. If your answer to Question 1 is YES as to any defendant, please answer Questions 2 and 3 as to that defendant.

2. Was there negligence on the part of the defendants for not providing adequate health warnings to Plaintiff Emmett Hall, prior to July 1, 1969, and if so, was such negligence a legal cause of damage to Plaintiff Emmett Hall?

   R.J. Reynolds Tobacco Co.           Yes _____    No ___✓___
   Brown & Williamson Tobacco Corp.    Yes _____    No ___✓___

3. Were the cigarettes manufactured by the defendants defective for not providing adequate warnings to Plaintiff Emmett Hall, prior to July 1, 1969, and if so, was such defect a legal cause of damage to Plaintiff Emmett Hall?

   R.J. Reynolds Tobacco Co.           Yes _____    No ___✓___
   Brown & Williamson Tobacco Corp.    Yes _____    No ___✓___

4. Was there negligence on the part of the defendants for failing to exercise reasonable care in the design of their products resulting in a defective condition, and if so, was such defective design a legal cause of damage to Plaintiff Emmett Hall?

   R.J. Reynolds Tobacco Co.           Yes _____    No ___✓___
   Brown & Williamson Tobacco Corp.    Yes _____    No ___✓___

5. Were the cigarettes manufactured by the defendants defectively designed, and if so, was such defective design a legal cause of damage to Plaintiff Emmett Hall?

| | | |
|---|---|---|
| R.J. Reynolds Tobacco Co. | Yes _____ | No ✓ |
| Brown & Williamson Tobacco Corp. | Yes _____ | No ✓ |

If you did not answer YES to Questions 2, 3, 4 or 5, your verdict is for the defendants, and you should proceed no further except to sign and date your verdict and return it to the courtroom.

If you did answer YES to one or more of Questions 2, 3, 4 and 5, please proceed to Question 6.

6. State the percentage of any responsibility for Plaintiff Emmett Hall's damages that you charge to:

Defendant R.J. Reynolds Tobacco Company           _____%
(fill in only if you answered YES to Questions
2, 3, 4 or 5 as to Defendant R.J. Reynolds
Tobacco Company)

Defendant Brown & Williamson Tobacco Corporation  _____%
(fill in only if you answered YES to Questions
2, 3, 4 or 5 as to Defendant Brown & Williamson
Tobacco Corporation)

TOTAL RESPONSIBILITY MUST BE 100%

3

Exhibit 8, Page 39

7. Did Plaintiff Emmett Hall know, or by the use of reasonable care should he have known, before February 5th, 1996, that he had emphysema/COPD and that the accumulated effects of his cigarette use manifested themselves to him in a way which supplied some evidence of a causal relationship to cigarettes?

   Yes _____    No _____

If your answer to Question 7 is YES, please proceed to Question 10. If your answer to Question 7 is NO, please answer Questions 8 and 9.

8. What is the total amount (100%) of any damages for medical expenses incurred by Plaintiff Emmett Hall in the past that relate to emphysema/COPD?

   $ _____

9. What is the total amount (100%) of any damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life sustained by Plaintiff Emmett Hall in the past and to be sustained by Plaintiff Emmett Hall in the future that relate to emphysema/COPD?

   $ _____

4

Exhibit 8, Page 40

10. Did Plaintiff Emmett Hall know, or by the use of reasonable care should he have known, before February 8th, 1996, that he had lung cancer and that the accumulated effects of his cigarette use manifested themselves to him in a way which supplied some evidence of a causal relationship to cigarettes?

    Yes _____    No _____

If your answer to Question 10 is YES, you should not proceed further except to date and sign the verdict form and return it to the courtroom. If your answer to Question 10 is NO, please answer Questions 11 and 12.

11. What is the total amount (100%) of any damages for medical expenses incurred by Plaintiff Emmett Hall in the past that relate to lung cancer?

    $ _____

12. What is the total amount (100%) of any damages for pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect and loss of capacity for the enjoyment of life sustained by Plaintiff Emmett Hall in the past and to be sustained by Plaintiff Emmett Hall in the future that relate to lung cancer?

    $ _____

SO SAY WE ALL THIS __10th__ day of __December__, 2003.

_Pamela Millury-Safford_
Foreperson

Exhibit __8__, Page __42__

**RJReynolds**

# EMMETT A. HALL

<u>Plaintiff</u>

v.

