EXHIBIT 25

Privileged and Confidential
Attorney Work Product
Attorney-Client Communication

## TRIAL REPORT NO. 25

### May 16, 2001

| | |
|---|---|
| Mehlman | Superior Court of New Jersey, Law Division, Middlesex County |
| v. | Docket No. MID-L-1141-99 |
| Philip Morris Inc. and R. J. Reynolds | |
| | Reported by Tara Kelly |

### I.  VERDICT FOR DEFENDANTS

Today the jury returned a unanimous verdict on all counts for both Philip Morris and R.J. Reynolds.

The jury answered "no" to the following questions on the Jury Verdict Form:

1.  Has the plaintiff proven that defendant Philip Morris failed to include with Marlboro cigarettes an adequate warning of the danger of cigarette smoking during the period from late 1959 to July 1, 1969?

    By a 6-0 vote.

4.  Has the plaintiff proven that defendant R.J. Reynolds failed to include with Camel cigarettes an adequate warning of the danger of cigarette smoking during the period from late 1959 to July 1, 1969?

    By a 6-0 vote.

7.  Has the plaintiff proven that the cigarettes manufactured by defendant Philip Morris were defectively designed and that such defective design was a proximate cause of Constance Mehlman's lung cancer?

    By a 6-0 vote.

Exhibit 25, Page 138

9.  Has the plaintiff proven that the cigarettes manufactured by defendant R.J. Reynolds were defectively designed and that such defective design was a proximate cause of Constance Mehlman's lung cancer?

By a 6-0 vote.

The jury answered "yes" to the following questions on the Jury Verdict Form:

8.  Has defendant Philip Morris proven that, during the period from late 1959 until the date you find that Constance Mehlman quit smoking, there was not available to Philip Morris a practical and technologically feasible alternative design that would have prevented Constance Mehlman's lung cancer without substantially impairing the anticipated or intended functions of the cigarettes?

By a 6-0 vote.

10. Has defendant R.J. Reynolds proven that, during the period from late 1959 until the date you find that Constance Mehlman quit smoking, there was not available to R.J. Reynolds a practical and technologically feasible alternative design that would have prevented Constance Mehlman's lung cancer without substantially impairing the anticipated or intended functions of the cigarettes?

By a 6-0 vote.

## II. POST VERDICT PROCEEDINGS

The judge thanked the jurors for their service and dismissed them. She then asked the defendants to submit a form for the entry of judgment, thanked counsel for their courtesy and professionalism during the trial, and ended the proceeding.

NOT FOR PUBLICATION WITHOUT APPROVAL
OF THE COMMITTEE ON OPINIONS

| | |
|---|---|
| MYRON A. MEHLMAN, as Administrator Ad Prosequendum and Administrator of the Estate of Constance L. Mehlman, Deceased,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PHILIP MORRIS INCORPORATED and R.J. REYNOLDS TOBACCO COMPANY,<br><br>　　　　　Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MIDDLESEX COUNTY<br>CIVIL ACTION<br>DOCKET NO. MID-L-1141-99 MT<br>CASE CODE 241<br><br><br>OPINION |

Argued:    March 2, 2001
Decided:   May 7, 2001

Robert Haefele and Christopher Placitella (Wilentz, Goldman, & Spitzer); Rhett Klok and Charles Patrick (Ness, Motley, Loadholt, Richardson, and Poole) for Plaintiff Mehlman

Peter Bierstecker and Kimberly Roosevelt (Jones, Day, Reavis, & Pogue); Alan E. Kraus and Keith Weingold (Riker, Danzig, Scherer, Hyland & Perretti LLP) for Defendant, R.J. Reynolds Company

Ezra Rosenberg and Bruce Clark (Dechert, Price & Rhoads); Michael Vassalotti and Stephen DeFeo (Brown & Connery) for Defendant, Philip Morris Incorporated and Philip Morris Companies Inc.

CORODEMUS, J.S.C.

## I. INTRODUCTION

The matter before this court is the defendants' motion for summary judgement pursuant to R. 4:46-2. This is a product liability action on behalf of the Estate of Constance Mehlman. Mrs. Mehlman was born in 1934 and grew up in the Bronx, New York. She began smoking in approximately 1951 at the age of seventeen. There is little evidence as to what brand or type of cigarettes Mrs. Mehlman

smoked from 1951 until 1959. In 1959, however, Dr. Myron Mehlman met Constance Mehlman and can testify that at that time she was smoking and continued to smoke only Camel and Marlboro cigarettes.

