# EXHIBIT 34

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : <br> : <br> Plaintiff, : <br> : <br> : Civil Action No. 99-2496 (GK) <br> : <br> TOBACCO-FREE KIDS ACTION FUND, : <br> AMERICAN CANCER SOCIETY, AMERICAN: <br> HEART ASSOCIATION, AMERICAN LUNG : <br> ASSOCIATION, AMERICANS FOR : <br> NONSMOKERS' RIGHTS, and NATIONAL : <br> AFRICAN AMERICAN TOBACCO : <br> PREVENTION NETWORK, : <br> : <br> Intervenors, : <br> : <br> v. : <br> : <br> PHILIP MORRIS USA, Inc., : <br> (f/k/a Philip Morris, Inc.), *et al.* : <br> : <br> Defendants. : | |

ORDER #1015
<u>Final Judgment and Remedial Order</u>

Based upon the Findings of Fact and Conclusions of Law, the Court hereby enters this Final Judgment and Remedial Order.

I.  Judgment

It is hereby Ordered that Final Judgment is entered for the Plaintiff, the United States of America, on Counts 3 and 4 of the Complaint, imposing liability under Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Chapter of Title 18 of the United States Criminal Code.

II.   **Applicability**

This Final Judgment and Remedial Order applies to each of the Defendants, except Liggett, The Council for Tobacco Research, Inc. and The Tobacco Institute to whom it shall not apply, (hereinafter "Defendants") and to each of their current and future directors, officers, agents, servants, employees, subsidiaries, attorneys, assigns and successors. This Final Judgment and Remedial Order shall also apply to those persons in active concert or participation with Defendants and their current and future directors, officers, agents, servants, employees, subsidiaries, attorneys, assigns and successors who have received actual notice of this Final Judgment and Remedial Order by personal service or otherwise (hereinafter "Covered Persons and Entities").

II.   **Specific Remedial Orders**

A.   **General Injunctive Relief**

1. All Defendants, Covered Persons and Entities are permanently enjoined from committing any act of racketeering, as defined in 18 U.S.C. § 1961(1), relating in any way to the manufacturing, marketing, promotion, health consequences or sale of cigarettes in the United States.

2. All Defendants, Covered Persons and Entities are permanently enjoined from participating in any way, directly or indirectly, in the management and/or control of any of the affairs of CTR, TI, or The Center for Indoor Air Research ("CIAR"), or any successor entities of CTR, TI, or CIAR, or other entity affiliated with CTR, TI, or CIAR, known to the Defendant, Covered Person or Entity to be engaged in any act of racketeering; from having any dealings about any matter that relates directly or indirectly to the management and/or control of CTR, TI, or CIAR, or any successor or affiliated entities known to them to be engaged in any act of racketeering; and from reconstituting the form or function of CTR, TI, or CIAR, except that the prohibition against

reconstituting the form or function of TI shall not prohibit the Defendants from engaging in lobbying activity that is otherwise permissible.

3. All Defendants, Covered Persons and Entities are permanently enjoined from making, or causing to be made in any way, any material false, misleading, or deceptive statement or representation, or engaging in any public relations or marketing endeavor that is disseminated to the United States public and that misrepresents or suppresses information concerning cigarettes. Such material statements include, but are not limited to, any matter that: (a) involves health, safety, or other areas with which a reasonable consumer or potential consumer of cigarettes would be concerned; (b) a reasonable consumer or potential consumer would attach importance to in determining whether to purchase or smoke cigarettes; or (c) the Defendant, Covered Person or Entity making the representation knows or has reason to know that its recipient regards or is likely to regard as important in determining whether to purchase cigarettes or to smoke cigarettes, even if a reasonable person would not so regard it.

4. All Defendants, Covered Persons and Entities are permanently enjoined from conveying any express or implied health message or health descriptor for any cigarette brand either in the brand name or on any packaging, advertising or other promotional, informational or other material. Forbidden health descriptors include the words "low tar," "light," "ultra light," "mild," "natural," and any other words which reasonably could be expected to result in a consumer believing that smoking the cigarette brand using that descriptor may result in a lower risk of disease or be less hazardous to health than smoking other brands of cigarettes. Defendants are also prohibited from representing directly, indirectly, or by implication, in advertising, promotional, informational or other material, public statements or by any other means, that low-tar, light, ultra light, mild, natural,

3

Exhibit 3 , Page 190

or low-nicotine cigarettes may result in a lower risk of disease or are less hazardous to health than other brands of cigarettes.