# R.J. REYNOLDS TOBACCO COMPANY, et al.,

<u>Defendants</u>

Exhibit 8, Page 43

CIRCUIT COURT OF THE 13th JUDICIAL CIRCUIT

IN AND FOR HILLSBOROUGH COUNTY, FLA. (TAMPA)

Case No. 00-1061

Oct. 31, 2003

## PURPOSE

This backgrounder has been provided by Reynolds Tobacco to provide a concise reference document on this individual smoking and health case. It is not a court document.

Exhibit 8, Page 44

## THE PLAINTIFF

Plaintiff Emmett A. Hall filed this lawsuit on Feb. 8, 2000, in the Circuit Court for the 13th Judicial Circuit in and for Hillsborough County, Fla. (Tampa), for injuries he allegedly sustained from smoking. The plaintiff alleges that his use of the cigarettes manufactured by the defendants from 1943 until 1998 caused him to develop lung cancer and chronic obstructive pulmonary disease (COPD). The suit is proceeding on behalf of Mr. Hall for his injuries allegedly caused by smoking. Mrs. Hall, Mr. Hall's wife, dismissed her loss of consortium claim against all defendants.

Emmett A. Hall was born in Tampa on Sept. 14, 1928. Mr. Hall dropped out of high school in 1943, and worked for a year in a shipyard in Jacksonville, Fla. Several years later, Mr. Hall returned to Tampa and began working for GTE, then known as Florida Peninsula Electric. He later received his high school equivalency diploma and took a business administration course at Hillsborough Community College. Mr. Hall continued to work at GTE, first as a technician and then in management, until he retired in 1986.

Barbara Smelt Hall, Mr. Hall's wife, was born in Tampa on April 7, 1932. She graduated from the University of South Florida in 1966 and obtained a master's degree in elementary education from the University of Tampa in 1977. She taught school for more than 30 years and is presently teaching elementary education as an adjunct professor at the University of South Florida.

Emmett and Barbara Hall married on June 26, 1948, and have five children. Mr. Hall is represented by Howard Acosta of the Law Offices of Howard M. Acosta of St. Petersburg, Fla., Kent G. Whittemore and Bruce H. Denson of Whittemore & Ferguson, also of St. Petersburg, and Norwood S. Wilner and Gregory H. Maxwell of Spohrer, Wilner, Maxwell & Matthews of Jacksonville, Fla.

## THE DEFENDANTS

### Brown & Williamson Tobacco Corporation

Brown & Williamson is the nation's third-largest manufacturer of cigarettes. Headquartered in Louisville, Ky., it is an affiliate of British American Tobacco, p.

l.c., and its major brands include Kool, Lucky Strike, GPC, Viceroy, Capri, Barclay, Pall Mall, Carlton and Tareyton. Brown & Williamson is also successor by merger to The American Tobacco Company.

Brown & Williamson is represented by Andrew McGaan and Thomas Campbell of the Chicago firm Kirkland & Ellis, and by William A. Gillen, Jr., of the Tampa office of Gray, Harris, Robinson, Shackleford & Farrior.

**The American Tobacco Company**

*See Brown & Williamson Tobacco Corporation.*

**R.J. Reynolds Tobacco Company**

R.J. Reynolds Tobacco Company (Reynolds Tobacco) is the nation's second largest manufacturer of cigarettes. Headquartered in Winston-Salem, N.C., it is a wholly owned subsidiary of R.J. Reynolds Tobacco Holdings, Inc. The company's major brands include Winston, Salem, Camel and Doral.

Reynolds Tobacco is represented by Stephanie E. Parker and John F. Yarber of the Atlanta office of Jones Day, and by Troy A. Fuhrman of Hill, Ward & Henderson in Tampa.

## TRIAL SITE

The trial is being held in Tampa in the Circuit Court for the 13th Judicial Circuit in and for Hillsborough County, Fla.

## JUDGE

Judge James M. Barton, II, Circuit Court Judge for the 13th Judicial Circuit, is the trial judge.

## EXPECTED DURATION

The trial is scheduled to begin on Oct. 31, 2003, with jury selection, and is expected to last six to eight weeks.

Exhibit _X_ , Page _46_

## JURY AND VERDICT

The jury will consist of six jurors and two alternates. For the plaintiff to prevail on his claims, all six jurors must reach a unanimous verdict for the plaintiff.