Mrs. Mehlman attempted to quit smoking on numerous occasions but was unsuccessful. According to Dr. Mehlman, Mrs. Mehlman gave up smoking for up to a week at some uncertain date between 1962 and 1965. Dr. Mehlman is unsure whether or not Mrs. Mehlman stopped or decreased her smoking during her pregnancy with her daughter, Hope, in 1965. Dr. Mehlman is sure, however, that Mrs. Mehlman did not smoke during her pregnancy with Allison which began in April 1968. In 1997, Mrs. Mehlman told her pulmonologist "that she had quit in 1967 and then relapsed briefly in [1973] . . . [but that] between 1967 and 1973 she hadn't smoked." (Deposition of Marvin Appel, 32:17-33:19).

According to Dr. Mehlman, Mrs. Mehlman went to a smoking cessation program sponsored by the Seventh Day Adventist Church sometime in the early 1970s. Sometime in the mid-1970s, Mrs. Mehlman successfully quit smoking. In 1997, Mrs. Mehlman was diagnosed with adencarcinoma. Three months after her diagnosis, Mrs. Mehlman died as a result of lung cancer.

On February 4, 1999, Dr. Myron Mehlman, on behalf of his deceased wife Mrs. Constance L. Mehlman, filed a six count complaint against Philip Morris and R.J. Reynolds Tobacco Company. The Complaint alleged the following: strict liability for the tobacco defendants' manufacture, labeling, distribution, marketing and/or sale of cigarettes that were in a condition that was unreasonably dangerous (first count); fraud and constructive fraud (second count); breach of implied warranty (third count); consumer protection and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 et

Exhibit 25, Page 141

seq. (fourth count); negligence and gross negligence (fifth count); civil conspiracy (sixth count). Plaintiff, however, voluntarily withdrew from their complaint the second cause of action (Fraud and Constructive Fraud), their third cause of action (Breach of Implied Warranty), their fourth cause of action (Consumer Protection) and their sixth cause of action (Civil Conspiracy). Therefore, the only two viable theories before this court are design defect and failure to warn.

## II. THE CONTENTIONS OF THE PARTIES

Defendants, manufacturers of tobacco products, seek summary judgement dismissing plaintiff's complaint on the remaining grounds of strict liability, namely design defect and failure to warn. The defendant avers that 1) plaintiff's claims are limited to the period no earlier than late 1959 and no later than 1974 because there is no evidence that Mrs. Mehlman smoked Philip Morris' or Reynolds' cigarettes outside this period and Mrs. Mehlman had specific knowledge of the health risks of smoking; 2) Mrs. Mehlman's design defect claims are barred because the unsafe aspects inherent in cigarettes were obvious and commonly known, there was no alternative and feasible design, and any claims post July 1, 1969 are barred because they were accompanied by a warning; and 3) the preemptive effect of the federal Cigarette Labeling & Advertising Act, 15 U.S.C. Section 1331, et seq. requires the dismissal of all the plaintiff's post-July 1969 failure to warn and concealment-based claims.

The Plaintiff contends that the pre-1959 claim is not barred for lack of evidence as to what brand of cigarettes she smoked because Dr. Mehlman's testimony demonstrates that Mrs. Mehlman had a habit of smoking Camel and Marlboro cigarettes when they first met in 1959 and it is reasonable to infer that she had been smoking the same brands of cigarettes pre-1959.

The Plaintiff also contends that Mrs. Mehlman did not know that cigarettes were harmful when

Exhibit 25, Page 142

Under Green, it will be the jury's duty to weigh the "risks and alternatives" that "should have been known to a reasonable manufacturer" as well as the jury's duty to perform a risk-utility analysis. Id. at 517. Defendants are incorrect in their analysis that the plaintiff bears the burden to show she would have used the alternative design. A similar argument was made in Thompkins v. R.J. Reynolds Co., 92 F.Supp. 2d 70, fn 9. In Thompkins the court wrote, "RJR contends that Plaintiffs must prove Mr. Thompkins would have switched to a safer cigarette had one been available. The Court can find no support for this proposition in New York case law." Id. at fn 9. Similarly, this court can find no support for defendants' proposition in the New Jersey case law.

V. **CONCLUSION**

Plaintiff, in their response to Defendants' Motion for Summary Judgement, voluntarily withdraws from its complaint the second cause of action (Fraud and Constructive Fraud), the third cause of action (Breach of Implied Warranty), the fourth cause of action (Consumer Protection), and the sixth cause of action (Civil Conspiracy).

This court finds that Defendant's Motion for Summary Judgement is **DENIED** in part and **GRANTED** in part. This court dismisses plaintiff's post-1969 failure-to-warn claims found in both count one and count five. This court does not, however, dismiss plaintiff's pre-1969 failure to warn claims found in count one nor does it dismiss the design defect claims found in either count one or count five.