### B. Corrective Statements

5.  Each Defendant shall be required to make separate corrective statements concerning each of the following: (a) the adverse health effects of smoking; (b) the addictiveness of smoking and nicotine; (c) the lack of any significant health benefit from smoking "low tar," "light," "ultra light," "mild," and "natural," cigarettes; (d) Defendants' manipulation of cigarette design and composition to ensure optimum nicotine delivery; and (e) the adverse health effects of exposure to secondhand smoke (also known as environmental tobacco smoke, or ETS). Within sixty days of the date of this Final Judgment and Remedial Order, the parties shall each submit a proposal for the exact wording of such corrective statements, with any supporting materials deemed necessary. After the Court enters an Order identifying which corrective statements for each topic listed above are appropriate, Defendants shall follow the schedule outlined below for dissemination and publication of those statements. Slight variations in the corrective communications may be necessary and appropriate to accommodate the media or format utilized but no such variations may be implemented without prior approval from the Court.

6.  All corrective statements shall be placed in a prominent position on any publicly-accessible website of each Defendant for the duration of this Final Judgment and Remedial Order, including the following websites and/or any other web address that provides access to Defendants' corporate website or any successor website thereto, and the Internet Document Websites created or maintained pursuant to Section III(C)(¶8-9):

   a. www.pmusa.com

Exhibit 34, Page 191

      b.      www.altria.com

      c.      www.rjrt.com (including www.bw.com)

      d.      www.lorillard.com

      e.      www.bat.com

7. In order to ensure maximum exposure to consumers, potential consumers, and the general public, the corrective statements shall also be disseminated in the following ways:

      a.      Using their existing (or future acquired or improved) technology, each Defendant shall affix to cigarette packaging, either to the outside of or within the outer cellophane wrapping around the package, an "onsert" containing the corrective statements, in the same manner as certain Defendants, such as Philip Morris and Brown & Williamson, have utilized package onserts in the past. One corrective statement shall be placed on package onserts, to be included with each pack of Defendants' cigarettes shipped for retail distribution in the United States during the first two weeks of every February, June, and October ("installments"), beginning no later than February 2007 and continuing for two years thereafter. During the course of these two years, each Defendant must include each of the five corrective statements approved pursuant to Section III(B)(¶5) in at least one installment.

      b.      Each of the corrective statements approved pursuant to Section III(B)(¶5) of this Final Judgment and Remedial Order shall also be designed by Defendants for inclusion in a Countertop Display and Header Display at retail point-of-sale. Each Defendant that utilizes a Retail Merchandising

5

Program shall require retailers who participate in such program to display each Countertop Display in a position of prominent visibility for the entire four month period, until it is replaced by a subsequent Countertop Display during the two-year duration set forth in Section III(B)(¶7)(a) of this Order. Each Defendant that utilizes a Retail Merchandising Program shall require retailers who participate in such program to display each Header Display in an equivalent position with any other brand advertising header for the entire period on the same schedule, whether monthly or quarterly, that any other brand advertising header is utilized. The Header Display shall be of at least equivalent size as any other brand advertising header or headers provided by Defendants. During the two year period set forth in Section III(B)(¶7)(a) of this Order, each Defendant shall include each of the five Court approved corrective statements in a Countertop Display and Header Display at least once. Each Defendant shall suspend from its Retail Merchandising Program for a period of one year any retailer that fails to comply with this provision.

c. Each Defendant shall cause the text of all corrective statements approved pursuant to Section III(B)(¶5) of this Final Judgment and Remedial Order to be published as a full page advertisement in the first section of the Sunday edition of each of the following newspapers: Atlanta Journal-Constitution, Boston Globe, Boston Herald, Charlotte Observer, Chicago Sun Times, Chicago Tribune, Dallas Morning News, Florida Times Union, Fresno Bee, Ft. Worth Star-Telegram, Houston Chronicle, Los Angleles Times, Miami