## PLAINTIFF'S CASE

The plaintiff alleges that he was addicted to cigarettes and that his use of the defendants' cigarette brands caused him to develop COPD and lung cancer, the latter of which was diagnosed and for which he was treated in 1998. The plaintiff seeks compensatory damages for claims of negligent design and failure to warn and strict liability for defective design and failure to warn. Plaintiff voluntarily dismissed his claim for conspiracy to commit fraud on Oct. 2, 2003. The Court struck plaintiff's claim for punitive damages on Oct. 16, 2003.

## THE DEFENDANTS' CASE

The defendants deny all of plaintiff's claims.

With regard to the claims of negligent design and strict liability for defective design, under Florida law (Restatement (Second) of Torts, § 402A): "A product is not defective or unreasonably dangerous if it is not dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it with the ordinary knowledge common to the community." As the defendants will show during the trial, Mr. Hall was well aware of the risks associated with smoking, which are and have been common knowledge. Fully informed of such risks, Mr. Hall assumed these risks for the approximately 55 years he says he smoked. Additionally, Mr. Hall has not offered and cannot offer any evidence that, at any time during his smoking history, there was any feasible, safer alternative cigarette design that he would have used and that would have prevented his lung cancer or COPD.

The defendants may call one or more doctors and psychiatrists to testify about the concepts of addiction, dependence, habituation and abuse, and to discuss the historical development and current meanings of those concepts in public health and popular usage. If called, these witnesses will also testify that there is nothing

in cigarettes or in nicotine that either forces a person to smoke against his or her will or prevents reasoned thought, including making a decision to quit smoking and thereafter successfully acting upon that decision.

The defendants will also present evidence that Human Papillomavirus (HPV), which is known to cause cervical cancer and lung cancer in humans, was present in Mr. Hall's cancer. The evidence will show that HPV, not smoking, caused Mr. Hall's lung cancer.

## PROCEDURAL BACKGROUND

The plaintiffs, Emmett and Barbara Hall, filed this action in the Circuit Court for the 13th Judicial Circuit in and for Hillsborough County on Feb. 8, 2000. The complaint named Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company, R.J. Reynolds Tobacco Company, Philip Morris U.S.A., Inc. and Winn-Dixie Stores Inc. as defendants and asserted claims of negligence, strict liability, and conspiracy to commit actual fraud. The plaintiffs voluntarily dismissed all claims against Winn-Dixie Stores Inc. on March 31, 2000.

On Feb. 5, 2001, Mr. and Mrs. Hall moved to amend their complaint to add a claim for punitive damages. The court granted the plaintiffs' motion on June 13, 2001.

The parties took discovery by depositions, written discovery and/or document production. The defendants took the depositions of the plaintiffs, plaintiffs' expert witness, and numerous additional fact witnesses. The plaintiffs took no depositions.

On April 25, 2001, R.J. Reynolds filed a motion for partial summary judgment on the grounds that:

- There is no evidence that the plaintiffs ever saw or heard any misrepresentation allegedly made by Reynolds Tobacco;
- There is no evidence that the plaintiffs reasonably relied upon any alleged

- misrepresentations or omissions of material facts by Reynolds Tobacco;
- The plaintiffs' fraud claims are barred by the statute of limitations; and
- The plaintiffs' fraud claims are barred by the statute of repose.

Florida's statute of limitations bars any claim for fraud that the plaintiffs were or should have been aware of that occurred more than four years before the lawsuit was filed. The plaintiffs alleged that the defendant engaged in fraud dating back to at least 1953. Further, a specific Florida law bars any claims for fraud more than 12 years after the commission of the alleged fraud, regardless of the date it was or should have been discovered. Therefore, the defendants argued that the plaintiffs' claims for fraud were barred to the extent that they alleged any fraud committed more than 12 years before the plaintiffs filed suit.

The Federal Cigarette Labeling and Advertising Act expressly preempts all failure-to-warn claims and claims that the defendant attempted to neutralize or undermine the effectiveness of the warning labels that appear on all cigarette packages and advertisements. The defendants contend that the plaintiffs' negligence, strict liability and conspiracy claims were, essentially, failure-to-warn claims, and thus should be preempted. Moreover, the defendant contends that the plaintiffs' claims for negligence, strict liability and conspiracy to commit fraud are all preempted under federal law, which precludes any claim that merely manufacturing, selling and advertising cigarettes could lead to civil liability under state law.

On April 26, 2001, Brown & Williamson filed a similar motion for partial summary judgment on behalf of its company.