Exhibit 34, Page 192

Herald, New York Daily News, New York Post, New York Sun, New York Times, Orlando Sentinel, Palm Beach Post, Philadelphia Inquirer, Richmond Times-Dispatch, Sacramento Bee, San Diego Union-Tribune, San Francisco Chronicle, St. Petersburg Times, Tallahassee Democrat, USA Today, Wall Street Journal, Washington Post, LA Eastern Group Publications, San Francisco La Oferta Review/El Vistaz-Combo, NAHP, Chicago Lawndale Group News, NAHP, Houston – Que Onda! Corrective statements published in Spanish-language newspapers shall appear in Spanish. The statements shall identify the Defendant making the corrective statements. Full page advertisements shall be placed by each Defendant on the following schedule:

(1)    Altria: the Sunday edition on the 16th Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the Friday edition on the 16th Friday following the date of this Final Judgment and Remedial Order.

(2)    BATCo: the Sunday edition on the 20th Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the Friday edition

Exhibit 34, Page 193

on the 20th Friday following the date of this Final Judgment and Remedial Order.

(3)     B&W: the Sunday edition on the 24th Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the Friday edition on the 24th Friday following the date of this Final Judgment and Remedial Order.

(4)     Lorillard: the Sunday edition on the 28th Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the Friday edition on the 28th Friday following the date of this Final Judgment and Remedial Order.

(5)     Philip Morris: the Sunday edition on the 32nd Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the

Friday edition on the 32nd Friday following the date of this Final Judgment and Remedial Order.

(6)   R. J. Reynolds: the Sunday edition on the 36th Sunday following the date of this Final Judgment and Remedial Order, except that for any newspaper that does not have a Sunday edition at the time that publication of the corrective statements is required, the corrective statements shall be published in the first section of the Friday edition on the 36th Friday following the date of this Final Judgment and Remedial Order.

d.   Each Defendant shall cause at least one of the corrective statements approved pursuant to Section III(B)(¶5) of this Final Judgment and Remedial Order to appear as an advertisement on one or more of the three major television networks, i.e., CBS, ABC, or NBC. The ads shall last at least 15 seconds and shall run at least once per week between the hours of 7:00 p.m. and 10:00 p.m between Monday and Thursday. Each Defendant shall run its advertisements on their chosen network(s) for one year. Each of the corrective statements approved pursuant to Section III(B)(¶5) of this Final Judgment and Remedial Order must be advertised by each Defendant at least ten times during the one year period. Defendants shall commence airing the first of their ads no later than February, 2007.

9

### C.   Document Disclosure in Depositories and on Websites

8.   Defendants Philip Morris, R.J. Reynolds, Lorillard, and Brown & Williamson, shall maintain Internet Document Websites until September 1, 2016 at their expense. These Defendants shall maintain on their Internet Document Websites the documents and bibliographic information that currently appear on their respective Internet Document Websites as well as the additional documents and bibliographic information described below. These Defendants shall provide links to their Internet Document Websites from any and all publicly-accessible company websites and shall display such links prominently and in a manner easily accessible to visitors.

9.   Defendant BATCo shall create and maintain by January 1, 2007 an Internet Document Website until September 1, 2016, at its expense. The BATCo Internet Document Website shall be created and publicly accessible no later than 120 days from the date of this Final Judgment and Remedial Order. BATCo shall provide links to its Internet Document Website from any and all publicly-accessible company websites and shall display such links prominently and in a manner easily accessible to visitors.

10.   Each Defendant shall add documents and bibliographic data to its website(s) as follows:

    a.   Each Defendant shall add the following additional documents: (1) all documents produced to the Government in this case; (2) all documents produced on or after the date of this Final Judgment and Remedial Order in any court or administrative action in the United States concerning smoking and health, marketing, addiction, low-tar or low-nicotine cigarettes, or less hazardous cigarette research; and (3) all transcripts of depositions and letters

Exhibit 34, Page 196

of request testimony (with corresponding exhibits if not already on the website) given by any of their current or former employees, officers, directors, corporate designees, attorneys or agents, in this action or in any court or administrative action in the United States concerning smoking and health, marketing, addiction, low-tar or low-nicotine cigarettes, or less hazardous cigarette research; such transcripts shall be in machine-readable text if received or available from a court reporter. Philip Morris shall provide on its website all such documents produced by, pertaining to, or concerning Altria.