On May 11, 2001, Philip Morris filed a similar motion for partial summary judgment on behalf of its company.

The Court denied the defendants' motions for partial summary judgment on July 27, 2001.

On May 25, 2001, the defendants jointly filed an additional motion for summary judgment on the grounds that:

- The plaintiffs' claims are barred by Florida's four-year statute of limitations;

- The Federal Cigarette Labeling and Advertising Act preempts the plaintiffs' claims to the extent they are based on a failure to warn of the alleged health risks of smoking after July 1, 1969;

- The Federal Cigarette Labeling and Advertising Act preempts the plaintiffs' claims to the extent they are based on alleged neutralization or undermining of health warnings by the defendants after July 1, 1969;

- The Federal Cigarette Labeling and Advertising Act preempts the plaintiffs' claims of fraudulent concealment after July 1, 1969;

- The plaintiffs' negligent and strict liability claims are barred because cigarettes are not defective as a matter of law; and

- The plaintiffs' failure to warn claims are barred because the potential health risks of smoking have been common knowledge since Mr. Hall began smoking.

On June 29, 2001, the Court held that whether the plaintiffs' claims were barred by the statute of limitations was an issue of fact for the jury to decide, and denied the defendants' motion for summary judgment in part. On July 27, 2001, the Court held that the plaintiffs' post-1969 negligence, strict liability and neutralization failure to warn claims were preempted by the Federal Cigarette Labeling and Advertising Act, and that the plaintiffs' claims for conspiracy to commit fraud through concealment were preempted insofar as they allege a duty to warn beyond that imposed by the Labeling Act. As to all other issues, the Court denied the defendants' motion for summary judgment.

On July 6, 2001, the defendants filed a Motion to Strike Demand for Punitive Damages on the grounds of res judicata, asserting that because the State of Florida in its health care cost recovery lawsuit against the defendants, acting in its capacity on behalf of all Florida citizens, settled and released all claims for punitive damages against the defendants, and in addition that Mr. Hall could not recover additional punitive damages in this case. The Court took that motion under advisement. On May 21, 2003, Florida's Third District Court of Appeal in <u>Engle v. Philip Morris, Inc., et al.</u> ruled that, as part of the settlement with the

defendants in this case and the other cigarette manufacturer defendants, the State of Florida has already satisfied and released any and all claims for punitive damages and therefore no additional punitive damages are permitted by law. The defendants filed a Renewed Motion to Strike Demand for Punitive Damages in this case based on the Third District Court of Appeals' binding opinion in *Engle*. That motion was heard on Oct. 13, 2003, and, on Oct. 16, 2003, Judge Barton granted the motion, striking the plaintiff's claim for punitive damages against all defendants.

On July 16, 2003, Mrs. Hall dismissed her claim for loss of consortium against defendant Philip Morris only. The claim was dismissed against Brown & Williamson and Reynolds Tobacco on Sept.10, 2003.

On Aug.15, 2003, the defendants jointly filed an additional motion for summary judgment requesting that the Court grant partial summary judgment to the defendants on all of the plaintiff's claims based on an alleged addiction to cigarettes on the ground that the plaintiffs have conceded that addiction is not a basis for any damage claims in this matter.

On Aug. 15, 2003, Reynolds Tobacco also filed a motion for summary judgment requesting the Court to grant partial summary judgment to the defendants on all of plaintiff's claims that seek to impose liability against Reynolds Tobacco for manufacturing, selling and marketing cigarettes with knowledge of their health risks. Under federal law, any state tort claim that conflicts with the execution of the full purposes and objectives of Congress is preempted. Reynolds contends that Congress' intent is and has been to protect commerce and the national economy by allowing tobacco products, including cigarettes, to be sold on the market despite their alleged adverse health consequences. Thus, the plaintiff's claim that Reynolds Tobacco is liable for manufacturing and marketing dangerous, potentially addictive cigarettes conflicts with Congress' intent that tobacco products remain on the market. It follows that the plaintiffs' claim that the Reynolds Tobacco cigarettes Emmett Hall allegedly smoked also presented health risks cannot overcome Reynolds Tobacco's federally-protected right to sell them.

Both motions for summary judgment filed on Aug. 15, 2003 were denied.

The plaintiff dismissed his conspiracy to commit fraud claim on Oct. 2, 2003. On Oct. 29, 2003, the plaintiff voluntarily dismissed all claims against Philip Morris.