    b.    Each Defendant shall add these additional documents referred to in the previous paragraph, as well as any other data newly required by this Final Judgment and Remedial Order, to its Internet Document Website(s) within 45 days of the date of production, in the case of documents; and within 45 days of receipt of the transcript, in the case of depositions and letters of request testimony. These requirements are subject to Section III(C)(¶14) concerning documents under court order or ruling.

    c.    Each Internet Document Website shall provide, and be searchable by, the following bibliographic fields for all documents (even those withheld on grounds of privilege or confidentiality):

(1)     Document ID;

(2)     Master ID;

(3)     Other Number;

(4)  Document Date;

(5)  Primary Type;

(6)  Person Attending;

(7)  Person Noted;

(8)  Person Author;

(9)  Person Recipient;

(10) Person Copied;

(11) Person Mentioned;

(12) Organization Author;

(13) Organization Recipient;

(14) Organization Copied;

(15) Organization Mentioned;

(16) Organization Attending;

(17) Organization Noted;

(18) Physical Attachments;

(19) File Name;

(20) Old Brand;

(21) Primary Brand;

(22) Mentioned Brand;

(23) Page Count;

(24) Live hyperlink to document image (except where image is withheld);

12

Exhibit 34, Page 198

(25) Court or administrative case in which document was produced or transcript taken, including case title(s), action number(s), court(s) or administrative body(ies);

(26) Date on which document was produced or transcript was received;

(27) Date hard copy was produced to Minnesota or Guildford Depository; and

(28) Box number in which hard copy was produced to Minnesota or Guildford Depository.

In addition, Defendant BATCo's bibliographic fields shall include the File Number, File Owner, and File User fields that it used in this lawsuit, and its website shall identify the Folder Number prefixes.

d. The Internet Document Websites shall also provide, and be searchable by, the above fields for documents withheld from the website on grounds of privilege ("the privilege log"), and for documents withheld from the website on grounds that they contain trade secret information ("the confidential document index"). Each Internet Document Website's privilege log shall also provide fields stating the basis for the privilege assertion with sufficient detail to allow an opposing party or court to assess the merits of the assertion; and, as in Order #51, ¶ III.G.9, a statement of whether the claimed privilege has ever been (i) expressly waived, or (ii) ruled waived, invalid, inapplicable or unenforceable for any reason by a court, with a specification of the case title(s), action number(s), court(s), date(s) of waiver or decision, and

Exhibit 3P, Page 199

        Document ID(s) for such waivers, orders and decisions. Each Internet Document Website shall post a copy of all such waivers, orders and decisions (and underlying judicial materials such as magistrate judge reports and recommendations). Defendants may withhold the title of documents withheld on grounds of privilege if the document title, without reference to the document's contents, reveals privileged information, with the restriction that the title must be provided where a Defendant has previously waived privilege over the document title, e.g., pursuant to Order #75, ¶ 8.

    e.    Each Internet Document Website shall provide its bibliographic data index, privilege log and confidential document index in a format suitable for downloading (e.g., comma separated value (CSV) file, compressed in a ZIP or similar format). In addition, monthly update files shall be provided in a format suitable for downloading, and shall be maintained on the website for 12 months.

11.    Each Defendant shall, at its expense, produce documents to the Minnesota Depository created in <u>Minnesota v. Philip Morris Inc.</u>, No. C1-94-8565 (Minn. Dist. Ct.), or its successor, as follows:

    a.    Each Defendant shall produce to the Minnesota Depository hard copies of all documents described in Section III(C)(¶10)(a).

    b.    These documents shall be produced to the Minnesota Depository within 30 days of being produced in the related judicial or administrative proceeding

    (or received from the court reporter). This requirement is subject to Section III(C)(¶14) below concerning documents under court order or ruling.

  c. Each production of documents to the Minnesota Depository shall include an index of the documents produced in that production, with the fields specified in Section III(C)(¶10)(c), in both hard copy and electronic form.

  d. Each Defendant shall continue to fund and produce documents to the Minnesota Depository until September 1, 2016.

12. BATCo shall continue to maintain its obligations as to documents available in the Guildford Depository until September 1, 2016. BATCo shall ensure access to the Guildford Depository for six organizations and 12 visitors per day.

13. A Defendant may redact from a document placed on its Internet Document Website or produced to the Minnesota Depository individual Social Security numbers, home addresses, and home telephone numbers. Such redactions shall indicate that confidential personal information has been redacted. Wherever less than the entirety of a document is subject to a claim of privilege or trade secret pursuant to Section III(C)(¶14), the Defendant shall produce the document in redacted form on its Internet Document Website and to the Minnesota Depository. Such redactions shall indicate that privileged or trade secret information, as appropriate, has been redacted.

14. This Final Judgment and Remedial Order does not require any Defendant to place on its Internet Document Website or in the Minnesota Depository documents that: (1) it continues to claim to be privileged or a trade secret in the document's entirety, or (2) continue to be subject in the document's entirety to any protective order, sealing order or other order or ruling that prevents or limits that Defendant from disclosing such documents. As defined in Order #36, a "trade secret"

15

is information, including a formula, pattern, compilation, program, device, method, technique or process that (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. However, the foregoing exceptions shall not apply to documents which a Defendant continues to claim to be privileged but which this Court ordered produced in this lawsuit; and shall not apply to documents which a Defendant continues to claim to be a trade secret or contain confidential or proprietary business information, or which continue to be subject to any protective order, sealing order or other order or ruling that prevents or limits that Defendant from disclosing such documents, if this Court overruled such assertions and/or that Defendant did not make such assertions to prevent the documents from being used in open court during this lawsuit.

15. Because the economic value of many trade secrets substantially declines with the passage of time, each Defendant shall review all trade secret assertions every three years to determine whether they still satisfy the definition of "trade secret." The first review shall be completed within one year of this Final Judgment and Remedial Order. Each Defendant shall, every three years, file a report with the Court indicating any changes in the assertion of trade secret status.

### D. Disclosure of Disaggregated Marketing Data

16. Each Defendant shall be required to disclose all disaggregated marketing data to the Government in the same form and on the same schedule which Defendants now follow in disclosing disaggregated marketing data to the Federal Trade Commission. Defendants must disclose such data to the Government for a period of ten years from the date of this Final Judgment and Remedial Order.

17. Disaggregated Marketing Data shall be maintained in the databases and formats maintained by Defendants, and all reports generated from such Disaggregated Marketing Data shall be made available to the Government.

18. In addition, each year's Disaggregated Marketing Data shall be separately maintained in a format suitable for downloading (e.g., comma separated value (CSV) file, compressed in a ZIP or similar format). All data fields shall be specified.

19. All Disaggregated Marketing Data shall be deemed "confidential" and "highly sensitive trade secret information," as defined in Orders #7 and #36, and shall be subject to the provisions of those Orders.

**IV.   Miscellaneous Provisions**

20. **Transfer of Tobacco Brands or Businesses.** No Defendant shall sell or otherwise transfer or permit the sale or transfer of any of its cigarette brands, brand names, cigarette product formulas or cigarette businesses (other than a sale or transfer of cigarette brands or brand names to be sold, product formulas to be used, or cigarette businesses to be conducted, by the acquiror or transferee exclusively outside of the United States) to any person or entity unless (1) such person or entity is already a Defendant subject to this Final Judgment and Remedial Order, or (2) prior to the sale or acquisition, such person or entity (a) submits to the jurisdiction of this Court; and (b) applies for and obtains an Order from this Court subjecting such person or entity to the provisions of this Final Judgment and Remedial Order as of the date of the sale or transfer. No such Order will be entered, and no sale or transfer of any Defendant's cigarette brands, brand names, cigarette product formulas or cigarette businesses (other than a sale or transfer of cigarette brands or brand names to be sold, product formulas to be used, or cigarette businesses to be conducted, by the



acquiror or transferee exclusively outside of the United States) shall be allowed, unless this Court first determines that such person or entity has the capacity to comply with the obligations contained in this Final Judgment and Remedial Order. The sale or transfer by a Defendant of any of its cigarette brands, brand names, cigarette product formulas or cigarette businesses shall not relieve that Defendant from its joint and several liability under this Final Judgment and Remedial Order.

21.     **Costs.** Defendants shall pay the appropriate costs of the prevailing party, which is the Government. The Government shall serve and file a bill of costs in accordance with LCvR 54 within 30 days from this date.

**It is so Ordered.**

This is a final appealable Order subject to Federal Rule of Appellate Procedure 4.

August 17, 2006

/s/
Gladys Kessler
United States District Court Judge

**Copies served upon:**
**Counsel of record by ECF**


Exhibit 34, Page 20